## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELMAGIN CAPITAL LLC | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Civil Action No. |
| | : | |
| CHAO CHEN ; | : | |
| KARL PETTY; | : | |
| ENTERGRID LLC; and | : | JURY TRIAL DEMANDED |
| ENTERGRID FUND I LLC | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Elmagin Capital LLC, by and through its attorneys, as for its Complaint, avers as follows:

## NATURE OF THE ACTION

1.     This is a claim for (i) misappropriation of trade secrets pursuant to and in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*; (ii) misappropriation of trade secrets pursuant to and in violation of the Pennsylvania Uniform Trade Secrets Act, 12 Pa.C.S.A. §§ 5301 *et seq.*; and (iii) breach of contract.

## THE PARTIES

2.     Plaintiff Elmagin Capital LLC ("ELMAGIN") is a limited liability company existing under the laws of the State of Delaware, is registered to do business in the Commonwealth of Pennsylvania, and has its principal place of business at 10 N. High Street, Suite 500, West Chester, Pennsylvania 19380.

3.      On information and belief, Defendant Chao Chen ("CHEN"), an individual, is a resident of the State of Colorado, having an address at 764 Bridger Point, Lafayette, Colorado 80026.

4.      On information and belief, Defendant Karl Petty ("PETTY"), an individual, is a resident of the State of California, having an address at 2 Sunrise Hill Court, Orinda, California 94563.

5.      On information and belief, Defendant Entergrid LLC ("ENTERGRID") is a limited liability company existing under the laws of the State of Colorado, formed January 10, 2019, and has its principal place of business at 75 Waneka Parkway, Lafayette, Colorado 80026.

6.      On information and belief, Defendant Entergrid Fund I LLC ("EGRD FUND I") is a limited liability company existing under the laws of the State of Colorado, formed January 10, 2019, and has its principal place of business at 75 Waneka Parkway, Lafayette, Colorado 80026.

7.      On information and belief, ENTERGRID is a member of EGRD FUND I and ENTERGRID has the right to control, and a financial interest in, EGRD FUND I.

8.      On information and belief, CHEN has the right to control and a financial interest in ENTERGRID and EGRD FUND I.

9.      On information and belief, PETTY has the right to control and a financial interest in ENTERGRID and EGRD FUND I.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367 because Plaintiff asserts a claim for statutory misappropriation of trade secrets under the Defend Trade

Secrets Act of 2016, 18 U.S.C. § 1836 *et seq*., and all other claims are related to the federal trade secret claims such that they form part of the same case or controversy.

11.     Alternatively, this Court has jurisdiction because the amount in controversy exclusive of interests and costs exceeds the sum or value of $75,000, and the matter is between citizens of different states.

12.     Alternatively, this Court has jurisdiction over CHEN and PETTY because each so agreed by virtue of the written agreements underlying the contractual claims herein and all other claims are related thereto such that they form part of the same case or controversy.

13.     Venue is proper in this District under 28 U.S.C. § 1391.

14.     Alternatively, venue is proper in this District with respect to CHEN and PETTY because each so agreed by virtue of the written agreements underlying the contractual claims herein and all other claims are related thereto such that they form part of the same case or controversy.

## STATEMENT OF FACTS

BACKGROUND OF ELMAGIN

15.     ELMAGIN is a research and analysis firm engaging, *inter alia*,  in the trading of wholesale power contracts in the wholesale power markets.

16.     ELMAGIN was organized under the laws of the State of Delaware on September 30, 2014, its members consisting exclusively of individuals Kevin J. Gates ("KEVIN GATES"), Richard J. Gates ("RICH GATES") (collectively "Messrs. GATES"), and CHEN.  ELMAGIN was registered to do business in the Commonwealth of Pennsylvania on October 7, 2014.

17.     ELMAGIN continues, to the present, to engage in the trading of wholesale power contracts.  Throughout its existence, ELMAGIN has expended considerable time, effort, and

capital, through its members, employees, and the engagement of third-party contractors to develop proprietary trading strategies and other business methods, from which ELMAGIN derives financial and competitive advantage and which are closely protected and safeguarded from disclosure to others by the processes, policies, and restrictive contractual agreements of ELMAGIN and such members, employees, and third-party contractors.   (The foregoing collectively referred to hereinafter as "Confidential Information.")

18.     The unique nature of the Confidential Information, including but not limited to the proprietary methods, of ELMAGIN is further demonstrated, without limitation, by analyses of market participants, which analyses show that trading patterns of other market participants - with the exception of the Defendants - do not resemble the expected trading patterns that would result from use of the ELMAGIN Confidential Information.

19.     Analyses of the trading patterns of Defendants show that Defendants' trading patterns are nearly identical to those expected by use of the ELMAGIN Confidential Information.

20.     The unique nature of the Confidential Information is further demonstrable by other evidence to be shown at trial with respect to the market behavior of Defendants.

21.     ELMAGIN derives significant economic advantage from its exclusive use of its Confidential Information, including its proprietary methods, and the protection from disclosure of those methods and other know-how to other market participants or the public in any other regard.

RELATIONSHIP WITH CHEN

22.     CHEN was a member of ELMAGIN upon its formation and served as ELMAGIN's President.

23.     During his tenure with ELMAGIN, CHEN was exposed to and had access to substantially all of the Confidential Information of ELMAGIN.

24.     During his tenure with ELMAGIN, CHEN contributed, in concert with other members, employees, and contractors of ELMAGIN, to the development of the proprietary wholesale energy trading strategies and other Confidential Information of ELMAGIN.

25.     One proprietary trading strategy constituting Confidential Information of ELMAGIN is internally referred to as "Breck."

26.     In the execution of his duties during his tenure with ELMAGIN, CHEN participated in the research, development and implementation of "Breck" for the benefit of ELMAGIN and CHEN himself suggested the name "Breck" for such strategy.

27.     As such, CHEN had access to Confidential Information of ELMAGIN, including but without limitation, "Breck."

28.     CHEN divested all of his ownership and voting interests in ELMAGIN by sale of his membership interests in ELMAGIN to Messrs. GATES by operation of a Membership Interest Purchase and Release Agreement (the "MEMBERSHIP INTEREST AGREEMENT") effective January 1, 2018, duly executed by each of CHEN, KEVIN GATES, RICH GATES, and Rich Gates on behalf of ELMAGIN.

29.     CHEN, as seller, expressly warranted by execution of the MEMBERSHIP INTEREST AGREEMENT that it "constitutes a valid and binding agreement of the Seller, enforceable by the Buyers against him in accordance with its terms."  See §4(a).

30.     Concurrently with the execution of the MEMBERSHIP INTEREST AGREEMENT, CHEN, as seller, Messrs. GATES, as buyers, and ELMAGIN entered into a Non-Disclosure and Non-Competition Agreement (the "NDNC"), effective January 1, 2018, by

which CHEN undertook certain covenants of non-disclosure and non-competition with respect to ELMAGIN and the Confidential Information of ELMAGIN, as detailed and agreed therein.

31.     The MEMBERSHIP INTEREST AGREEMENT contains a covenant of CHEN not to compete with ELMAGIN in accordance with the terms of the CHEN NDNC.

> 7.     Covenant Not to Compete. Seller acknowledges and agrees that a material component of the Transaction is Seller's agreement not to compete against the Sellers and or the Company as provided for in the Non-Disclosure and Non-Competition Agreement (the "NDNC Agreement") attached as Exhibit "C" attached hereto and incorporated herein.

32.     CHEN expressly acknowledged by execution of the NDNC "that during his time of being a member of Elmagin, [CHEN] had access to, learned, was provided with and, in some cases, prepared, created or improved certain proprietary business information, trade secrets and confidential information of Elmagin, including but not limited to, quantitative models and methods, business methods…[and] trading methods" and that such constitutes Confidential Information of ELMAGIN.  See NDNC § 2(a).

33.     CHEN further expressly acknowledged by execution of the NDNC that the Confidential Information of ELMAGIN includes, in part, "any other information which gives ELMAGIN a competitive advantage or the confidentiality of which provides independent economic value or, if divulged to a third party, would have an adverse impact on Elmagin." See NDNC § 2(a).

34.     CHEN further expressly acknowledged by execution of the NDNC that ELMAGIN "shall be the sole owner of all the results and proceeds of his service to Elmagin", including the Confidential Information.

35.     CHEN further expressly acknowledged by execution of the NDNC that "he shall not, at any time, directly or indirectly, use, exploit, publish, disclose, reveal, provide, make

known, or otherwise make available…any Confidential Information" and that such obligations "*shall be perpetual in nature*." <u>See</u> NDNC § 2(b) (italics in original).

36.     CHEN further expressly acknowledged by execution of the NDNC that each of the restrictive covenants of sections 2, 3, 4, and 5 of the NDNC "are reasonable and necessary to protect the legitimate business interests of" Messrs. GATES and ELMAGIN. <u>See</u> NDNC § 7.

<u>RELATIONSHIP WITH PETTY</u>

37.     On information and belief, PETTY holds himself out as possessing skills including data analysis and business consulting.

38.     On information and belief, PETTY and CHEN met while both pursued graduate degree studies at the University of California, Berkeley.

39.     PETTY was engaged as an independent contractor to ELMAGIN through the mutual execution of a consulting agreement entered into on January 8, 2016 (the "PETTY CONSULTING AGREEMENT"), to provide certain data analysis and business consulting services to ELMAGIN relating to ELMAGIN's investment in electricity markets.

40.     On information and belief, ELMAGIN's engagement of PETTY was directly the result of CHEN's personal relationship with PETTY and CHEN's introduction of PETTY to ELMAGIN.

41.     In fact, CHEN, as then-President, was the sole signatory on behalf of ELMAGIN to the PETTY CONSULTING AGREEMENT.

42.     PETTY expressly acknowledged by execution of the PETTY CONSULTING AGREEMENT that he "may receive and otherwise be exposed to confidential and proprietary information owned by the Company… relating to the Company's business practices, strategies and technologies, including quantitative models and methods, business methods, trade secrets,

[and] confidential information" and that such constitutes Confidential Information of ELMAGIN, as defined by the PETTY CONSULTING AGREEMENT.  See § 5(a).

43.    The information referred to in Section 5(a) of the PETTY CONSULTING AGREEMENT constitutes Confidential Information of ELMAGIN.

44.    PETTY further expressly acknowledged by execution of the PETTY CONSULTING AGREEMENT that the Confidential Information of ELMAGIN includes, in part, "any other information which gives ELMAGIN a competitive advantage or the confidentiality of which provides independent economic value or, if divulged to a third party, would have an adverse impact on Elmagin." See § 5(a).

45.    PETTY further expressly acknowledged by execution of the PETTY CONSULTING AGREEMENT that "he shall not, at any time, directly or indirectly, use, exploit, publish, disclose, reveal, provide, make known, or otherwise make available in any manner whatsoever to any person or entity…[and] may not use any Confidential Information for the purpose of trading or management of his own or any family member's, friend's or other client's assets invested in Electricity Markets." See § 5(b).

46.    PETTY further expressly acknowledged by execution of the PETTY CONSULTING AGREEMENT that all Work Product of PETTY, as defined in the agreement, shall be the sole and exclusive property of ELMAGIN and PETTY did thereby assign all right, title, and interest in any such Work Product to ELMAGIN.  See § 6(b).

47.    PETTY further expressly acknowledged that "Sections 5, 6, 7 and 8 [of the PETTY CONSULTING AGREEMENT] shall survive the termination of [the agreement] for any reason, including expiration of the term" thereof.  See § 10.

48.     Confidential Information of ELMAGIN was, in fact, disclosed to PETTY in connection with his engagement under the PETTY CONSULTING AGREEMENT.

RELEVANT BACKGROUND OF ENTERGRID AND ITS MISAPPROPRIATION OF THE TRADE SECRETS OF ELMAGIN

49.     On information and belief, CHEN and PETTY are members of ENTERGRID and EGRD FUND I (ENTERGRID and EGRD FUND I hereinafter collectively the "ENTERGRID PARTIES").

50.     On information and belief, CHEN and PETTY are co-founders and, respectively, President and Chief Technology Officer of ENTERGRID.

51.     On information and belief, CHEN and PETTY formed the ENTERGRID PARTIES for the purpose of performing investment services, namely trading in the wholesale energy markets.

52.     On information and belief, the ENTERGRID PARTIES were formed nine (9) days after the prima facie expiration of the "Covenant not to Compete" provisions of Section 4(a) of the CHEN NDNC.

53.     On information and belief, one or more of the ENTERGRID PARTIES began trading wholesale energy contracts in one or more of markets established by independent system operators ("ISO's") and regional transmission organizations ("RTO's") for the exchange of such contracts, at least as early as June 2019.

54.     On information and belief, one or more of the ENTERGRID PARTIES continues to so trade.

55.     On information and belief, the trading and investment activities of the ENTERGRID PARTIES are controlled by CHEN and PETTY.

56.     The ENTERGRID PARTIES compete with ELMAGIN by, at least, trading wholesale energy contracts in one or more of the limited number of interstate and intrastate markets established by the ISO's and/or RTO's and by trading on behalf of managed funds in those markets.

57.     On information and belief, the ENTERGRID PARTIES, since their commencement of trading in the wholesale energy markets, have utilized investment strategies based upon the Confidential Information of ELMAGIN.

58.     Without limitation to the foregoing, on information and belief, in or about September 2019, one or more of the ENTERGRID PARTIES began utilizing an investment strategy in one or more wholesale energy markets functionally identical to and directly derived from "Breck."

59.     The investment strategy of the ENTERGRID PARTIES in one or more wholesale energy markets, beginning in at least September 2019, results in investment choices even more closely related to the investments expected from the use of one or more of ELMAGIN's proprietary investment strategies to the point of being nearly indistinguishable.

60.     The trading patterns of the ENTERGRID PARTIES in the wholesale energy markets more closely resemble the investments expected from use of ELMAGIN strategies than the trading patterns of other market participants.

61.     On information and belief, the ENTERGRID PARTIES continue to make investment decisions based upon the use of Confidential Information of ELMAGIN, including but not limited to "Breck," and will continue to do so unless enjoined.

62.     On information and belief, one or more of the ENTERGRID PARTIES is deriving economic benefit from the utilization of an investment strategy identical to or derived from the proprietary, Confidential Information of ELMAGIN.

63.     On information and belief, each of CHEN and PETTY, as a member of one or more of the ENTERGRID PARTIES, is deriving economic benefit from the utilization of an investment strategy identical to or derived from the proprietary, Confidential Information of ELMAGIN.

64.     Such proprietary, Confidential Information of ELMAGIN constitutes one or more trade secrets of ELMAGIN.

## CLAIMS FOR RELIEF

### COUNTS 1 - 4
### (MISAPPROPRIATION OF TRADE SECRETS UNDER
### THE DEFEND TRADE SECRETS ACT)

65.     ELMAGIN incorporates herein by reference the foregoing allegations.

66.     This claim and each of Counts 1-4 is brought pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* (the "DTSA").

67.     The Confidential Information of ELMAGIN, as defined above, including but not limited to the investment strategies of ELMAGIN, comprises protected trade secrets under the DTSA.

68.     ELMAGIN developed its Confidential Information and has the exclusive right to its use.

69.     ELMAGIN expended considerable time, effort, and capital, through its members, employees, and the engagement of third-party contractors to develop its Confidential Information.

70.     The Confidential Information is of great value to ELMAGIN and is important to its business.

71.     Others outside of ELMAGIN do not know the Confidential Information of ELMAGIN and cannot discover it by any legitimate means.

72.     The Confidential Information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by others, such as the Defendants, who can obtain economic value from its use.

73.     ELMAGIN undertakes reasonable efforts to maintain the secrecy of its Confidential Information.

## COUNT 1 – AGAINST ENTERGRID, LLC

74.     ENTERGRID is using the Confidential Information of ELMAGIN for the benefit of ENTERGRID.

75.     As one example, upon information and belief, ENTERGRID is utilizing one or more trade secret investment strategies of ELMAGIN to trade wholesale energy contracts in interstate commerce.

## COUNT 2 – AGAINST ENTERGRID FUND I, LLC

76.     EGRD FUND I is using the Confidential Information of ELMAGIN for the benefit of EGRD FUND I.

77.     As one example, upon information and belief, EGRD FUND I is utilizing one or more trade secret investment strategies of ELMAGIN to trade wholesale energy contracts in interstate commerce.

### COUNT 3 – AGAINST CHAO CHEN

78.     ELMAGIN granted CHEN access to its Confidential Information while he was a member of ELMAGIN and held a position of trust and confidence with respect to ELMAGIN.

79.     On information and belief, CHEN has disclosed to the other Defendants Confidential Information of ELMAGIN.

80.     CHEN is using the Confidential Information of ELMAGIN for the benefit of CHEN at least by permitting or causing one or more of the ENTERGRID PARTIES to trade wholesale energy contracts in interstate commerce using investment strategies comprising or derived from the Confidential Information.

81.     The discovery process may reveal that CHEN has disclosed the Confidential Information to additional third parties including, but not limited to other financial trading firms and Jay Tian, a software engineer and ENTERGRID employee.

### COUNT 4 – AGAINST KARL PETTY

82.     ELMAGIN shared its Confidential Information with PETTY while he was engaged as an independent consultant to ELMAGIN and held a position of trust and confidence with respect to ELMAGIN.

83.     On information and belief, PETTY has disclosed to the other Defendants Confidential Information of ELMAGIN.

84.     PETTY is using the Confidential Information of ELMAGIN for the benefit of PETTY at least by permitting or causing one or more of the ENTERGRID PARTIES to trade

wholesale energy contracts in interstate commerce using investment strategies comprising or derived from the Confidential Information.

85.     The discovery process may reveal that PETTY has disclosed the Confidential Information to additional third parties including, but not limited to other financial trading firms and Jay Tian, a software engineer and ENTERGRID employee.

## AS TO COUNTS 1-4

86.     The discovery process may reveal other Confidential Information that one or more Defendants has misappropriated from ELMAGIN.

87.     The use by each, all, and any of the Defendants of the Confidential Information is prejudicial to ELMAGIN.

88.     As a direct and proximate result of each and all Defendants' misappropriation of ELMAGIN's trade secrets, ELMAGIN has been harmed, and will continue to be harmed

89.     It is inequitable for any Defendant to use the Confidential Information.

90.     Each Defendant's misappropriation was intentional, willful, and malicious.

91.     In addition to other relief, ELMAGIN is therefore entitled to attorneys' fees under the DTSA.

WHEREFORE, Plaintiff Elmagin Capital LLC respectfully requests judgment in its favor and against each Defendant in Counts 1-4 (a) for an order that each Defendant has misappropriated the trade secrets and other Confidential Information of ELMAGIN within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*; (b) for an equitable accounting of amounts improperly received by Defendants and their principals and related entities as a result of misappropriating the trade secrets of ELMAGIN; (c) for all damages permissible under the Defend Trade Secrets Act of 2016, including but not limited to the

amounts found from such accounting and exemplary damages; (d) for an order enjoining each Defendant from further use or disclosure of the Confidential Information of ELMAGIN; (e) for an order that each Defendant shall identify to ELMAGIN any and all disclosures of the Confidential Information that it or he has made to any third party, (f) attorneys' fees, costs of suit, and such other and further relief as the Court deems just and proper.


### COUNTS 5-8
### (MISAPPROPRIATION OF TRADE SECRETS UNDER
### THE PENNSYLVANIA UNIFORM TRADE SECRETS ACT)

92.     ELMAGIN incorporates herein by reference the foregoing allegations.

93.     This claim and each of Counts 5-8 is brought pursuant to the Pennsylvania Uniform Trade Secrets Act, 12 Pa.C.S.A. §§ 5301 *et seq.* ("PA UTSA").

94.     The actions of each of the Defendants constitute unlawful misappropriation of trade secrets in violation of the PA UTSA.

95.     The Confidential Information of ELMAGIN, as defined above, including but not limited to the investment strategies of ELMAGIN, comprises protected trade secrets under the PA UTSA.

96.     As described above, ELMAGIN developed, owns, has exclusive rights to the use of, and takes reasonable steps to protect the secrecy of the Confidential Information, which is not readily ascertainable by others through proper means.

97.     As further described above, ELMAGIN derives economic benefit from the secrecy of the Confidential Information.

## COUNT 5 – AGAINST ENTERGRID, LLC

98.     As described in the preceding allegations of this Complaint, including but not limited to with respect to Count 1, ENTERGRID has misappropriated the trade secrets of ELMAGIN in violation of the PA UTSA.

## COUNT 6 – AGAINST ENTERGRID FUND I, LLC

99.     As described in the preceding allegations of this Complaint, including but not limited to with respect to Count 2, EGRD FUND I has misappropriated the trade secrets of ELMAGIN in violation of the PA UTSA.

## COUNT 7 – AGAINST CHAO CHEN

100.    As described in the preceding allegations of this Complaint, including but not limited to with respect to Count 3, CHEN has misappropriated the trade secrets of ELMAGIN in violation of the PA UTSA.

## COUNT 8 – AGAINST KARL PETTY

101.    As described in the preceding allegations of this Complaint, including but not limited to with respect to Count 4, PETTY has misappropriated the trade secrets of ELMAGIN in violation of the PA UTSA.

WHEREFORE, Plaintiff Elmagin Capital LLC respectfully requests judgment in its favor and against each Defendant in Counts 5-8 (a) for an order that each Defendant has misappropriated the trade secrets and other Confidential Information of ELMAGIN within the meaning of the Pennsylvania Uniform Trade Secrets Act, 12 Pa.C.S.A. §§ 5301 *et seq.;* (b) for an equitable accounting of amounts improperly received by Defendants and their principals and related entities as a result of misappropriating the trade secrets of ELMAGIN; (c) for all damages

permissible under the Pennsylvania Uniform Trade Secrets Act, including but not limited to the amounts found from such accounting and exemplary damages; (d) for an order enjoining each Defendant from further use or disclosure of the Confidential Information of ELMAGIN; (e) for an order that each Defendant shall identify to ELMAGIN any and all disclosures of the Confidential Information that it or he has made to any third party, (f) attorneys' fees, costs of suit, and such other and further relief as the Court deems just and proper.

### COUNT 9
### (BREACH OF CONTRACT AGAINST CHAO CHEN - MEMBERSHIP INTEREST AGREEMENT)

102.    ELMAGIN incorporates herein by reference the foregoing allegations.

103.    As set forth in the foregoing averments, ELMAGIN and CHEN entered into a valid agreement in the form of the MEMBERSHIP INTEREST AGREEMENT.

104.    CHEN, by his acts described herein, has breached that agreement.

105.    As a direct and proximate result of CHEN's breaches of the MEMBERSHIP INTEREST AGREEMENT, ELMAGIN has been harmed, and will continue to be harmed.

106.    ELMAGIN is entitled to money damages for CHEN's past breaches and to an injunction to prevent further breaches of the MEMBERSHIP INTEREST AGREEMENT.

WHEREFORE, Plaintiff Elmagin Capital, LLC respectfully requests judgment in its favor and against Defendant CHEN with respect to Count 9, for compensatory and other damages, for an injunction prohibiting further breaches of the MEMBERSHIP INTEREST AGREEMENT, costs of suit, and such other and further relief as the Court deems just and proper.

## COUNT 10
### (BREACH OF CONTRACT AGAINST CHAO CHEN -
### NON-DISCLOSURE AND NON-COMPETITION AGREEMENT)

107.    ELMAGIN incorporates herein by reference the foregoing allegations.

108.    As set forth in the foregoing averments, ELMAGIN and CHEN entered into a valid agreement in the form of the NDNC.

109.    CHEN, by his acts described herein, has breached that agreement.

110.    As a direct and proximate result of CHEN's breaches of the NDNC, ELMAGIN has been harmed, and will continue to be harmed.

111.    ELMAGIN is entitled to money damages for CHEN's past breaches and to an injunction to prevent further breaches of the NDNC.

112.    Pursuant to the terms of the NDNC, ELMAGIN is entitled to attorney fees in connection with its enforcement of the NDNC.


WHEREFORE, Plaintiff Elmagin Capital, LLC respectfully requests judgment in its favor and against Defendant CHEN with respect to Count 10, (a) for an order declaring that CHEN has breached the NDNC; (b) for compensatory and other damages; (c) for an injunction prohibiting by CHEN further breaches of the NON-DISCLOSURE AND NON-COMPETITION AGREEMENT; (d) for costs of suit pursuant to the express terms of the NDNC; and (e) such other and further relief as the Court deems just and proper.

## COUNT 11
### (BREACH OF CONTRACT AGAINST KARL PETTY - PETTY CONSULTING AGREEMENT)

113.   ELMAGIN incorporates herein by reference the foregoing allegations.

114.   As set forth in the foregoing averments, ELMAGIN and PETTY entered into a valid agreement in the form of the PETTY CONSULTING AGREEMENT.

115.   PETTY, by his acts described herein, has breached that agreement.

116.   As a direct and proximate result of PETTY's breaches of the PETTY CONSULTING AGREEMENT, ELMAGIN has been harmed, and will continue to be harmed.

117.   ELMAGIN is entitled to money damages for PETTY's past breaches and to an injunction to prevent further breaches of the PETTY CONSULTING AGREEMENT.

WHEREFORE, Plaintiff Elmagin Capital LLC respectfully requests judgment in its favor and against Defendant PETTY with respect to Count 11, for (a) a declaration that PETTY has breached the PETTY CONSULTING AGREEMENT; (b) compensatory and other damages; (c) an injunction prohibiting further breaches of the PETTY CONSULTING AGREEMENT; (d) costs of suit, and such other and further relief as the Court deems just and proper.

*\*\*\*Remainder of Page Intentionally Left Blank\*\*\**

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury on all issues so triable in accordance with Federal

Rule of Civil Procedure 38(b).


Dated:   <u>June 1, 2020</u>                    Respectfully Submitted,

**CAESAR RIVISE, PC**

By: _____

Douglas Panzer (PA Bar ID# 203354)
12th Floor
1635 Market Street
Philadelphia, PA  19103
Tel: (215) 567-2010
dpanzer@crbcp.com

*Attorneys for Plaintiff Elmagin Capital, LLC*

# EXHIBITS FILED UNDER SEAL