# EXHIBIT B

Confidential
Craig Pirrong, Ph.D.

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTER DISTRICT OF PENNSYLVANIA

- - -

ELMAGIN CAPITAL, LLC,                :
                                     :   NO. 2:20-cv-02576-TJS
         Plaintiff,                  :
                                     :
    -vs-                             :
                                     :
CHAO CHEN, et al.,                   :
                                     :
         Defendants.                 :

- - -

CONFIDENTIAL - ATTORNEY'S EYES ONLY

- - -

      Oral deposition of CRAIG PIRRONG, Ph.D., was taken pursuant to notice, held REMOTELY VIA VIDEOCONFERENCE, commencing at 9:58 a.m. on April 12, 2021, before April J. Foga, Certified Court Reporter, License No. 30XI00221300, Certified Realtime Court Reporter, Delaware Certified Shorthand Reporter, License No. 238-RPR, and Notary Public, there being present:

- - -

ZANARAS REPORTING AND VIDEO
REGISTERED PROFESSIONAL REPORTERS
1845 Walnut St., Ste. 938        2112 Bay Avenue
Philadelphia, PA 19103      Ocean City, NJ 08226
   (215) 790-7857              1-877-GO-DEPOS

ZANARAS REPORTING & VIDEO
1.877.GO.DEPOS

```
 1   A P P E A R A N C E S:

 2


 3           ND GALLI LAW, LLC
             BY:  CHARLES P. GOODWIN, ESQUIRE
 4                NICOLE D. GALLI, ESQUIRE
             One Liberty Place
 5           1650 Market Street, Suite 3600
             Philadelphia, PA 19103
 6           (215) 525-9580
             cgoodwin@ndgallilaw.com
 7           ndgalli@ndgallilaw.com
             Counsel for Plaintiff
 8


 9           CAESAR RIVISE, P.C.
             BY:  DOUGLAS PANZER, ESQUIRE
10           1635 Market Street, 12th Floor
             Philadelphia, PA 19103
11           (215) 567-2010
             dpanzer@crbcp.com
12           Counsel for Defendants


13


14   ALSO PRESENT:

15           Jessica Stauring

16


17


18


19


20
                         -  -  -
21


22


23


24
```

1  functionally identical?

2      A.      Well, that's something that, you

3  know, again, just requires, you know,

4  understanding and, you know, the application

5  of judgment.  And so these are an expression

6  of my opinions.  Is it comparing these things

7  on each of these dimensions?  You know,

8  they're doing, you know, pretty much --

9  they're doing the same thing in the same way.

10     Q.      Okay.  So functionally identical

11  means doing the same things in the same way?

12     A.      That's a decent working definition.

13  Yes.

14     Q.      Well, are Coke and Pepsi

15  functionally identical?

16             MR. PANZER:  Objection.

17             THE WITNESS:  So that's not

18     something that I've opined on.

19  BY MR. GOODWIN:

20     Q.      And what was your opinion about

21  that?

22             MR. PANZER:  Objection.

23             THE WITNESS:  So I just said I

24     haven't opined on it so --

Craig Pirrong, Ph.D.

Page 322

1  BY MR. GOODWIN:

2  **Q. Oh. You haven't opined. So you**
3  **have no opinion on whether Coke and Pepsi are**
4  **functionally identical?**

5  MR. PANZER: Objection.

6  THE WITNESS: So they are both
7  carbonated drinks, carbonated cola
8  drinks, but they have different formulas
9  presumably.

10 BY MR. GOODWIN:

11 **Q. Is there an economic test that would**
12 **tell us whether these two things -- whether**
13 **Coke and Pepsi are functionally identical?**

14 A.     Actually, there's a -- you know,
15 this is actually an issue that comes up in
16 antitrust law all the time as to whether two
17 things are, you know, substitutes for one
18 another. And so, you know, functionally
19 identical is another way of saying they're
20 close substitutes. And the formal economic
21 test for something like Coke and Pepsi, which
22 is the kind of thing that antitrust
23 authorities do in merger cases and has done in
24 antitrust cases, would be to calculate a

Page 323

1  cross-elasticity of demand, which would
2  basically say, well, how do the sales of one
3  product respond to a change in price of the
4  other product. And if that cross-elasticity
5  is very high, then they would be close
6  substitutes. If this cross-elasticity would
7  be very low, they would not be substitutes.
8  **Q. And just for the record, you haven't**
9  **performed that kind of analysis with respect**
10 **to the trading strategies of Elmagin and**
11 **Entergrid, correct?**
12 A. Well, so, that -- you know, I was
13 applying it -- you asked about an economic
14 concept for identifying whether things like
15 Coke and Pepsi were substitutes for one
16 another. I was responding to that question.
17 You know, essentially, the analysis of the
18 Entergrid trading strategies and their
19 relationship with the strategies that the
20 Breck algorithm would produce, you know,
21 that's essentially a quantitated test as to
22 showing whether they, you know, do the same
23 thing.
24 **Q. What do you mean by do the same**

Page 324

1  thing?

2  A.  So what is the ultimate objective of
3  these trading strategies?  It's to come up
4  with bids, all right?  And essentially, the
5  bids that are generated by these -- by the
6  Breck algorithm and generated by the algorithm
7  that Entergrid used to produce two-sided bids,
8  you know, that they essentially exhibited a
9  high degree of correlation.  That is if I knew
10 the Breck bid, I would, with a high degree of
11 accuracy, be able to predict the Entergrid
12 bid.

13 **Q.  Okay.  And if that correlation**
14 **didn't happen, would they still be**
15 **functionally identical?**

16 A.  Well, so basically, what this means
17 is that in some respects, it's an even more
18 rigorous test.  In addition to performing the
19 same things in the same way, as described in
20 the documentary evidence, this basically shows
21 that they produce essentially identical bids.

22 **Q.  Okay.  I asked you the**
23 **counter-factual here, which is if they didn't**
24 **produce identical bids, would they be doing**