## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELMAGIN CAPITAL LLC,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | **CIVIL ACTION NO.:** |
| **CHAO CHEN;** | : | **2:20-cv-02576-TJS** |
| **KARL PETTY;** | : | |
| **ENTERGRID LLC;** | : | |
| **ENTERGRID FUND I LLC** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**PLAINTIFF ELMAGIN CAPITAL, LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR**
**CIVIL CONTEMPT, ENFORCEMENT OF, AND SANCTIONS FOR,**
<u>**DEFENDANTS' PATTERN OF VIOLATIONS OF PROTECTIVE ORDER**</u>

**REDACTED FOR FILING**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

I.      Background ....................................................................................................2

II.     Terms of Stipulated Protective Order ......................................................3

        A.      Procedure for Challenges to the Designation of Material as AEO Under the Stipulated Protective Order ..................................................................3

        B.      Restrictions in the Stipulated Protective Order on Disclosure of Protected Material as Designated by the Disclosing Party ...............................5

III.    Defendants' Multiple Disclosures of Elmagin's Protected Material ......................5

        A.      Multiple Disclosures of Protected Material by Defendants' Counsel ...............6

                1.      Disclosure of Demonstratives to Defendants ................................6

                2.      Disclosure of Elmagin Strategies in Public Filings ......................9

                3.      Disclosure of Discovery Material to Maria Garibotti ...............10

        B.      Defendants Have Not Challenged Any AEO Designation of Elmagin Materials ............................................................................................................11

        C.      Defendants' Counsel Now Attempts to Unilaterally and Retrospectively De-Designate Elmagin's Materials Outside the Procedures of the Protective Order .......11

                1.      Defendants' Counsel Continues to Assert that They Can Determine What Portions of Elmagin's Combination Trade Secrets They May Disclose as "Generally Known" ..................................................................................11

                2.      Defendants' Counsel Has Never Challenged the Designation of Elmagin's Protected Material and It Is Not Defense Counsel's Prerogative to Publish It ............13

        D.      Defendants' Counsel Show No Remorse for These Disclosures and Denies Their Obligation to Correct Them ................................................................15

        E.      Defendants' Counsel Knew of the Stipulated Protective Order and its Requirements ...........................................................................................18

        F.      Defendants' Counsel Knew that Elmagin's Disclosed Information was AEO ...................................................................................................................18

        G.      The Court Has Authority to Impose Sanctions and Sanctions are Warranted .19

IV.     Civil Contempt .............................................................................................20

V.      Sanctions .......................................................................................................21

        A.      Reprimand .....................................................................................22

        B.      Instruction Precluding Statement that Elements or Methods are "Generally

Known".......................................................................................................................22

C.      Attorneys' Fees.........................................................................................23

        1.    Attorney's Fees as a Sanction Directly Address the Harm of Civil
Contempt    ...................................................................................................................23

        2.    Attorney's Fees are a Generally Accepted Sanction for Violation of a
Protective Order.............................................................................................................24

**VI.        CONCLUSION.............................................................................................25**

## <u>TABLE OF AUTHORITIES</u>

Am. Nat'l Bank & Tr. Co. v. Axa Client Sols., L.L.C.,
00 C 6786, 2002 U.S. Dist. LEXIS 14774 (N.D. Ill. Aug. 9, 2002)................................................15

Black v. Allegheny Cty.,
Civil Action No. 13-179, 2015 U.S. Dist. LEXIS 57230 (W.D. Pa. Apr. 24, 2015) ....................22

Brown v. United States,
 No. 17-1551, 2019 U.S. Dist. LEXIS 27162 (E.D. Pa. Feb. 21, 2019).........................................21

Chambers v. NASCO, Inc.,
501 U.S. 32, 111 S. Ct. 2123 (1991) ........................................................................................19, 20

Figueroa v. United States,
No. 1:13-cv-230, 2013 U.S. Dist. LEXIS 128124 (M.D. Pa. Sep. 9, 2013) ..................................22

F.T.C. v. Lane Labs-USA, Inc.,
624 F.3d 575 (3d Cir. 2010)..........................................................................................................20

Gov't Emples. Ins. Co. v. Nealey,
262 F. Supp. 3d 153, (E.D. Pa. 2017)(citing *Republic of Philippines v. Westinghouse Elec. Corp.*,
43 F.3d 65, 74 (3d Cir. 1994)) ........................................................................................................21

Grine v. Coombs,
214 F.R.D. 312, 370 (W.D. Pa. 2003) (citing *Titus v. Mercedes Benz of North America*, 695 F.2d
746 (3d Cir. 1982)) aff'd by *Grine v. Coombs*, 98 F. App'x 178 (3d Cir. 2004)...........................21

I.F. v. City of Vallejo,
 No. 2:18-cv-0673-JAM-CKD, 2021 U.S. Dist. LEXIS 28746 (E.D. Cal. Feb. 16, 2021)
......................................................................................................................................... 15,17,18, 19

John T. v. Del. Cnty. Intermediate Unit,
318 F.3d 545, 552 (3d Cir.2003) .............................................................................................19, 20

M. Cohen & Sons, Inc. v. Cohen Iron Works, LLC,
No. 11-1843, 2012 U.S. Dist. LEXIS 57104 (E.D. Pa. Apr. 24, 2012) .........................................21

Malibu Media, LLC v. Harrison,
No. 1:12-cv-01117-WTL-MJD, 2014 U.S. Dist. LEXIS 155694, (S.D. Ind. Nov. 3, 2014)... 14-15

<u>Marshak v. Treadwell</u>,
595 F.3d 478 (3d Cir. 2009)...........................................................................................20, 21

<u>Pa. Envtl. Enf't Project, Inc. v. Keystone Cement Co.</u>,
Civil Action No. 96-588 LON, 1997 U.S. Dist. LEXIS 23404 (D. Del. June 23, 1997)...............22

<u>Pansy v. Borough of Stroudsburg</u>,
23 F.3d 772 (3d Cir. 1994) (quoting *Beckman Indus., Inc. v. International Ins. Co*., 966 F.2d 470,
475-76 (9th Cir.), cert. denied, __ U.S., 113 S. Ct. 197 (1992)) ........................................................6

<u>York Grp., Inc. v. Pontone Casket Co., LLC</u>,
Civil Action No. 10-1078, 2014 U.S. Dist. LEXIS 105078 (W.D. Pa. Aug. 1, 2014)...... 20, 21, 23

I.      **Background**

Plaintiff, Elmagin Capital, LLC, brings this motion for civil contempt, enforcement of the Stipulated Protective Order (Doc. 013-1; Approved at Doc. 015), and for sanctions against Defendants and/or counsel for Defendants. This motion arises out of Defendants' multiple violations of the terms of the Stipulated Protective Order, making improper disclosure of the designated Protected Material of Elmagin, including public disclosure of material relating to Elmagin's trading strategies – the trade secrets at the heart of this case – based on Defendants' counsel's unilateral determination of the right to do so and without any challenge to such designations under the Stipulated Protective Order.  Subject to the Stipulated Protective Order a party may designate sensitive information disclosed through discovery as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY ("AEO").   No person receiving AEO information may use or disclose such Protected Material except as expressly permitted by the Protective Order.   Nor may any such person unilaterally deem material designated by the disclosing party as AEO to be otherwise classified without use of the express challenge procedures of the Protective Order.   Defendants objectively had knowledge of the Stipulated Protective Order, the preparation of which they participated in, to the content of which they stipulated, and the protections of which they have employed for the designation of their own material and information.  Despite this, Defendants' counsel has disclosed AEO information of Elmagin to unauthorized parties at least three times, though Defendants have never challenged the AEO designation of that material.  These infractions include (i) Defendants' counsel's disclosure to Defendants of Plaintiff's demonstrative exhibits, containing large amounts of AEO information, (ii) Defendants' disclosure of critical AEO information of Elmagin by Defendants' filing on the public docket of numerous elements of Elmagin's trading strategies at the heart of this case, and

(iii) Defendants' disclosure of Elmagin's AEO information to an intended expert witness outside the procedures of the Stipulated Protective Order.  Faced with Plaintiff's objections to these disclosures, Defendants, by counsel, argued that such disclosures were permissible by offering their unilateral conclusions as to the level of confidentiality of the Protected Material and arguing they have no obligation to seek retrieval of the information.  This pattern of disregard for the procedures and protections of the Stipulated Protective Order constitute civil contempt and demonstrate that sanctions are necessary to ensure no further harm to Plaintiff by the disclosure of its trade secrets or other confidential information.

## II.    Terms of Stipulated Protective Order

### A. Procedure for Challenges to the Designation of Material as AEO Under the Stipulated Protective Order

A party has the ability pursuant to the Stipulated Protective Order to designate material as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY (Doc. 013-1 at § 9).  Absent a challenge to that designation through the procedures of the Protective Order, such material is to be treated as provided in Section 9 of the Protective Order (Id. at § 13).  Section 13(b) of the Stipulated Protective Order provides the procedures and mechanisms for challenging the designation of any material as Attorney's Eyes Only (or otherwise):

(b)      Any challenge to a designation of Discovery Material under this Order shall be written, shall be served on outside counsel for the Producing Party, shall particularly identify the documents or information that the Receiving Party contends should be differently designated, and shall state the grounds for the objection.  Thereafter, further protection of such material shall be resolved in accordance with the following procedures:

3

(i)     The Parties shall meet and confer either in person, by telephone or by video conference in a good faith effort to resolve the dispute;

(ii)    Failing agreement, the Receiving Party may bring the issue before the Court in accordance with the Court's policies and procedures.  The Producing Party shall have the burden of justifying the disputed designation; and

(iii)   Notwithstanding any challenge to a designation, the Discovery Material in question shall continue to be treated as designated by the Producing Party under this Order until the Party who designated the Discovery Material in question withdraws such designation in writing.

Defendant undertook none of these procedures to lodge any challenge as to the designation of descriptions of Elmagin's trading strategies as AEO.  Nor did Defendants undertake these procedures with respect to any AEO-designated documents of Elmagin, including the document to which Defendants refer as "the Yuros Study" – designated by Plaintiff as AEO, but quoted, excerpted, and described extensively by Defendants in their public filing of their Motion In Limine To Exclude The Testimony Of Matthew Yuros And Related Exhibits (Doc. 112). Nor could Defendants reasonably have so challenged the designation of this highly sensitive information of Elmagin.  Section 9(a) of the Stipulated Protective Order expressly includes as AEO material, *inter alia*, "trading strategies" and "methodologies for bid selection."  The so-called Yuros Study describes one such trading strategy step-by-step and additionally includes significant detail of confidential competitive analyses.  Defendants, in turn, excerpted that description extensively in their public filing. *See*, e.g., Doc. 112 at 5-7 (Defs.' Memorandum at 3-4).

4

B.  Restrictions in the Stipulated Protective Order on Disclosure of Protected Material
    as Designated by the Disclosing Party

The Stipulated Protective Order provides that "Protected Material shall not be distributed, disclosed, or made available to anyone except as expressly provided in th[e] Order."  (Doc. 13-1 at §6(a)).  With respect to information designated as Protected Material at the HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY level, Section 9(b) of the Protective Order expressly lists the limited permitted disclosures.  Neither public filing of the information with the Court or providing of access to the Receiving Party is permitted[1].  To the contrary, Section 15(a) expressly precludes the same, stating, "[a]bsent written permission from the Producing Party or a court order secured after appropriate notice to all interested persons, a Receiving Party may not file or disclose in the public record any Protected Material except for its use at trial."

## III.   Defendants' Multiple Disclosures of Elmagin's Protected Material

Elmagin has, during this litigation, disclosed subject to the AEO designation, information describing its trading strategies – the information at the very heart of this litigation – in multiple forms.  These include, without limitation, Elmagin's Second Responses To Defendants' First Set Of Interrogatories, dated October 15, 2020, Elmagin's Responses To Defendants' Second Set Of Interrogatories, dated December 30, 2020, numerous technical and research documents, and aforementioned document referred to by Defendants as the "Yuros Study," existing in multiple copies, including those attached as Exhibits 1-5 to Defendants' Motion in Limine To Exclude The Testimony Of Matthew Yuros And Related Exhibits, filed on October 15, 2021 (Doc. 112).

"The extent to which a party can rely on a protective order should depend on the extent to

---

[1] Section 9(b)(viii) provides an exception permitting disclosure to: "The author or recipient of a document containing the information or a custodian or other person who otherwise legally possessed, had access to, or knew the information."

which the order induced the party to allow discovery…For instance, reliance would be greater where a trade secret was involved." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 790 (3d Cir. 1994)(quoting *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 475-76 (9th Cir.), cert. denied, __ U.S., 113 S. Ct. 197 (1992)).   In this trade secret case, Elmagin has disclosed the full details of its trading strategies in response to direct interrogatories and document requests asking for such information.   Elmagin, in reliance on the safety of the Protective Order, has done so as thoroughly as possible in view of both its affirmative undertaking of its obligations as a litigant and to assure against the Defendants' numerous protestations of its beliefs that it required further disclosure.[2]   Elmagin must be able to rely on the protections of such an Order, particularly in a trade secret case  such as this.

### A.   Multiple Disclosures of Protected Material by Defendants' Counsel

Defendants' counsel has now disclosed Protected Material of Elmagin at least three times outside the bounds of the Stipulated Protective Order.

### 1.   Disclosure of Demonstratives to Defendants

Defendants' counsel sent the contents of Elmagin's three demonstrative exhibits to their clients, of which the exhibit titled "Elmagin Comparison" (Plaintiff's Trial Exhibits) demonstrative contained large amounts of  HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY information in the form of copies of multiple strategy description documents.   Such disclosure was addressed during a call with Judge Savage on October 19, 2021 and in an email to Defendants' counsel later the same day.   *See* Exh. B, *Email of D. Panzer to N. Galli*, *RE: Defendants' Disclosure of Elmagin's AEO Information* at 5-6 (Oct. 19, 2021 at 3:16 PM).   In that

---

[2] See, e.g. *C. Goodwin Email to D. Panzer*, November 17, 2020, 9:58 PM; *C. Goodwin Email to D. Panzer*, November 18, 2020, 3:16 PM; *C. Goodwin Email to D. Panzer*, December 14, 2020, 6:05 PM, Collected as Exh. A.

email, Elmagin's counsel requested Defendants' counsel inform them of any disclosure "beyond the permitted disclosures of AEO information under the Protective Order." *See id.*

Defendants' counsel confirmed delivery of the demonstratives to Defendants Dr. Chao Chen and Dr. Karl Petty. However, Defendants' counsel disagreed that the demonstratives were ATTORNEYS' EYES ONLY Protected Material. *See* Exh. B at 5 (Oct. 19, 2021, at 6:55 PM). Elmagin's counsel immediately informed Defendants' counsel that such disclosure was in violation of the Protective Order and requested a meeting with Defendants' counsel as soon as possible, sending example screenshots of the ATTORNEYS' EYES ONLY information in the Elmagin Comparison demonstrative. *See* Exh. B, *Email of D. Panzer to N. Galli* at 4-5 (Oct. 20, 2021, 11:22 AM); *see also* Id. at 2-4 (Oct. 20, 2021, 11:36 AM).

Defendants' counsel asserted that such ATTORNEYS' EYES ONLY information did not exist in their copy of the PowerPoint, to which Elmagin's counsel responded that such information was accessed from the copy sent to Defendants' counsel. *See* Exh. B at 2 (Oct. 20, 2021, 11:41 AM); Id. at 1 (Oct. 20, 2021, 11:45 AM). Hours later, Defendants' counsel responded that they informed Defendant Chen of Elmagin's position and were "able to catch up with Dr. Petty via text," asking Dr. Petty to delete the emails containing the demonstratives when he landed from a flight. *See Id* at 1 (Oct. 20, 2021, 1:26 PM). Defendants' counsel also admitted that Dr. Petty "looked at the slide decks briefly" but did "not recall seeing copies of any documents in the decks." *Id.*

On October 20, 2021, at 3:00 PM, counsel for both parties held a meet and confer via Zoom to discuss Defendants' counsel's disclosure. This substance of this meeting was memorialized in an email sent by Elmagin's counsel. *See* Exh. C, *Email of D. Panzer to N. Galli, Disclosure of Elmagin Demonstrative Exhibits* at 3-4 (Oct. 20, 2021 at 11:04 PM). During the

video call, Defendants' counsel conducted a screen share, opening the demonstratives they received from Elmagin's counsel, where the ATTORNEYS' EYES ONLY information was visible. *Id.* Defendants' counsel stated that they "see it now" and "didn't notice it" before. This, despite Defendants' counsel's representation that three attorneys from its office reviewed the demonstrative document. *Id.* While on the call, Defendants' counsel stated that Dr. Petty had not yet viewed the emails and was "confused" as to which documents counsel was referring, this statement contradicted Defendants' counsel's earlier statement that Dr. Petty "looked at the slide decks briefly." *See* Exh. B at 1 (Oct. 20, 2021, 1:26 PM). On the call, Elmagin's counsel asked Defendants' counsel to have Dr. Chen and Dr. Petty destroy both of their copies of the demonstrative exhibits, which Defendants' counsel confirmed had been undertaken. *See* Exh. C at 3-4 (Oct. 20, 2021 at 11:04 PM).

Defendants' counsel's disclosure of this demonstrative to Drs. Chen and Petty included full-text images of all of the following Elmagin AEO documents:

> Plaintiff's Deposition Exhibit P0055
> Plaintiff's Deposition Exhibit P0081 (EC-AEO-003889368)
> Plaintiff's Deposition Exhibit P0056 (EC-AEO-003889063 - 065)
> Plaintiff's Deposition Exhibit P0059 (EC-AEO-003846900)
> Dep. of Chao Chen 166:1-24
> Dep. of Chao Chen 150:1-24
> Dep. of Chao Chen 177:1-24
> EC-AEO-003862536
> Plaintiff's Deposition Exhibit P0053 (EN-SOURCE-005066 - 067)
> Plaintiff's Deposition Exhibit P0052 (EC-AEO-003766109)
> Plaintiff's Deposition Exhibit P0054 (EC-AEO-003889202)
> EN-SOURCE-005069 (See Plaintiff's Deposition Exhibit P0053)
> EN-SOURCE-005076 (See Plaintiff's Deposition Exhibit P0053)
> EC-AEO-003889020
> EC-AEO-003889025
> EC-AEO-003889021
> EN-SOURCE-005081 (See Plaintiff's Deposition Exhibit P0053)
> EC-AEO-003889140 - 141
> EC-AEO-003889212

Collected as Exh. D hereto.

### 2.   Disclosure of Elmagin Strategies in Public Filings

Defendants' counsel has also disclosed significant portions of Elmagin's trading strategies in public filings, including extensive textual and graphical excerpts from AEO-designated documents. Such disclosure resulted in the detailed information of the methodology of Elmagin's trading strategies being made available to the general public on numerous legal document aggregation sites, including, by way of example only, Lexis (and multiple subsidiary properties such as CourtLink and Lex Machina), Westlaw, and Pacer Monitor. By filing, on the public docket, details of the trading strategies of Elmagin and other internal analyses – excerpted from AEO-designated documents – Defendants have caused to be disseminated, the very trade secrets at the heart of this case. This made available to all, including potentially other energy market participants, the valuable strategies that Elmagin has sought through this litigation, and at great expense, to protect.

On October 19, 2021, the parties held a phone conference wherein Elmagin's counsel informed Defendants' counsel that Defendants' Memorandum in Support of Defendants' Motion in Limine to Exclude the Testimony of Matthew Yuros and Related Exhibits (ECF 112), filed publicly, contained significant, HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY details of Elmagin's "Breck Strategy." *See* Exh. B, *Email of D. Panzer to N. Galli* at 8-9 (Oct. 19, 2021, 12:18 PM). This included details such as:





*Id.* Despite the fact that a) these elements track identically to much of the description of Elmagin's "Breck" trading strategy in its AEO interrogatory responses and other materials and b) they disclose, verbatim, textual and graphical contents of the AEO "Yuros Study," Defendants' counsel responded by disagreeing and arguing that the Memorandum and exhibits did not contain ATTORNEYS' EYES ONLY information, stating that counsel "was surprised to hear that purported trade secret level of detail was in the memorandum as I had reviewed it prior to file and did NOT believe that to be the case." *See* Exh. B at 6-7 (Oct. 19, 2021, 2:56 PM) (emphasis in original). Upon being informed by Defendants' counsel, at Elmagin's request, of this significant exposure of Elmagin's trading strategy information, this Court ordered the Memorandum and Exhibits sealed during a phone conference with the parties the morning of October 19, 2021. *See* Exh. E, *Email of N. Galli to D. Panzer,* Oct. 19, 2021, 9:26 AM.

### 3.    Disclosure of Discovery Material to Maria Garibotti

On Monday, April 12, 2021, Defendants' counsel notified Elmagin's counsel that Defendants "decided to have one of the A[nalysis] G[roup] team members, Dr. Maria Garibotti, testify in this matter as a rebuttal expert (in addition to Mr. Zarcu)...She will be submitting a rebuttal report on Friday." *See* Exh. F, *Email of N. Galli to D. Panzer* (Apr. 12, 2021, 6:03 PM). This disclosure was less than five days prior to Dr. Garibotti's rebuttal report submission, despite that the parties' joint Stipulated Protective Order requires at least 5 full days' disclosure prior to permitting an expert to view ATTORNEYS' EYES ONLY content (ECF 13-1 §K 11(b), 12(a)-

(b)).  Further, Defendants had already disclosed the information to Dr. Garibotti, providing Elmagin with no opportunity to confer with counsel as to its objections per section 12(b) of the Stipulated Protective Order (ECF 13-1 § 12(b)).

Elmagin's counsel responded: "Dr. Garibotti is not authorized to see any of the CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE materials of Elmagin (collectively "Protected Material"). Confirm by 8 am, Tuesday, April 13, 2021, that Dr. Garibotti has not been given access to any such Protected Material information." *See* Exh. F, *Email of D. Panzer to N. Galli,* Apr. 12, 2021, 9:55 PM.  Defendants' counsel responded that Elmagin's position was "frivolous" and asserted that Dr. Garibotti had the right to view the documents-at-issue because "Dr. Garibotti is employed at Analysis Group and has been working to support Mr. Zarcu." *See* Exh. F, *Email of N. Galli to D. Panzer*, Apr. 12, 2021, 10:52 PM.  Again, in this instance, Defendants' counsel had undertaken a unilateral interpretation of the bounds of the Protective Order itself and the dissemination and use of AEO material specifically.

    B.  <u>Defendants Have Not Challenged Any AEO Designation of Elmagin Materials</u>

Defendants' counsel have not, at any time in this litigation, challenged the designation of any HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY material as designated by Elmagin, including any of Elmagin's interrogatory responses, any version of the "Yuros Study" or any of the AEO documents included in the "Elmagin Comparison" demonstrative.

    C.  <u>Defendants' Counsel Now Attempts to Unilaterally and Retrospectively De-Designate Elmagin's Materials Outside the Procedures of the Protective Order</u>

    **1.  Defendants' Counsel Continues to Assert that They Can Determine What Portions of Elmagin's Combination Trade Secrets They May Disclose as "Generally Known"**

Counsel's main weapon in this attempt is to claim that they can disclose individual elements of Elmagin's Protected Material. They conflate and attempt to justify this with Elmagin's rightful legal argument that trade secrets may be found in combinations of otherwise known elements. (*See* Doc. 094 – Memorandum Opinion on Motions for Summary Judgment at 10; "A combination of different elements may constitute a trade secret, even if each element is otherwise generally known or readily ascertainable, as long as the combination is unique and offers a competitive advantage.") This effort by Defendants' counsel serves to vitiate the whole of Elmagin's trade secrets. These actions, given the totality of the circumstances, present grave concern as to whether this effort is purposeful.

On October 21, 2021, Defendants' counsel wrote "[w]ith regard to the Yuros motion, as I stated to you and the Court on multiple occasions now, we believe that no Elmagin AEO was revealed in our brief. The information in the brief consists of information that has been admitted to be and/or is on its face generally known and/or readily ascertainable by Elmagin and/or has been deemed such by the Court in its decision on the motion for summary judgment." Similarly, two days before, Defendants' counsel defended the public filing of Defendants' Motion in Limine to Exclude the Testimony of Matthew Yuros and Related Exhibits arguing: "You have admitted in numerous filings and the Court has ruled that, among other things the individual elements of Elmagin's trading strategies are, themselves, not confidential and are generally known or readily ascertainable. The Yuros memorandum does not describe all elements of the trading strategies but rather mentions at a high level a couple of the generally known or readily ascertainable elements. As for other parts of the Yuros Study referenced in the memo, that was all relying on publicly available information." Exh. B, *N. Galli Email to D. Panzer*, at 6-7 (October 19, 2021, 2:56 PM).

12

In each argument, Defendants' counsel attempts to debate their way into a right to disclose the elements of Elmagin's trade secrets. Those elements describe the trading strategies at the center of this case, have been expressly disclosed by Elmagin in interrogatory responses as constituting the trade secrets at issue, and were provided through discovery in documents designated as AEO and never challenged under the Protective Order. However, Defendants' brief in support of its motion reveals, one piece at a time, extensive portions of Elmagin's Breck strategy, and the fact of Plaintiff's use of these techniques in its strategies, and Defendants' counsel continues to purport that their judgment can render that disclosure proper[3].

**2.      Defendants' Counsel Has Never Challenged the Designation of Elmagin's Protected Material and It Is Not Defense Counsel's Prerogative to Publish It**

In *Malibu Media, LLC v. Harrison*, the Southern District of Indiana faced precisely the situation before this Court. The court there, discussing unilateral disclosure decisions by defendants' counsel Quearry wrote:

> As Plaintiff notes in its reply, Mr. Quearry has not properly challenged the confidentiality of any of the three names. [Dkt. 251 at 1.] The protective order states that a party receiving information designated as confidential "*shall* notify the disclosing party [*12] in writing and request a release of confidentiality. If such release is not forthcoming in writing within five (5) business days, the receiving party may *apply to the Court* for an order requiring the release of confidentiality." [Dkt.177 ¶ 9 (emphasis added).] As Plaintiff explained—and as Mr. Quearry did not dispute [*see* Dkt. 244]— Defendant "*never* challenged any of Plaintiff's confidentiality designations under the Protective Order." [Dkt. 235 at 3-4 (emphasis original).]
>
> Further, although the protective order states that a party may challenge the confidentiality of designated information "at any time," [Dkt. 177 ¶¶ 10, 15], this does not give Mr. Quearry leave to challenge the confidentiality of information in his response to

---

[3] Defendants' counsel's repeated refusals to accept Elmagin's designation of AEO information based on Defendants' counsel's own judgment and statements denying the protections of the Stipulated Protective Order to this properly designated AEO information include statements to Court staff. See, e.g., Exh. E at 1 (October 19, 2021 9:26 AM) stating, "I just spoke with the Judge's other Deputy Joanne and requested that the Yuros Motion (docket 112) be put under seal immediately, **explaining that we had a difference of opinion on whether it revealed anything confidential** but that we were not objecting to your request." (Emphasis added.)

Plaintiff's motion. Mr. Quearry must follow the protective order's specific requirements for challenging confidentiality by making a written request of Plaintiff and then applying to the Court. Further, the Court will not construe Mr. Quearry's brief in opposition as an application to the Court challenging Plaintiff's designations. *See* S.D.Ind.L.R.7-1(a) ("A motion must not be contained within a brief, response, or reply to a previously filed motion, unless ordered by [*13] the court.").

Unless and until Mr. Quearry complies with the protective order's procedures and successfully challenges the confidentiality of information *designated* as confidential, Mr. Quearry must *treat* such information as confidential. **It is not Mr. Quearry's prerogative to decide what information may or may not harm Plaintiff if publicly disclosed.**

*Malibu Media, LLC v. Harrison*, No. 1:12-cv-01117-WTL-MJD, 2014 U.S. Dist. LEXIS 155694, at *11-13 (S.D. Ind. Nov. 3, 2014)(emphasis added).

Elmagin and its counsel have made disclosures of information and documents throughout this litigation in compliance with and reliance upon the procedures of the Protective Order.  In full recognition of its terms, Elmagin's counsel reminded Defendants' counsel from the earliest stages of discovery "the extent any document in Elmagin's production appears to you to be improperly designated, you may simply call out that document by Bates number and we will review it to determine whether, despite our best efforts, that document has been mis-designated. In such a case, Elmagin will re-produce the document if appropriate."  Exh. A, *D. Panzer Email to C. Goodwin* at 2 (Nov. 18, 2020 at 9:44 AM).  Despite this, neither Defendants nor their counsel have ever challenged any designation of Elmagin's Protected Material.  Instead, Defendants' counsel has simply chosen which portions of that Protected Material it may publish or otherwise disclose.  Defendants' failure to follow the procedures of the Protective Order moots their attempts at retroactive justification.

[A party] cannot justify or excuse its own violation of the Protective Order with allegations that [the other] also violated the same order. The fact remains that Emerald had designated the documents as highly confidential and that Equitable itself admitted it received the information from these documents. No objection to Emerald's designation of the information at issue had been resolved by counsel or by Judge Ashman at the time Equitable disseminated it. **This moots Equitable's argument that the information was not actually highly confidential**. Whether it was or not is not relevant when the Protective Order agreed to by the parties

14

provides it will be treated according to its designation until and unless such designation is disputed and the dispute is resolved.

*Am. Nat'l Bank & Tr. Co. v. Axa Client Sols., L.L.C.*, 00 C 6786, 2002 U.S. Dist. LEXIS 14774, at *12 (N.D. Ill. Aug. 9, 2002)(emphasis added).

      D.   <u>Defendants' Counsel Show No Remorse for These Disclosures and Denies Their Obligation to Correct Them</u>

Ultimately awarding the moving party monetary sanctions of $14,000, the court in *I.F. v. City of Vallejo, No. 2:18-cv-0673-JAM-CKD, 2021 U.S. Dist. LEXIS 28746* took into account the post-disclosure behavior of the receiving party's counsel.  The court wrote "counsel have not appeared particularly remorseful in their communications with opposing counsel or in their briefing to the court, after learning of their Protective Order violations. Despite acknowledging that much of the information in the KTVU story—including actual footage of confidential-designated testimony—came directly from them, plaintiffs' counsel primarily have looked to deflect blame and accuse defendants of wrongdoing, in turn. The court understands some degree of defensiveness when met with a motion for such staggering sanctions, especially between counsel who regularly oppose each other in highly charged civil rights cases. All counsel would be better served, however, by lowering the temperature when possible by acknowledging their own wrongdoing, even if accidental." *I.F. v. City of Vallejo*, No. 2:18-cv-0673-JAM-CKD, 2021 U.S. Dist. LEXIS 28746, at *48 (E.D. Cal. Feb. 16, 2021).

In direct analogy, Defendants' counsel has attempted in numerous ways to place the blame upon Plaintiff, Plaintiff's counsel, and Plaintiff's counsel's staff for Defendants' counsel's act of disclosing Protected Material and Defendants' counsel deny they have any obligation to undo their public disclosures of Elmagin's asserted trade secrets.

- Despite the fact that the demonstrative exhibit that Defendants' counsel sent to

15

Defendants, as discussed above, included copies of numerous AEO documents – *with their Bates stamps and designations shown* – Defendants' counsel argued that these were "included in…demonstratives that you served without confidentiality endorsement", Exh. B, *N. Galli Email to D. Panzer* at 6-7 (October 19, 2021, 2:56 PM), and that "[t]he demonstratives were not embossed as confidential or AEO, nor was there any statement in a cover email that they were designated as such." *Id* at 5 (October 19, 2021, 6:55 PM).

- Two days later, Defendants' counsel continued to try to shift blame. Even then acknowledging that the comparison demonstrative contained large amounts of AEO-designated documents (including the stamped designations), Defendants' counsel asserted that they "believe that Elmagin's counsel bears responsibility here as well, for failing to properly designated the Comparison in the first place." Exh. C, *N. Galli Email to D. Panzer*, October 21, 2021, 2:18 PM.

- Defendants' counsel sought to deflect blame to the paralegal of Caesar Rivise who served Plaintiff's trial exhibits, writing " i. Mr. Harger did not indicate that any of the demonstratives contained AEO information when they were provided to us on October 1…[and] ii. Mr. Harger did not indicate the demonstratives contained animation and embedded documents when they were provided to us on October 1." *Id*.

- Defendants' counsel similarly sought to blame Plaintiff's counsel, writing "[i]t would have been reasonable – and I suggest required under the Protective Order - to advise counsel that the Exhibits were to still be considered AEO before trial." *Id*.

16

- Defendants' counsel blamed Plaintiffs for not explaining to them that PowerPoint included animation, stating "[n]o instructions for running the animation were provided with the exhibit" and complaining that "the animation does not run automatically but requires manual advancement of some sort." *Id.*

- Defendants' counsel even pointed to a statement of the Court as a post facto attempt to justify their disclosure: "[I]t is questionable whether demonstratives can ever be considered AEO, since their very purpose is for use at trial. Indeed, the Court advised you on our call regarding the Yuros motion that the proceedings would be open." *Id.*

- While making some efforts to identify publicly available copies of their offending filing, Defendants argue expressly that they "do not agree [they] had an obligation to do so." Exh. B, *N. Galli Email to D. Panzer* at 7 (October 19, 2021, 2:56 PM).

A party may not escape its liability for its failures to abide by the order of a court by finger-pointing, responsive, blame-shifting attempts. The court observed similarly, in *I.F. v. City of Vallejo*:

> [P]laintiffs argue that defendants themselves violated the Protective Order by designating the 2019 Internal Investigation documents and deposition testimony confidential in the first place. (ECF No. 81 at 22-23.) This sort of finger-pointing is utterly unhelpful. Whether defendants *also* violated the Protective Order has no bearing on whether *plaintiffs* committed the asserted violations. See Harmston v. City & Cty. of San Francisco, 2007 U.S. Dist. LEXIS 87144, 2007 WL 3306526, at *6 (N.D. Cal. Nov. 6, 2007) (in holding that counsel violated protective order by providing confidential-designated deposition testimony to the media and filing it on the public record, noting that propriety of original confidential designation is "beside the point"; under the terms of the protective order—similar to the Protective Order here—**a confidential designation, "even if later determined to be improper, remains in place until the Court orders otherwise after a properly-presented challenge"**).

*I.F. v. City of Vallejo*, No. 2:18-cv-0673-JAM-CKD, 2021 U.S. Dist. LEXIS 28746, at *33 (E.D.

Cal. Feb. 16, 2021).

The fact remains that Defendants' counsel has, multiple times, disclosed Protected Material of Elmagin without ever challenging the designation of that material by the procedures of the Protective Order.

E.   Defendants' Counsel Knew of the Stipulated Protective Order and its Requirements

The Stipulated Protective Order in this matter is – obviously – stipulated to by the parties. Counsel for the Defendants participated extensively in its preparation.  See, e.g., Exh. G, *N. Galli Email to D. Panzer*, September 18, 2020, 8:01 PM (including various replies between 10:52 AM and 8:01 PM).  Defendants' lead counsel also authorized her signature to be entered on the motion to the Court for entry of the Order.  Exh. H, *N. Galli Email to D. Panzer*, September 18, 2020, 9:05 PM.   Throughout this litigation Defendants have produced documents through discovery that they designated pursuant to the Protective Order and Defendants filed a motion with the Court seeking to permit access for Defendant Chen to the report of Elmagin's expert witness, couching that as a "Motion to Enforce Protective Order."  (Doc. 52.)  Defendants' counsel objectively knew of the Stipulated Protective Order.

F.   Defendants' Counsel Knew that Elmagin's Disclosed Information was AEO

Defendants' counsel has disclosed large swaths of AEO information of Elmagin that counsel knew was Protected Material.

Even in an instance where some excuse might be reasonable for overlooking protected material, courts have opined that "counsel's handling of the confidential-designated portion of testimony was negligent… the public filing and subsequent media disclosure was only negligent, not more. As for the initial filing, Mr. Buelna satisfactorily explains how this small portion of

confidential-designated testimony was overlooked in the middle [*43] of the otherwise non-protected testimony." *I.F. v. City of Vallejo*, No. 2:18-cv-0673-JAM-CKD, 2021 U.S. Dist. LEXIS 28746, at *42-43 (E.D. Cal. Feb. 16, 2021).  Here, by contrast, Defendants' counsel filed publicly a memorandum disclosing throughout its text discussion of a trading strategy expressly alleged in the Complaint in this matter to be the trade secret at issue.  Defendants' counsel, in the same memorandum, copied, pasted, and published contents from a document – the "Yuros Study" – that was originally withheld as privileged and which was marked on every page as ATTORNEYS' EYES ONLY.

Defendants' lead counsel in this matter examined the Yuros Study for over one hour in the deposition of Matthew Yuros, examination spanning seventy-five (75) full pages of the transcript of that deposition, wherein counsel expressly referred to the AEO designation of the document.  *See* Exh. I, Deposition of Matthew Yuros at pp. 147-222.  Counsel could not have had any reasonable belief that the information contained in that document was appropriate for public filing.  And yet it remains, that even if Defendants' counsel had such belief, no challenge to the designation was ever lodged before its contents were publicly disclosed.

These actions show complete disregard for the status of Elmagin's Protected Material in that document.  And by the standard of *I.F. v. City of Vallejo,* above, Defendants' counsel's handling of that Protected Material was in fact negligent.

G.  The Court Has Authority to Impose Sanctions and Sanctions are Warranted

"[A] court may assess attorney's fees when a party has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 111 S. Ct. 2123, 2133 (1991).  "The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police

itself." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S. Ct. 2123, 2133 (1991).

## IV.   Civil Contempt

The above actions of Defendants and their counsel constitute civil contempt.  The Third

Circuit has stated that "proof of contempt requires a movant to demonstrate '(1) that a valid order

of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants

disobeyed the order.'" *F.T.C. v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010) (quoting

*Marshak v. Treadwell*, 595 F.3d 478, 485 (3d Cir. 2009)). These elements "must be proven by

'clear and convincing' evidence, and ambiguities must be resolved in favor of the party charged

with contempt." *John T. v. Del. Cnty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir.2003).  "The

moving party need not prove that a violation was willful." *M. Cohen & Sons, Inc. v. Cohen Iron*

*Works, LLC*, No. 11-1843, 2012 U.S. Dist. LEXIS 57104, at *5 (E.D. Pa. Apr. 24, 2012)(citing

*F.T.C. v. Lane Labs*, 624 F.3d at 582).

In *York Grp., Inc. v. Pontone Casket Co., LLC*, Civil Action No. 10-1078, 2014 U.S. Dist.

LEXIS 105078 (W.D. Pa. Aug. 1, 2014), this Court's sister court analyzed precisely the issue of

a party's "disclosure of 'highly confidential' information in their submissions." *Id* at *4.  In

closely analogous circumstances, York Group, by the filing of a motion on the public docket,

disclosed and "detail[ed] the contents of [a] customer list" of Pontone and a consulting agreement,

which Pontone had designated, pursuant to the protective order in the case, as protected material.

After doing so, York Group's counsel argued that the customer list was not, in fact, protected

material based on its own interpretation of the propriety of the designation.  *Id* at *35-36.  The

court pointed out that "to the extent [York] argue[s] the content of the customer lists are not

confidential, the protective order provides a procedure for the parties to challenge designation of

information." *Id* at *36.  York Group did not utilize those procedures.  Thus, the court determined

"[u]nder those circumstances, [York] violated the protective order when they disclosed the content of the customer lists attached to the consulting agreement in their [filing]." *Id* at *37.

For civil contempt, the Court has "broad discretion to fashion a sanction to achieve remedial relief." *John T.*, 318 F.3d at 554 (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193-94, 69 S. Ct. 497, 93 L. Ed. 599 (1949)). "Sanctions for civil contempt serve to coerce the nonmoving party into compliance with [the Court's] orders and to compensate the moving party for losses sustained by the disobedience. *21*, 595 F.3d at 494 (quoting *Robin Woods, Inc.*, 28 F.3d at 400). *M. Cohen & Sons, Inc.* 2012 U.S. Dist. LEXIS 57104, at *5 (E.D. Pa. Apr. 24, 2012).

## V.    Sanctions

Sanctions that a Court may impose "can include a warning, a formal reprimand, placing the case at the bottom of the calendar, fines, imposition of costs or attorney fees, temporary suspension of culpable counsel from practice before the court, dismissal of the suit unless new counsel is secured, preclusion of claims or defenses, or imposition of fees and costs on plaintiff's counsel." *Grine v. Coombs*, 214 F.R.D. 312, 370 (W.D. Pa. 2003) (citing *Titus v. Mercedes Benz of North America*, 695 F.2d 746, 749 n.6 (3d Cir. 1982)) aff'd by *Grine v. Coombs*, 98 F. App'x 178 (3d Cir. 2004)[4].

"Where there is a 'pattern of wrongdoing' or a 'wrongdoing that actually prejudices the wrongdoer's opponent,' the need for stronger and more severe inherent sanctions." *Gov't Emples. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 174 (E.D. Pa. 2017)(citing *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994)).

---

[4] Accord *Brown v. United States*, No. 17-1551, 2019 U.S. Dist. LEXIS 27162, at *17 (E.D. Pa. Feb. 21, 2019).

A. <u>Reprimand</u>

The District of Delaware has considered precisely the situation that occurred in Defendants' counsel's public filing of the Motion in Limine To Exclude The Testimony Of Matthew Yuros And Related Exhibits, filed on October 15, 2021 (Dckt. 112), where "a document that should have been filed under seal was not filed under seal."  The court found that the defendant "should have taken greater care not to release…confidential information."  As a result, the court granted (in part) the movant's motion for sanctions, issuing a reprimand based upon the failure to file under seal.  *Pa. Envtl. Enf't Project, Inc. v. Keystone Cement Co.*, Civil Action No. 96-588 LON, 1997 U.S. Dist. LEXIS 23404, at *12-13 (D. Del. June 23, 1997).  Such sanction, in the form of a reprimand, is appropriate here, particularly in view of the pattern of action, lack of remorse, and attempts at blame-shifting.

B. <u>Instruction Precluding Statement that Elements or Methods are "Generally Known"</u>

In response to a party or attorney's failure to obey an order, an appropriate sanction may include "instructions from the Court to refrain from engaging in" specified behavior.  *Black v. Allegheny Cty.*, Civil Action No. 13-179, 2015 U.S. Dist. LEXIS 57230, at *11 (W.D. Pa. Apr. 24, 2015).  See also *Figueroa v. United States*, No. 1:13-cv-230, 2013 U.S. Dist. LEXIS 128124, at *4 (M.D. Pa. Sep. 9, 2013)("failure to comply with previous sanctions and instructions leaves only the sanction of dismissal.").

Here, Defendants' counsel has repeatedly defended their belief that they may disclose Protected Material or portions of Protected Material to the extent they unilaterally determine the component pieces of that material is "admitted to be and/or is on its face generally known and/or readily ascertainable."  Exh. C, *Email N. Galli to D. Panzer*, Oct. 21, 2021 at 2:18 PM.  See also Exh. B, *Email N. Galli to D. Panzer*, Oct. 19, 2021 at 2:56 PM ("You have admitted in numerous

filings and the Court has ruled that, among other things the individual elements of Elmagin's trading strategies are, themselves, not confidential and are generally known or readily ascertainable. The Yuros memorandum does not describe all elements of the trading strategies but rather mentions at a high level a couple of the generally known or readily ascertainable elements.").

In view of Defendants' counsel's unwillingness to accept the restrictions accompanying AEO Protected Materials, despite counsel's additional unwillingness to follow any challenge procedures of the Protective Order, an instruction from the Court is justified. Plaintiff requests that the Court instruct Defendants' counsel that:

Defendants' counsel shall make no statement or determination a) that any particular combination of elements, methods, or steps in relation to a trading strategy for use in wholesale energy markets constitutes or does not constitute a trade secret, b) that any individual element, method, or step, or combination thereof, described as comprising any part of a trading strategy for use in wholesale energy markets is "generally known" or "well known," or c) that Elmagin using, as part of any of its trading strategies, any individual element, method, or step, or combination thereof, is "generally known" or "well known."

C. Attorneys' Fees

1. Attorney's Fees as a Sanction Directly Address the Harm of Civil Contempt

"Sanctions for civil contempt serve two purposes: 'to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience. *York Grp., Inc.*, U.S. Dist. LEXIS 105078 at *39 (citing *Robin Woods*, 28 F.3d at 400 (quoting *McDonald's Corp. v. Victory Inv.*, 727 F.2d 82, 87 (3d Cir. 1984)); internal quotation marks omitted). "[A]ttorneys' fees may be awarded against a party that is held in contempt; indeed, the cost of

23

bringing the violation to the attention of the court is part  of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order."   *York Grp., Inc.*, U.S. Dist. LEXIS 105078, at *39-40 (W.D. Pa. Aug. 1, 2014)(citing *Robin Woods*, 28 F.3d 396 at 400 (quoting *Cook v. Ochsner Found. Hosp*., 559 F.2d 270, 272 (5th Cir. 1977)); internal quotation marks omitted).

### 2.      Attorney's Fees are a Generally Accepted Sanction for Violation of a Protective Order

In *Trenado v. Cooper Tire & Rubber Co.*, 274 F.R.D. 598, 600-01 (S.D. Tex. 2011), the District Court collected cases across Circuits in holding:

> The court agrees with the many other courts that have concluded that attorney's fees and costs, as well as other appropriate sanctions, may be awarded under Rule 37(b)(2) for a violation of a protective order. See, e.g., Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 784 (9th Cir. 1983) (awarding attorney's fees and costs pursuant to Rule 37(b)(2) for a violation of a protective order); Am. Nat'l Bank & Trust Co. ex rel. Emerald  [*601]  Invs. LP v. AXA Client Solutions, LLC, 2002 U.S. Dist. LEXIS 9511, 2002 WL 1067696, *5, 7 (N.D. Ill. May 28, 2002) (same), aff'd, 2002 U.S. Dist. LEXIS 14774, 2002 WL 1838144, *6 (N.D. Ill. Aug. 12, 2002);  [**8] Poliquin v. Garden Way, Inc., 154 F.R.D. 29, 31-32 (D. Me. 1994) (same); Whitehead v. Gateway Chevrolet, 2004 U.S. Dist. LEXIS 11979, 2004 WL 1459478, *3 (N.D. Ill. June 29, 2004) (declining to follow Lipscher and awarding sanctions against an attorney under Rule 37(b) for a violation of a protective order); see also Lambright v. Ryan, 2010 U.S. Dist. LEXIS 52781, 2010 WL 1780878, at *5 (D. Ariz. May 4, 2010) (concluding that Rule 37(b) authorizes a district court to impose sanctions on a party that fails to comply with a protective order); Schiller v. City of New York, 2007 U.S. Dist. LEXIS 40253, 2007 WL 1623108, *3 (S.D.N.Y. June 5, 2007) (same); Lewis v. Wal-Mart Stores, Inc., 2006 U.S. Dist. LEXIS 46730, 2006 WL 1892583, *3 (N.D. Okla. July 10, 2006) (same).

In addition to the preparation and filing of this motion for enforcement of the Court's existing Protective Order and for civil contempt, Elmagin has incurred the otherwise unnecessary fees associated with its counsel's exchanges with Defendants' counsel.  Plaintiff's counsel has had to engage in numerous correspondence and meetings with Defendants' counsel to inform

Defendants' counsel of their unauthorized disclosure, negotiate for Defendants' counsel's agreement to accept that they had even disclosed AEO, and to request Defendants' counsel to take remedial action, such as contacting third parties.  Plaintiff's counsel has also spent significant time contacting third parties, including for example Lexis and Lex Machina to request and confirm the removal of public access to the improperly filed motion.  But for Defendants' counsel's disclosure, none of these efforts would have been necessary.  Monetary sanctions are appropriate in the form reimbursement of the attorney fees associated with these efforts, in an amount to be demonstrated within ten (10) days of the Court's disposition of this motion.

## VI.    CONCLUSION

Defendants' and/or their counsel have engaged in a pattern of breaching their duty to abide by the Stipulated Protective Order in this case.  They have done so with full knowledge of the existence of that valid order of the Court – acts constituting civil contempt.  This has resulted in Defendants' counsel's improper disclosure or use (including, necessarily, use on behalf of Defendants), at least three times, of Protected Material of Plaintiff, Elmagin Capital, LLC, which material was identified as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, and which designation was never challenged by Defendants pursuant to the Stipulated Protective Order.  This pattern has resulted in the disclosure – including publication – of the critical trading strategy details of Elmagin that are the heart of this trade secret case.  Defendants and Defendants' counsel should be sanctioned for these actions in the manner discussed above and as set forth in the motion and order submitted herewith.

Respectfully Submitted,

Dated:  November 29, 2021          By: ____/s/ Douglas Panzer_____
                                   Douglas Panzer (PA Bar ID 203354)
                                   Manny Pokotilow (PA Bar ID 13310)
                                   Allison White (PA Bar ID 329108)
                                   Caesar Rivise, P.C.
                                   1635 Market Street, 12th Floor
                                   Philadelphia, PA 19103
                                   Tel: (215) 567-2010
                                   dpanzer@crbcp.com
                                   mpokotilow@crbcp.com
                                   awhite@crbcp.com
                                   *Attorneys for Plaintiff,*
                                   *Elmagin Capital, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of November 2021, a copy of the foregoing PLAINTIFF ELMAGIN CAPITAL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR CIVIL CONTEMPT, ENFORCEMENT OF, AND SANCTIONS FOR DEFENDANTS' PATTERN OF VIOLATIONS OF PROTECTIVE ORDER, including exhibits thereto, and Proposed Order was served on the below listed Attorneys for Defendants via the Court's ECF system:

Nicole D. Galli
Charles P. Goodwin

ND Galli Law LLC
One Liberty Place
1650 Market Street
Suite 3600, #00250
Philadelphia, PA 19103
ndgalli@ndgallilaw.com
cgoodwin@ndgallilaw.com

*Attorneys for Defendants*

 */s/ Douglas Panzer*

Douglas Panzer