# EXHIBIT C

| | |
|---|---|
| **From:** | Nicole Galli <ndgalli@ndgallilaw.com> |
| **Sent:** | Thursday, October 21, 2021 2:18 PM |
| **To:** | Doug Panzer |
| **Cc:** | Charles P. Goodwin, Esq.; Allison White; Manny Pokotilow |
| **Subject:** | RE: Disclosure of Elmagin Demonstrative Exhibits |

**CAUTION:** This email is from an external source. Use caution opening links and attachments.

Doug,

I am not going to respond point by point to your self-serving and incomplete email, but rather will highlight a few key points in response:

1. With regard to the Yuros motion, as I stated to you and the Court on multiple occasions now, we believe that no Elmagin AEO was revealed in our brief. The information in the brief consists of information that has been admitted to be and/or is on its face generally known and/or readily ascertainable by Elmagin and/or has been deemed such by the Court in its decision on the motion for summary judgment. Notwithstanding that, rather than argue the point further we consented in the request to have the brief placed under seal. As we also indicated to the Court, if our belief was incorrect, we had acted in good faith at all times, which the Court accepted.
    a. Pursuant to paragraph 18(a) of the protective order, we immediately cooperated in every request you made to secure the information and remove it from the public domain. Indeed, I believe we went beyond what would be considered reasonable, which is all that is required under the order, but we did not argue that point with you.
    b. In case there is any doubt, I would also point out that neither Dr. Petty nor Dr. Chen have been provided a copy of the motion, although as you know, both have seen the Yuros study months ago, at your direction during settlement discussions.
2. With regard to the Demonstrative exhibits, I note the following:
    a. With regard to the Tree exhibit, until your email below, you repeatedly (and falsely) stated that it contained AEO of Elmagin.
        i. That obviously was incorrect and thank you for confirming that.
        ii. I thus stand by my statement yesterday that you should check your facts before accusing counsel of making "demonstrably false" statements. That is a serious accusation and should not be made lightly.
    b. With regard to the Comparison exhibit, neither the powerpoint slides nor the file itself were labeled AEO.
        i. Mr. Harger did not indicate that any of the demonstratives contained AEO information when they were provided to us on October 1
        ii. Mr. Harger did not indicate the demonstratives contained animation and embedded documents when they were provided to us on October 1
        iii. Under Paragraph 15(a) of the protective order, it is questionable whether demonstratives can ever be considered AEO, since their very purpose is for use at trial. Indeed, the Court advised you on our call regarding the Yuros motion that the proceedings would be open
            1. In fact, in one of your emails you stated "However, those demonstratives being for use at trial, they do not bear designations solely for that reason." – thus it was your deliberate choice not to mark these exhibits, not an oversight

       2. It would have been reasonable – and I suggest required under the Protective Order - to advise counsel that the Exhibits were to still be considered AEO before trial
- c. Although we take full responsibility for the inadvertent disclosure of the Comparison to our clients, we do believe that Elmagin's counsel bears responsibility here as well, for failing to properly designated the Comparison in the first place and for failing to point out the embedded AEO documents in the PowerPoint or even that the comparison was fully animated
- d. As fully laid out in our Notice to the Court substituting the Exhibit to MIL 108, neither us, nor to our knowledge anyone in our office, saw any of the embedded documents in the Exhibit (in fact, no one on our team brought it to our attention as we were discussing the motion, one of our concerns about it being the lack of Elmagin material being contained in the motion). Instead, as we stated to you and in fact as we noted in our Motion, in terms of underlying evidence, all we saw was excerpts of Entergrid documents and testimony that were contained on the actual PowerPoint slides. Thus, at least the following is true:
    - i. not only were there no direct indications in the exhibit or accompanying email to indicate that it was an animation instead of an ordinary slide deck
        1. No instructions for running the animation were provided with the exhibit
        2. instead we were left to (1) guess it was animated; and (2) try to figure out how to run the animation ourselves
        3. notably the tree exhibit, though also animated, worked precisely the same whether you paged through it in edit mode or in animation mode and did not work like the Comparision, adding to the confusion
    - ii. The embedded documents were not visible when the document was viewed in the ordinary default "edit" mode at 100%
    - iii. The embedded documents did not pop up when boxes were clicked on in edit mode.
    - iv. I did, in fact, look at the document in presentation mode previously but apparently not the first slide with a pop-up document associated with it (I believe I started a few slides in). As you saw on the Zoom, on my computer, after you get past the first embedded document, NO embedded documents pop up when you page through it using the down arrow key or the page down key.
        1. Since nothing popped up when I clicked on the boxes in edit mode, I had not tried that in animated mode.
        2. Even now that we understand one needs to click on the boxes in animated mode, we still remain unable to get all the documents to pop up in that fashion – instead the document advances to the next slide or exits presentation mode altogether and defaults into edit mode
        3. the animation does not run automatically but requires manual advancement of some sort, which we clearly have been unable to achieve
    - v. when printed, only the slides appear
    - vi. when converted to pdf, as required by the Clerk, only the slides appear
- e. As soon as being made aware of the fact that the Comparison document contained AEO information, we took immediate steps to remedy the inadvertent disclosure, consistent with Paragraph 18 of the Protective Order, requesting that Dr. Petty destroy all such copies in his possession.
    - i. Further, once you suggested that Dr. Chen may not have seen all the Elmagin AEO information in the Comparison, we immediately requested that Dr. Chen destroy all such copies in his possession, notwithstanding the fact that it is the very information that you claim he already knew and accuse him personally of stealing.
    - ii. Both Dr. Petty & Dr. Chen complied with these requests as soon as they were physically able to do so (as you know, Dr. Petty was on a plane to New York at the time he was notified and could not take care of this until he arrived in NY).
- f. Notably, your recounting of the "facts" here omits the significant point that Dr. Petty does not even recall the information in the Comparison
    - i. Dr. Petty did not recall receiving the demonstratives when I first asked him about it yesterday
    - ii. Dr. Petty does not recall having seen any embedded documents in the demonstratives

- iii. In fact, Dr. Petty only vaguely recalls seeing a tree in the demonstratives
- g. Both Dr. Petty and Dr. Chen reviewed the Yuros study at your direction last fall and remain in possession of it
  - i. That study, as you know, recounts all of the allegedly trade secret details of Breck
- h. Under these circumstances, there does not appear to be any likelihood of prejudice to Elmagin
  - i. While at Elmagin, Dr. Chen was privy to this information, according to Elmagin.  In any event, trial by ambush has no place in the federal courts.  The only potential prejudice here is the loss of surprise.  Your reliance on surprise and the concurrent efforts to handicap Dr. Chen from participating in his defense reveal only how meritless your case is.
  - ii. Dr. Petty and Dr. Chen were provided all details of Breck at your direction last fall
  - iii. Dr. Petty has no memory of the contents demonstratives at this time, and may not have even seen any of the AEO documents in the Comparison demonstrative when he viewed it (just as we did not)
  - iv. Elmagin contends that Dr. Petty already knows everything there is to know about Breck and Faber, at a minimum, since he was exposed to Hydra and Gryphon
- i. Finally, we take issue with the notion that it is our responsibility to find a way to prepare a pdf version of the Comparison document to provide to the Court.  This is your exhibit, and you should prepare and present a copy that enables the Court to fully review it, even without viewing it in presentation mode.
  - i. Since you have refused to do so, we will endeavor to try to do so and will reserve all rights to bill Elmagin for the cost of that effort

Nicole

---

**From:** Doug Panzer <dpanzer@crbcp.com>
**Sent:** Wednesday, October 20, 2021 11:04 PM
**To:** Nicole Galli <ndgalli@ndgallilaw.com>
**Cc:** Charles P. Goodwin, Esq. <cgoodwin@ndgallilaw.com>; Allison White <awhite@crbcp.com>; Manny Pokotilow <mpokotilow@crbcp.com>
**Subject:** Disclosure of Elmagin Demonstrative Exhibits

Dear Nicole,
I confirm that at 3PM today, Wednesday, October 20, 2021, we met by Zoom, joined by Chuck Goodwin, Manny Pokotilow, and Allison White, to discuss the issue of Defendants' counsel having provided to the Defendants, including Karl Petty and Chao Chen, copies of Plaintiff's demonstrative exhibit "2021-0375 Elmagin Comparison FINAL.pptx" (the "Comparison Demonstrative").  As I stated in my email to you at 3:16 PM on Tuesday, October 19, the Comparison Demonstrative contains significant amounts of HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY material of each of Elmagin and Entergrid.  The AEO information of Elmagin in the document includes at least the following documents or document excerpts:

Plaintiff's Deposition Exhibit P0055
Plaintiff's Deposition Exhibit P0081 (EC-AEO-003889368)
Plaintiff's Deposition Exhibit P0056 (EC-AEO-003889063 - 065)
Plaintiff's Deposition Exhibit P0059 (EC-AEO-003846900)
Dep. of Chao Chen 166:1-24
Dep. of Chao Chen 150:1-24
Dep. of Chao Chen 177:1-24
EC-AEO-003862536
Plaintiff's Deposition Exhibit P0053 (EN-SOURCE-005066 - 067)
Plaintiff's Deposition Exhibit P0052 (EC-AEO-003766109)
Plaintiff's Deposition Exhibit P0054 (EC-AEO-003889202)
EN-SOURCE-005069

EN-SOURCE-005076
EC-AEO-003889020
EC-AEO-003889025
EC-AEO-003889021
EN-SOURCE-005081
EC-AEO-003889140 - 141
EC-AEO-003889212

Despite your insistence in multiple e-mails today that the Comparison Demonstrative did not contain AEO of Elmagin, as I demonstrated on our Zoom call, the Comparison Demonstrative document as provided to you on October 1, in our identification of Plaintiff's trial exhibits, a copy of which you sent to me by email at 11:42 AM today, did in fact contain each of the above.  I also asked that you share your screen, which you did, demonstrating that your copy of the Comparison Demonstrative was the same.  As such, each of your statements to me by email today asserting that this demonstrative did not contain a significant amount of Elmagin's AEO, including that "none of those documents are in the version [Defendants' counsel] received," that "only Entergrid Discovery Materials were excerpted or cited in the demonstratives," and that "[n]o Discovery Materials of Elmagin were excerpted or cited within the demonstratives" was incorrect.

You confirmed to me that you provided copies of this document to both Dr. Chen and Dr. Petty.  I have now received your emails stating that each of Dr. Chen and Dr. Petty has deleted all copies of this Comparison Demonstrative.

Your representation to me during our Zoom meeting was that three attorneys at your office reviewed the Comparison Demonstrative, but none was aware that it contained any Elmagin AEO.  You said that this is due to the fact that no attorney in your office either scrolled to the left or right in the "edit view" of PowerPoint or ran the Comparison Demonstrative in PowerPoint's presentation view.

With respect to this document, you and Chuck also stated your desire to provide an update to the Court to alert the Judge and chambers that the static exhibits your provided in your motion in limine did not fully represent the contents of the exhibit.  Chuck requested that I provide to you a PDF or other static versions of each view from the presentation.  I suggested that the exhibit itself is the only true representation of it and that to the extent you believe you need a static version of every view, it is the responsibility of your office to create that.  While Chuck characterized this as me "refusing" to cooperate and to provide what you asked, I stated multiple times that such efforts are not an appropriate burden to place of Plaintiff's counsel, nor should Elmagin bear the costs of that burden.  I stated then and reiterate, to the extent you and your staff are unable to create any static views you believe necessary, we can discuss this further.  At this time, however, I stand by my assertion that this is the responsibility of Defendants' counsel and my client will not bear the cost, nor will we commit the time necessary to create exhibits for Defendants' use.  Based upon your email earlier this evening to the Clerk of the Court, it appears that you have elected to supply the native Comparison Demonstrative to the Court.

While I appreciate your attempt to eliminate copies of this Comparison Demonstrative in the possession of your clients, we still consider this a significant breach of the Protective Order.  Particularly in view of the large quantity of highly relevant AEO in one place, this disclosure risks significant prejudice to Plaintiff's ability to objectively examine Drs. Chen and Petty if they have reviewed it.  This concern of prejudice is heightened by the fact that this comes on the heels of Defendants' filing publicly of the Yuros motion in limine and your similar refusal in the immediate period after our alerting you to that to admit that the document contained AEO of Elmagin. (See, e.g., your email to me October 19, 2021 2:56 PM.)  At the very least, in each of these instances your disclosures contained information that Elmagin had designated as AEO according to the Protective Order and the Protective Order does not permit any party to unilaterally determine that information of the other is not AEO.  Rather, Section 13 of the Protective Order provides formal procedures for any such attempt to re-designate information.  You did not make any request or challenge under that section to anything relevant to this topic.

Given these two closely timed mishandlings of Elmagin's AEO, we continue to consider what actions Elmagin may need to take to seek relief and we reserve our right to do so.

I hope that this will be the last such incident.

Finally, as I agreed, I have reviewed Plaintiff's demonstrative exhibit "2021-0375 Elmagin Strategy Tree FINAL.pptx." I confirm that that document contains AEO of Defendants only and does not contain AEO of Elmagin.

Sincerely,
Doug

**Douglas Panzer**
Partner
Registered Patent Attorney
**Caesar Rivise, PC**
7 Penn Center│12th Floor│1635 Market Street│Philadelphia, PA 19103-2212
215.567.2010 (P)│215.751.1142 (F)
dpanzer@caesar.law│Bio at http://www.caesar.law│Download vCard