**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ELMAGIN CAPITAL LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | CIVIL ACTION NO.: |
| CHAO CHEN; | : | 2:20-cv-02576-TJS |
| KARL PETTY; | : | |
| ENTERGRID LLC; | : | |
| ENTERGRID FUND I LLC | : | |
| | : | |
| Defendants. | : | |
| | : | |

~~**PLAINTIFF ELMAGIN CAPITAL LLC'S**~~
**DEFENDANTS'** **PROPOSED JURY INSTRUCTIONS**

Nicole D. Galli (PA Bar ID #78420)
Charles P. Goodwin (PA Bar ID #66500)
ND GALLI LAW LLC
One Liberty Place
1650 Market Street
Suite 3600, #00250
Philadelphia, PA 19103
(215) 525-9580 main
(215) 525-9585 fax
ndgalli@ndgallilaw.com
cgoodwin@ndgallilaw.com

*Attorneys for*

I.   INTRODUCTION..................................................................................................2

   1)   Description of Case.........................................................................................3

II.   JURY INSTRUCTIONS — CLAIMS OF MISAPPROPRIATION OF TRADE SECRETS .......................................................................................................3

   2)   Trade Secret Claims........................................................................................4

   3)   Reasonable Means to Keep Secret..................................................................6

   4)   Independent Economic Value..........................................................................7

   5)   Acts Constituting Misappropriation of a Trade Secret ...................................8

   6)   Evidence of Misappropriation.......................................................................10

   7)   Remedies for Misappropriation of Trade Secrets–Compensatory Damages...................12

   8)   Remedies for Misappropriation of Trade Secrets – Exemplary Damages, Willful and Malicious Conduct.......................................................................................13

   9)   Personal Liability of Officers Who Directly Participate in Misappropriation...................14

III.   JURY INSTRUCTIONS – CLAIMS OF BREACH OF CONTRACT .........................15

   10)   Claims for Breach of Contract.....................................................................16

   11)   Breach of Contract.....................................................................................16

   12)   Damages – Breach of Contract ...................................................................17

*Defendants*

**I.    INTRODUCTION**................................................................................................**4**

   1)   Description of Case ..................................................................................... 4

**II.  JURY INSTRUCTIONS – CLAIMS OF MISAPPROPRIATION OF TRADE
SECRETS** ...........................................................................................................**6**

   2)   Preponderance of the Evidence Standard ................................................. 6

   3)   Trade Secret Claims .................................................................................. 7

   4)   Reasonable Means to Keep Secret ........................................................... 11

   5)   Independent Economic Value ................................................................... 13

   6)   Acts Constituting Misappropriation of a Trade Secret .......................... 14

   7)   Evidence of Misappropriation ................................................................. 21

   8)   Remedies for Misappropriation of Trade Secrets -Compensatory Damages.................... 26

   9)   Remedies for Misappropriation of Trade Secrets - Exemplary Damages, Willful and
Malicious Conduct ........................................................................................... 28

   10)   Personal Liability of Officers Who Directly Participate in Misappropriation ............. 29

**III.    JURY INSTRUCTIONS – CLAIMS OF BREACH OF CONTRACT** .....................**31**

   11)   Claims for Breach of Contract ................................................................ 31

   12)   Breach of Contract ..........................................................**Error! Bookmark not defined.**

   13)   Damages – Breach of Contract................................................................. 34

## I.      INTRODUCTION

### 1.      Description of Case

This is an action for misappropriation of trade secrets and breach of contract. The Plaintiff in this case is Elmagin Capital, LLC.  The Defendants in this case are Dr. Chao Chen, Dr. Karl Petty, Entergrid LLC, and Entergrid Fund I, LLC.  I may, at times, collectively refer to Entergrid LLC and Entergrid Fund I, LLC as "Entergrid."

In this action, the Plaintiff, Elmagin, claims that Defendant ChaoDr. Chen, one of Elmagin's founders and a former owner of Elmagin, misappropriated Elmagin's trade secrets by using Elmagin's algorithmic trading strategies for wholesale electricity markets to develop and usesubstantially similar strategies at the new trading company he founded, Entergrid LLC and use those strategies in trading on behalf of Entergrid Fund I, LLC, and by disclosing that information to others at Entergrid. I may, at times, collectively refer to Entergrid LLC and Entergrid Fund I, LLC as "Entergrid.". Elmagin also claims that Defendant KarlDr. Petty, formerly a contractor to Elmagin and now an owner of Entergrid, misappropriated its trade secrets. Elmagin further claims that Defendants Entergrid LLC and Entergrid Fund I, LLC, by and through its officers ChaoDrs. Chen and Karl Petty, misappropriated Elmagin's trade secrets by using algorithmic trading strategies derived from Elmagin's trading strategies to trade in wholesale electricity markets.

In its breach of contract claims, Elmagin alleges that Defendants ChaoDr. Chen and KarlDr. Petty breached thetheir respective non-disclosure agreements they entered into with Elmagin by disclosing and/or using Elmagin's confidential and proprietary information, including its trading strategies, including by using information of Elmagin to develop trading strategies of Entergrid and by disclosing those trading strategies and information about them to others, including Entergrid employees.

Dr. Chen, Dr. Petty and Entergrid contend that all trading strategies in use at Entergrid were independently developed by Dr. Chen, Dr. Petty and the Entergrid team and neither copied nor derived from any alleged trade secrets of Elmagin. They also point out that it is undisputed that Dr. Chen took no documents or code with him from Elmagin and he honored his one-year non-compete after he left Elmagin. Drs. Chen and Petty and Entergrid also contend that Elmagin has failed to accurately identify its trade secrets, in that its definitions of its trading strategies are

4

inaccurate, incomplete, and/or define a strategy that did not exist at the time that either Dr. Chen or Dr. Petty were associated with Elmagin (such that Dr. Chen and/or Dr. Petty did not have access to them).  In addition, Drs. Chen and Petty and Entergrid contend, that as described by Elmagin, Elmagin's trading strategies are not trade secrets because, among other things, they each consist solely of combinations of elements that individually are generally known and/or readily ascertainable by a reasonably sophisticated algorithmic trader and/or trader in the wholesale electricity market.  Drs. Chen and Petty and Entergrid also contend that the combinations of these known elements are themselves also generally known and/or readily ascertainable and thus not trade secrets.

Drs. Chen and Petty and Entergrid also contend that, even if you find that some portion or all of Elmagin's trading strategies are trade secrets, the trading strategies developed at and used by Entergrid were not derived from Elmagin's trading strategies, are not substantially similar to Elmagin's trading strategies and, further, that any similarities that may exist are all aspects that are not properly considered Elmagin's trade secrets.

Drs. Chen and Petty also contend that they honored all of their duties and obligations under their agreements with Elmagin and, in any event, that the agreements are unenforceable due to a failure of "consideration" i.e., a bargained for exchange of value.

Should you find that Elmagin has proven its claims for either trade secrets misappropriation and/or breach of contract in this case, Drs. Chen and Petty and Entergrid contend that Elmagin has not proven that it is entitled to any compensatory or punitive damages here or, in the alternative, that any damages recoverable should be limited to a brief "head start" period in Entergrid's research and development process.

## II.   JURY INSTRUCTIONS – CLAIMS OF MISAPPROPRIATION OF TRADE SECRETS

### 2.  Preponderance of the Evidence Standard

This is a civil case.  Elmagin has the burden of proving its case by what is called the preponderance of the evidence.  That means Elmagin has to prove to you, in light of all the evidence, that what it claims is more likely so than not so.  To say it differently: for each fact and for each element of a claim, if you were to put the evidence favorable to Elmagin and the evidence favorable to Drs. Chen and Petty and Entergrid on opposite sides of the scales, Elmagin would have to make the scales tip somewhat on its side.  If Elmagin fails to meet this burden for even one element of a claim, the verdict must be for Drs. Chen and Petty and Entergrid. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

⸺⸺

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind.

Authority: Third Circuit Model Jury Instr. 1.1 (track changes used to show substantive changes from model).

### ~~2.~~3. Trade Secret Claims - Introduction

Elmagin has brought claims of trade secret misappropriation against ~~each of the Defendants, Chao~~Dr. Chen, ~~Karl~~Dr. Petty, Entergrid LLC, and Entergrid Fund I, LLC.  Elmagin has brought these claims under two statutes, ~~The~~the Federal Defend Trade Secrets Act ("DTSA") and the Pennsylvania Uniform Trade Secrets Act ~~(the "~~("PUTSA~~") and the Federal Defend Trade Secrets Act (the "DTSA").  "~~").  These statutes are designed to allow businesses to protect their trade secrets and remedy the misappropriation of them by others in federal or state court. Generally speaking, under both DTSA and PUTSA, to succeed on a claim of misappropriation, a plaintiff must first establish the existence of a trade secret by identifying, with specificity, information it believes qualifies as its trade secret, proving that it is actually a trade secret, and then, finally, by demonstrating that its trade secret has been misappropriated by another.

Authority:  ECF 94 at 6; 18 U.S.C. §§ 1836(b)(1), 1839(3), (5); 12 Pa. C.S. § 5302. *See also Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. Appx 273, 278 (3d Cir. 2019) (applying the identical New Jersey Trade Secrets Act); *Fishkin v. Susquehanna Partners, G.P.*, 563 F. Supp. 2d 547, 581 (E.D. Pa. 2008), *aff'd in part*, 340 F. Appx 110 (3d Cir. 2009); *Acosta, Inc. v. Navitsky*, Civ A. No. 17- 3282, 2018 WL 1251640 at *8 (E.D. Pa. Mar. 12, 2018); *Arconic Inc. v. Novelis Inc.*, Civ. A. No. 17-1434, 2020 WL 7247112 at *11 (W.D. Pa. Dec. 9, 2020)

### 4.  Definition of a Trade Secret

I will now explain to you what the law considers a trade secret.  Although the DTSA and the PUTSA use slightly different wording to define a trade secret, they essentially protect the same type of information. Both define a trade secret as information that:

a) the owner has taken reasonable means to keep secret;

b) derives independent economic value, actual or potential, from being kept secret; and

c) is ~~not~~neither generally known nor readily ascertainable ~~(not readily discoverable)~~ by proper means~~; and~~ to;

d) others who cannot readily access it who would obtain economic value from its disclosure or use.

The ~~Defend Trade Secrets Act defines~~DTSA identifies the types of things that could be a "trade secret"~~ as~~ including the following: "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes."  ~~The PUTSA defines trade secret similarly~~The PUTSA similarly identifies the types of things that can be a "trade secret" as "[i]nformation, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process".Together, these statutes define the types of information that could be a protectable trade secret.

If you find Elmagin has failed to prove one or more of these elements by a preponderance of the evidence, you must find against it, holding Elmagin does not possess a protectable trade secret, and find in favor of Drs. Chen and Petty and Entergrid on that specific trade secret. This must be performed for every alleged trade secret.

If you find that Elmagin has proved each and every element above, you must then determine whether the Dr. Chen, Dr. Petty, Entergrid, and/or the Entergrid Fund have individually or collectively misappropriated a qualifying trade secret.

We will now focus on the standards that apply to Elmagin's burden to prove that the two strategies it claims were misappropriated here - Breck and Faber - are protectable trade secrets.

Authority:  ECF 94 at 6-9; 18 U.S.C. § 1839(3); 12 Pa. C.S. § 5302; *Teva Pharm. Inc. v. Sandhu*, 291 F. Supp. 3d 659, 675 (E.D. Pa. 2018); *Acosta*, 2018 WL 1251640 at *8.

**5.   Plaintiff's Burden to Properly Identify its Alleged Trade Secrets and to Prove the Identified Information is a Trade Secret**

The plaintiff in a trade secret misappropriation case must first properly identify the trade secrets it alleges the defendant have misappropriated.  This identification process has two parts. Here, Elmagin must:

> 1) sufficiently identify the information it claims as a trade secret; and
>
> 2) allegeprove facts supporting Elmagin's that support its assertion that the information is indeed protectable as such.a trade secret.

Through the course of this litigation, I have determined that Elmagin has provided, bysufficiently identified, through written summaries and documentary evidence, information that sufficiently identifies financial transmission rightstwo Elmagin trading strategies of Elmagin, known as Breck and Faber. (ECF 94 at 8). Elmagin has alleged that these trading strategies are trade secrets and that the Defendants have misappropriated them., that it contends are trade secrets, enough so that you, the jury, can decide whether Elmagin's descriptions of the trading strategies are accurate and, then, whether they are protectable trade secrets.

However, here, as I noted earlier, Drs. Chen and Petty and Entergrid contend that Elmagin's descriptions of Breck and Faber are incomplete and/or inaccurate.  It will be up to you to decide whether Elmagin has proven that its descriptions of Breck and Faber are correct.

Once you have decided what the Breck and Faber trading strategies are, you must decide whether they are protectable as trade secrets.  Elmagin has alleged that these trading strategies are trade secrets. The Defendants contend, however, that Elmagin's trading strategies are not protectable as trade secrets for a number of reasons, including that the individual elements of Breck and Faber are not protectable as trade secrets and, further, that the trading strategies Breck and Faber, each as a whole, are not a sufficiently unique combination of known elements to qualify for trade secret protection and/or in combination fail to provide Elmagin with a competitive advantage.  You, as the jury, must consider the facts and evidence presented and determine whether the trading strategies that Elmagin has identified are protectable trade secrets.

~~A combination of different elements may constitute a trade secret, even if each element is otherwise generally known or readily ascertainable, as long as the combination is unique and offers a competitive advantage.~~ ~~A trade secret may be no more than a slight mechanical advance over common knowledge and practice in the art.~~

~~With respect to each of Chao Chen, Karl Petty, Entergrid LLC, and Entergrid Fund I, LLC, Elmagin must demonstrate by the facts that it is more likely true than not true that the Defendant has misappropriated Elmagin's trade secrets.~~

~~Accepted _____ _____~~

~~Denied _____ _____~~

~~Modified _____ _____~~

Authority: ECF 94 at 8-9 citing 18 U.S.C. § 1839(3); 12 Pa. *~~Cons. Stat~~*C.S. § 5302; *Teva ~~Pharms. USA,Pharm., Inc. v. Sandhu,~~* 291 F. Supp. ~~3d 659 (2018);~~at 675; *Anaconda Co. v. Metric Tool & Die Co.*, 485 F. Supp. 410 (E.D. Pa. 1980).

10

### 3.6. Proving a Protectable Trade Secret:  Reasonable Means to Keep Secret

"Reasonable As I stated above, in order to prove that its alleged trade secrets are, in fact, protectable as such, Elmagin must show that it has "has taken *reasonable means* to keep [the information] secret."

In this situation, "reasonable means" to keep protected information secret means taking a reasonable precautions precaution under the circumstances to prevent disclosure to unauthorized parties; in short, making that it would be difficult for others to obtain the information without using improper means.  Examples can be advising employees of the existence of a trade secret, having employees sign a non-disclosure agreement, limiting access to that trade secret, and controlling access to the trade secret.

Pennsylvania Courts do not require relative, as opposed to absolute, secrecy to establish a trade secret. Instead, they and consider whether the precautions taken to protect a trade secret are reasonable given the circumstances. In short, the degree of secrecy must be such that it would be difficult for others who would be able to derive economic value from them to obtain the information without using improper means.

Just because information is kept confidential, however, does not mean it is a trade secret. Confidentiality – or secrecy – is not alone enough to prove that information is a protectable trade secret.


Accepted _____

Denied _____

Modified _____



Accepted _____

Denied _____

Modified _____


Authority: 18 U.S.C. § 1839(3); 12 Pa. *Cons. Stat* C.S. § 5302; *Teva Pharms. USA, Inc. v. Sandhu, Pharm.*, 291 F. Supp. *3d 659 (2018);* at 675; *CDI Int'l, Inc. v. Marck*, No. 04-4837, 2005 U.S. Dist. LEXIS 23060, 2005 WL 146890 (E.D. Pa. Jan. 21, 2005); *MELVIN* Melvin F. *JAGER,*

*TRADE SECRETS LAW*Jager, Trade Secrets Law, § 56:2 (2004); *Anaconda ~~Co. v. Metric Tool &~~*
~~*Die Co.,*~~ 485 F. Supp. ~~*410 (E*~~at 421-22; *Acosta*, 2018 WL 1251640, at \*8. *See Opus Fund Servs.*
*(USA) LLC v. Theorem Fund Servs.*, LLC, No. 17-CV-923, 2018 WL 1156246, at \*3 (N~~.D. *Pa.*~~
~~*1980).*~~.D. Ill. Mar. 5, 2018)

### 4.7.Proving a Protectable Trade Secret:   Proving **Independent Economic Value**

~~In considering the existence of a trade secret~~In considering whether Elmagin has proven that Breck and Faber, as it describes, them are protectable as a trade secret, you must find that Elmagin derives independent economic value, actual or potential, from these strategies being kept secret.  In this context, "economic value" means that the owner of the information can use it to gain a competitive edge on a competitor, or confidential information that provides competitive value to an owner. In other words, a trade secret must be of sufficient value to provide an actual or potential economic advantage over others in the field who do not possess the information. Economic value can also be shown if recreating ~~the information~~a company's level of expertise from a baseline would cost a significant amount of money.

However, merely because something makes money does not mean it is a trade secret or that it provides competitive value or a competitive advantage to the trade secret owner.  As I will discuss further below, this is especially important in the case trade secrets that are like, those here, combinations of known elements.

Accepted _____

Denied _____

Modified _____

Authority: 18 U.S.C. § 1839(3); 12 Pa. C.S. § 5302; *Teva Pharm.*, 291 F. Supp. at 675*; Jazz Pharm., Inc. v. Synchrony Grp., LLC,* 343 F. Supp. 3d 434, n.42 (E.D. Pa. 2018).; *Sit-Up Ltd. v. IAC/Interactive Corp.*, No. 05 Civ. 9292, 2008 WL 463884, at *9 (S.D.N.Y. Feb. 20, 2008); *Anaconda*, 485 F. Supp. at 421-22; *Rohm & Haas Co. v. ADCO Chem. Co.*, 689 F.2d 424, 433 (3d Cir. 1982).

### 8.   Proving a Protectable Trade Secret: Proving Information not Readily Ascertainable by Proper Means

In order to prove that its Breck and Faber trading strategies are trade secrets, Elmagin must prove that the strategies were not readily ascertainable by proper means.  "Proper means" include reverse engineering, independent derivation, or any other lawful means including whether that information is general knowledge, known to relevant persons skilled in the trade, or is readily ascertainable. Expert testimony can provide support for a determination of whether information allegedly constituting a trade secret is readily ascertainable or not.

Thus, Elmagin must prove, among other things, that the strategies are not "matters of general knowledge in the trade . . . or special knowledge of persons skilled in the trade."   *Synygy Inc. v. ZS Assocs., Inc.*, No. 07-3536, 2015 WL 899408, at *6 (E.D. Pa. Mar. 3, 2015) .  Trade secret law does not preclude a former employee or business partner from using his preexisting or employment-developed skills, knowledge, or experience after his employment or business relationship has ended, nor does trade secret law protect generalized knowledge, experience, or subjective industry knowledge. Further, an employee's "aptitude, his skill, … mental ability, and such other subjective knowledge as he obtains while in the course of his employment, are not the property of his employer and the right to use and expand these powers remains his property unless curtailed through some restrictive covenant entered into with the employer." *Pitt. Cut Wire Co. v. Sufrin*, 350 Pa. 31, 35, 38 A.2d 33, 35 (1944). These areas of knowledge are proper means of acquiring and using information.

Thus, Elmagin must prove by a preponderance of the evidence that its alleged "secret" information – Breck and Faber - consist of information outside these types of worker skill or know-how, or generalized knowledge and are otherwise not readily ascertainable.

Factors considered in determining whether a purported trade secret is "generally known" or "readily ascertainable" include the extent to which the information is known outside of the plaintiff's business, the extent to which the information is known by employees and others involved in the plaintiff's business, the amount of effort or money the plaintiff spent in developing the information, and the ease or difficulty with which the information could be acquired or legitimately duplicated by others. *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010) (citations omitted). Confidential business information is not a trade secret if it can be "'easily or readily obtained, without great difficulty, through some independent source other than the trade secret holder.'" *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 706 (E.D. Pa. 2014) (quoting *BIEC Int'l, Inc. v. Glob. Steel Servs., Ltd.*, 791 F. Supp. 489, 545 (E.D. Pa. 1992))." In short, if the Elmagin trading strategies Breck and/or Faber are (1) are readily ascertainable by trial and error of others in the field, (2) are nothing more than "mere variations on widely used processes," or (3) are solely the implementation of techniques "well understood and commonly used in the discipline" you may not find that they are trade secrets.

Authority: ECF 94 at 10-11; *G. Neil Corp. v. Cameron*, No. Civ. A. 03-4419, 2003 WL 22533698, at *1 (E.D. Pa. Oct. 21, 2003); *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1256 (3d Cir. 1985) (citing and quoting *Pitt.*, 350 Pa. at 35, 38 A.2d at 34 (1944)); *Hill v. Best Med. Int'l, Inc.*, Civ. A. Nos. 07-1709, 08-1404, 09-1194, 2011 WL 5082208 (W.D. Pa. Oct. 25, 2011); *Synygy*, 2015 WL 899408, at *6; *Synthes*, 25 F. Supp. at 706 (quoting *BIEC,* 791 F. Supp. at 545); *Arconic*, 2020 WL 7247112 at *11; *Fishkin*, 563 F. Supp. at 584; *NEXT Payment Solutions, Inc. v. Clearesult Consulting, Inc.*, Case. No. 1:17-cv8829, 2020 WL 2836778 (N.D. Ill. May 31, 2020).

### 9.   Combination Trade Secrets

In this case, Elmagin contends that its Breck and Faber strategies are trade secrets, even though it concedes that they are each a combination of elements that are, individually, generally known or readily ascertainable by proper means. Both DTSA and PUTSA include a "compilation" of different pieces of information in their definitions of a trade secret. A combination of different elements may constitute a trade secret, even if each element is otherwise generally known or readily ascertainable, as long as the combination is unique and offers a competitive advantage.

Although a trade secret may be no more than a slight advance over common knowledge and practice in the art, Elmagin still must show that such advance provides it a competitive advantage.  For example, Elmagin must show that its trading strategy produces a superior result to those of its competitors or the trading strategy achieved some result that no competitor had previously been able to achieve, thus giving it a competitive advantage.  Further, when the trade secrets are a combination of generally known or readily ascertainable elements, especially in situations where the advance is slight, the scope of the trade secret is thus also narrow.

Authority:  ECF 94 at 10; *Anaconda*, 485 F. Supp. at 422 (quoting *Imperial Chem. Indus., Ltd. v. Nat'l Distillers & Chem. Corp.*, 342 F.2d 737, 742 (2d Cir. 1965)); *SI Handling*, 753 F.2d at 1255 (quoting *Anaconda*, 485 F. Supp. at 422); *American Can Co. v. Mansukhani*, 742 F.2d 314, 331 (7th Cir. 1984).

## 10.  Acts Constituting Misappropriation of a Trade Secret - Use

Both DTSA and PUTSA define "misappropriation" as including "disclosure or use of a trade secret of another without express or implied consent" of the trade secret owner. For the purposes of trade secret misappropriation, the term "use" is not limited to "replication," which is one way, but not the only way, to use a trade secret. "Use" "encompasses all the ways one can take advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value" from the trade secret. Employing the trade secret in manufacturing or production, or relying on the trade secret to assist or accelerate research and development also constitute use.

Accepted        _____

Denied          _____

Modified        _____

Authority: ECF 94 at 13; 18 U.S.C. § 1839(3); 12 Pa. ~~Cons. Stat~~C.S. § 5302; *Teva* ~~*Pharms. USA, Inc. v. Sandhu,*~~*Pharm.,* 291 F. Supp. ~~*3d 659 (2018);*~~at 674-75; *Jazz* ~~*Pharms*~~*Pharm.*~~*., Inc. v. Synchrony Grp., LLC,*~~ 343 F. Supp. ~~*3d 434,*~~at n.42 ~~*(E.D. Pa. 2018).*~~

### 1)  Acts Constituting Misappropriation of a Trade Secret

Under the DTSA and PUTSA, a person misappropriates a trade secret when he or she has a duty to maintain the confidentiality of information and discloses or uses the information without consent. Misappropriation of a trade secret also occurs when a person receives or acquires information from someone who improperly disclosed the information. There are three ways to establish misappropriation under the Defend Trade Secrets Act: disclosure, use, or improper acquisition of a trade secret without consent.

Misappropriation occurs when the defendant uses or discloses the trade secret of the plaintiff without consent. It can also occur when the defendant acquires information that he knew or should have known was a trade secret. The defendant's knowledge can be proved in one of several ways, by showing that he had reason to know that: (1) he acquired the trade secret when he had a duty to maintain its secrecy ; (2) he acquired the trade secret by improper means; (3) he acquired the trade secret from another person who had acquired it by improper means or breached a duty to maintain its secrecy; or (4) he acquired the trade secret through an accident or mistake, where the trade secret information was not acquired because the trade secret owner failed to take reasonable measures to keep it a secret.

For the purposes of trade secret misappropriation, the term "use" does not mean "replication." Replication is one, but not the only, way to use a trade secret. Use is defined as any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant. Use can mean employing the trade secret in manufacturing or production or relying on the trade secret to assist or accelerate research and development.

Accepted _____

Denied _____

Modified _____

Authority: *18 U.S.C. § 1839(3); 12 Pa. Cons. Stat. § 5302; Teva Pharms. USA,; Inc. v. Sandhu*, 291 F. Supp. *3d 659 (2018); Jazz Pharms., Inc. v. Synchrony Grp., LLC, 343 F.* Supp. *3d 434,*

*n.42 (E.*D. Pa. *2018);* *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 908,–11 (3d. Cir. 2021 *U.S. App. LEXIS 16973;*): *Restatement (Third) of Unfair Competition § 40.*

19

## 5.11.      Evidence of Misappropriation by Use –  Elmagin Must Disprove Independent Development

In trade secret misappropriation law, "use" means that a defendant did not independently develop the alleged trade secret at issue, but instead used the alleged trade secret at issue. Unlike a patent that protects an inventor from all use of his invention, regardless of how it arises, there is no misappropriation if the accused party instead independently developed what it is using. Here, Drs. Chen and Petty and Entergrid have proffered evidence of their independent development of the Entergrid trading strategies.  Therefore, even if there are substantial similarities between a particular Elmagin and a particular Entergrid strategy and you have concluded that Dr. Chen and/or Dr. Petty had access to the Entergrid strategy under consideration, Elmagin must also prove by a preponderance of the evidence that Drs. Chen and Petty and Entergrid did not independently develop the trading strategy at issue, but rather improperly used the Elmagin trading strategy under comparison in their research and development.

Authority:  *Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 572 (3d Cir. 2003); *Bolt Assocs., Inc. v. Alpine Geophysical Assocs., Inc.*, 365 F.2d 742, 749 (3d Cir. 1966); *Nat'l Risk Mgmt., Inc. v. Bramwell*, 819 F. Supp. 417, 431 (E.D. Pa. 1993).

### 12. Evidence of Misappropriation by Use – Inference from Access and Substantial Similarity

If you determine that the trading strategies of Elmagin are protectable trade secrets, ~~for each Defendant~~ you must then determine whether, based upon the facts and evidence presented, it is more likely than not, with respect to each of Dr. Chen, Dr. Petty, Entergrid LLC, and Entergrid Fund I, LLC, that the ~~specific Defendant~~individual and/or company has misappropriated Elmagin's trade secrets.

~~Misappropriation of a trade secret can rarely be proven by direct evidence. Elmagin,~~A plaintiff may ~~show misappropriation using~~rely on circumstantial evidence~~. (ECF 94 at 13-14).~~ to establish misappropriation.  Circumstantial evidence is evidence that tends to prove a fact by proving other events or circumstances which afford a reasonable basis for you to infer that the ~~fact is true~~assert fact is true.  The reasonable inferences from other proven facts and circumstances may also tend to disprove a fact.

~~One form of~~In this case, such circumstantial evidence ~~that~~ may ~~support a reasonable inference of trade secret misappropriation is showing~~include proof that the ~~Defendants 1)~~defendants had access to its trade secret material ~~of the Plaintiff constituting a trade secret~~ and ~~2)~~ that there are substantial similarities between ~~Plaintiff's~~its products or processes and the defendants' products or processes. Other forms of circumstantial evidence may cut against an inference of misappropriation, such as the length of time between defendants' access to any trade secret information and ~~the~~any use thereof, and defendants having not taken or retained any confidential information ~~of the Defendant(s).  (ECF 94 at 13-14).~~.

 For Elmagin to prove misappropriation through use by access to and similarity of an accused Entergrid trading strategy to a particular trading strategy of Elmagin, you must determine that the evidence demonstrates that it is more likely than not that~~:~~, for that particular trading strategy of Entergrid, that:

1. ~~The Defendants~~Each defendant at issue had access to ~~information of~~the particular trading strategy Elmagin that ~~qualifies as~~you determined is a trade secret;

2.      ~~The~~ Drs. Chen and Petty and Entergrid did not independently create Defendants' trading strategies ~~are~~

3.      The particular Elmagin trading strategy is substantially similar to the particular Entergrid trading strategy under consideration, such that it would have been unlikely for the similarity to have arisen, for somebody with the skills and background of the defendants, without the use of that trade secret; and

~~2.~~4.      This leads you to reasonably infer that the specific defendant who had access to Elmagin's trade secret ~~information; and~~strategy at issue used it in developing the particular Entergrid strategy under consideration.

In short, in addition determining whether each defendant had access to each Elmagin trading strategy, you must consider the competing evidence, examine each of the Elmagin and Entergrid strategies side-by-side, and determine if they are substantially similar enough to infer the defendants used Elmagin's strategies in developing their strategies.

Accepted _____

Denied _____

Modified _____

~~3.      This leads you to infer that the Defendant(s) used Elmagin's trade secret(s).~~

~~Through the course of this litigation, I have determined that Chao Chen had access to information of Elmagin known as the Breck strategy.  (ECF 94 at 14).  It is up to you to determine whether any other Defendant had access to the Breck information, and whether any Defendant had access to the information of Elmagin known as Faber and Chloe strategies.~~

~~Accepted _____~~

~~Denied _____~~

~~Modified _____~~

Authority: ECF 94 at 13-15; 18 U.S.C. §§ 1836(b); 1839(3); 12 Pa. ~~Cons. Stat~~C.S. § 5302; *Teva Pharms. USA, Inc*~~Pharm.~~~~,~~~~ v. Sandhu,~~ 291 F. Supp. ~~3d 659 (2018);~~at 668-69; *Jazz* ~~Pharms., Inc.~~ *v. Synchrony Grp., LLC,*~~Pharm.~~, 343 F. Supp. ~~3d 434,~~at n.42~~(E.D. Pa. 2018);~~; *Oakwood* ~~Labs.~~

*LLC v. Thanoo*, 999 F.3d ~~892,~~at 908~~, 2021 U.S. App. LEXIS 16973~~; *SI Handling ~~Sys., Inc. v. Heisley~~*, 753 F.2d ~~1244,~~at 1261-62; *Nat'l Risk*, 819 F. Supp. at 43; *Moore*, 318 F.3d at 567, 572; *Almac Clinical Servs., LLC v. Aeri Park*, Civ. No. CV 16-4896, 2016 WL 5912708, at *7 (E.D. Pa. Oct. 11, 2016); *G. Neil,* 2003 WL 22533698 at *1; *CentiMark Corp. v. Jacobsen*, No. Civ. A. 11-1137, 2011 WL 5977668, at *11-13 (W.D. Pa. Nov. 29, 2011); *Mettler-Toledo, Inc. v. Acker*, 908 F. Supp. 240, 247–48 (M.D. Pa. 1995).

### **13. Defendants' Access to Elmagin's Purported Trade Secrets In this Case**

In this case, the parties have agreed that Dr. Chen had access to Elmagin's trading strategy called Breck, although they dispute whether Elmagin has properly identified it.

The parties dispute whether Dr. Chen had access to Faber, as the strategy that has been identified by Elmagin.  More specifically, the defendants contend that Faber evolved after Dr. Chen left Elmagin and the version he was familiar with is not the version proffered by Elmagin in this case.

The parties also dispute whether Dr. Petty had any direct access whatsoever to Elmagin's trade secrets, specifically its strategies Breck and Faber.

Authority:  ECF 94 at 14, 16-17.

### 14. Evidence of Misappropriation by Use –   Substantial Similarity Required

In order to support an inference of misappropriation by use, the similarities between the two trading strategies being compared (i.e., the particular Elmagin's trading strategy and the particular Entergrid trading strategy under consideration) must be "substantial".  In conducting this comparison, you must apply a rigorous analysis to compare each element of the Elmagin trading strategy at issue to each element of the Entergrid trading strategy at issue.  As I said previously, while replication of a strategy is not required to prove substantial similarity, substantial differences between the strategies will require a finding of no misappropriation.  This is especially true here, where the scope of the alleged trade secrets at issue are narrow since they are all combination of generally known and/or readily ascertainable elements.

Put another way, Elmagin must prove that the purported similarities, if any between its trade secrets and some or all of Entergrid's trading strategies are more than elements that are generally known and/or readily ascertainable to relatively sophisticated algorithmic traders and/or traders in the wholesale electricity markets.

In short, Elmagin must prove that the similarities between its trading strategies and Entergrid's trading strategies are due to that which makes them allegedly trade secrets, as opposed to the general knowledge among reasonably sophisticated algorithmic traders and/or traders in the wholesale electricity market, as well as the general skills, knowledge and experience of Dr. Chen, Dr. Petty and their team.

Authority:  ECF 94 at 2, 13-17; *Scanvec Amiable Ltd. v. Chang*, 80 Fed. Appx. 171 (3d Cir. ~~1985); ECF 94~~2003); *Greenberg v. Croydon Plastics Co., Inc.*, 378 F. Supp. 806, 815 (E.D. Pa. 1974); *Mallet & Co. v. Lacayo*, Civ. A. No. 19-1409, 2020 WL 6866386 (W.D. Pa. Nov. 23, 2020); *Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 275 (S.D.N.Y. 2014), *aff'd sub nom. Big Vision Priv. Ltd. v. E.I. du Pont de Nemours & Co.*, 610 Fed. Appx. 69 (2d Cir. 2015); *SI Handling*, 743 F.2d at 1257-1262; *Hill*, 2011 WL 5082208, at *14; *American*, 742 F.2d at 331.

### 6.15.   Remedies for Misappropriation of Trade Secrets - Compensatory Damages

If you determine that one or more of the Defendants has misappropriated trade secrets of Elmagin, you will be asked to decide the issue of an award of monetary damages to compensate Elmagin.  Under both the DTSA and PUTSA, damages can include ~~both~~either: the actual loss to Elmagin caused by misappropriation, and/or unjust enrichment of the Defendant or Defendants caused by the misappropriation~~.~~; or a reasonable royalty for~~Actual loss is the loss suffered by Elmagin by the unauthorized use or disclosure.  Unjust enrichment is the money gained by the Defendant from the unauthorized~~ use of the misappropriated trade ~~secret~~secrets if neither unjust enrichment nor actual loss damages are awarded.

Actual loss is the loss suffered by Elmagin by the unauthorized use or disclosure.

Unjust enrichment is the money gained by the Defendant from the unauthorized use of the trade secret, to the extent not already compensated by a recovery of actual losses.

A reasonable royalty measure of relief awards to the plaintiff damages based on the price that would be set by a willing buyer and a willing seller for the use of the trade secret made by the defendant. It reflects a price at which both parties gain from the transaction, and so a reasonable royalty may compensate the plaintiff for some or all of its loss but it should not deprive the defendant of the full gain attributable to the appropriation.

The existence and extent of each type of damage must be supported by a preponderance of the evidence, and must be established with reasonable certainty.  If Elmagin cannot establish the extent of unjust enrichment, it may still be awarded a reasonable royalty on any use that it has proven.  In such case, Elmagin must also establish the appropriate royalty rate and base to which it applies by a preponderance of the evidence.

Accepted        _____

Denied          _____

Modified        _____

Authority: 18 U.S.C. § 1839(3); 12 Pa. ~~Cons. Stat~~C.S. § 5302~~.~~; *Microstrategy, Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344 (Fed. Cir. 2005); Restatement (Third) of Unfair Competition § 45, cmt. g (1995).

### 16. Compensatory Damages – Apportionment

Elmagin has the burden of proving with reasonable certainty what portion of Entergrid's profits are attributable to the misappropriation of Elmagin's trading strategies. As a threshold matter, Elmagin must carve out any profits that were attributable to trading strategies that were not the subject of misappropriation. Beyond that, Elmagin must also engage in two kinds of "apportionment." First, Elmagin must apportion damages among the allegedly appropriated trade secrets. Second, for strategies that it contends have been the subject of misappropriation, it must also apportion the profits attributable to the misappropriated elements as opposed to any non-misappropriated features.  It is Elmagin's burden to prove the nexus between the misappropriation of each trade secret and the corresponding unjust enrichment to defendants.

Authority:  *Tex. Adv. Optoelectronic Sols., Inc. v. Renesas Elecs. America, Inc.*, 895 F.3d 1304 (Fed. Cir. 2018); *LivePerson, Inc. v. [24]7.AI, Inc.*, No. 17-CV-01268-JST, 2018 WL 6257460, at *2 (N.D. Cal. Nov. 30, 2018); *Ford Motor Co. v. Versata Software, Inc.*, No. 15-11624, 2018 WL 10733561, at *10-11 (E.D. Mich. July 9, 2018); Restatement (Third) of Unfair Competition § 45 cmt. B; Restatement (Second) of Torts § 912.

### 7.17.    Remedies for Misappropriation of Trade Secrets - Exemplary Damages, Willful and Malicious Conduct

If you decide that any of the Defendants has misappropriated a trade secret of Elmagin, you will be asked on your verdict form to indicate whether that Defendant's act of misappropriation was willful and malicious. "Willful and malicious" misappropriation results from "[s]uch intentional acts or gross neglect of duty as to evince a reckless indifference of the rights of others on the part of the wrongdoer, and an entire want of care so as to raise the presumption that the person at fault is conscious of the consequences of his carelessness." Reckless indifference may be found when a Defendant, despite knowledge of an obligation, acts contrary to that obligation or fails to investigate actions of another related to that obligation. For example, evidence such as stealing documents, obliterating confidentiality legends on documents, and hiding the work that was being done from the trade secret owner would all support a finding of willfulness.  On the other hand, evidence of taking affirmative steps to avoid infringing the rights of others, not taking any documents or source code upon departure, and affirmatively informing a former employer or business partner that you were engaging in similar work would all support a finding of no willfulness.

If you find that any defendant has willfully or maliciously misappropriated Elmagin's trade secrets, you may, but are not required to, award Elmagin exemplary damages.  Exemplary damages may be "in an amount not exceeding twice any award" you make under my previous instruction regarding damages for trade secret misappropriation.


Accepted          _____

Denied            _____

Modified          _____


Authority: 18 U.S.C. § 1839(3); 12 Pa. *Cons. Stat. § 5302.*C.S. § 5302; *Agrofresh Inc. v. Essentiv LLC*, C. A. No. 16-662, 2020 WL 7024867, at \*8-9 (D. Del. Nov. 30, 2020); *PPG Indus., Inc. v. Jiangsu Tie Mao* Glass Co., 2:15-cv-00965, 2020 WL 1526940, at \*20-22 (W.D. Pa. Mar. 31, 2020).

### 8.18.  Personal Liability of Officers Who Directly Participate in Misappropriation

In certain circumstances, individuals who participate in a company's acts of trade secret misappropriation may be held personally responsible for the monetary damages awarded as a remedy for that misappropriation.  Specifically, "[a] corporate officer is individually liable for the torts [wrongful acts] he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort."

After considering all of the evidence, if you determine 1) that one or more of the Defendants misappropriated trade secrets of Elmagin and 2) you find that either Chao Dr. Chen or Karl Dr. Petty personally participated in the acts of misappropriation, you may determine that the individual or individuals who personally participated shall pay to Elmagin, a monetary amount determined by the same method about which I instructed you earlier.  That is, you may award to Elmagin an amount equal to Elmagin's actual loss caused by misappropriation, the amount of unjust enrichment of the Defendant or Defendants caused by the misappropriation, and exemplary damages in an amount not exceeding twice that amount.

Accepted          _____
Denied             _____
Modified          _____

Authority: *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978).

## 19. Remedies for Misappropriation of Trade Secrets – Bad Faith Assertion of Trade Secret Misappropriation

The same circumstantial evidence that I described above can also be used to establish whether Elmagin has claimed misappropriation by one or more Defendants in bad faith.  A claim is brought in bad faith where there is proof of both (1) the objective speciousness of the claim; and (2) the subjective misconduct by the plaintiff in making the claim.  Objective speciousness refers to a complete lack of evidence to support at least one element of a plaintiff's misappropriation claim.  Subjective misconduct exists where a plaintiff knows or is reckless in not knowing that its misappropriation claim lacks merit. Subjective misconduct can be established through circumstantial evidence, including the plaintiff's conduct during litigation, evidence that the claim was made for an improper purpose such as being an attempt to get around an expired exclusionary right.

Accepted               _____

Denied                 _____

Modified               _____

Authority: 18 U.S.C. § 1836(b)(3)(D); 12 Pa. C.S. § 5305(1); *Hill v. Best Medical Int'l Inc.*, 2011 WL 5082208 at *3 (W.D. Pa. Dec. 22, 2011); *Sweet Street Desserts, Inc. v. Better Bakery, LLC*, Civ. No. 12-6115, 2017 WL 6311664 (E.D. Pa. Dec. 11, 2017).

## III.    JURY INSTRUCTIONS – CLAIMS OF BREACH OF CONTRACT

<u>~~9.~~20.</u>        **Claims for Breach of Contract**

Elmagin has brought claims of breach of contract against each of Defendant Chao Chen and Defendant Karl Petty.  Elmagin asserts that Chen breached a ~~1)~~ Non-Disclosure and Non-Competition Agreement between Chen and Elmagin (the "NDNC~~") and 2) a Membership Interest Purchase Agreement.  Elmagin asserts~~"), and that Petty breached Consulting Agreement between Petty and Elmagin ~~(the "Petty Consulting Agreeent").~~. Elmagin argues that by misappropriating its trading strategies, Chen and Petty breached the non-disclosure ~~and /~~non-exploitation provisions ~~within~~of the NDNC~~, Membership Interest Purchase Agreement,~~ and the Petty Consulting Agreement, respectively.

As with its other claims in this case, Elmagin, has the burden of proving its breach of contract claims by the preponderance of the evidence standard.  As a reminder, preponderance of the evidence simply means that a fact is more likely true than not.  If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

Accepted        _____

Denied          _____

Modified        _____

Authority: Pa. SSJI (Civ) §19.120.

### ~~10.~~21.    ~~Breach~~Enforceability of ~~Contract~~the Contracts

You will be asked to determine whether Elmagin has shown by a preponderance of the evidence, for each of the NDNC~~, the Membership Interest Purchase Agreement,~~ and the Petty Consulting Agreement, (1) the existence of a contract, including its essential terms; (2) a breach by the defendant of a duty imposed by the contract; and (3) damages resulting from the breach of contract.

The first matter you must decide is whether there is a valid contract.

I have, in the course of this litigation, determined that "the defendants' non-disclosure agreements ~~[in the NDNC, Membership Interest Purchase Agreement, and Petty Consulting Agreement]~~ are valid and enforceable" as a matter of law (ECF 94 at 1~~),~~) but ~~you, the jury, must determine whether they were breached.  If you find~~only "to the extent that ~~the Defendants misappropriated~~they protect Elmagin's trading strategies ~~when developing their own~~and any other confidential information related to those strategies~~, the disclosure of the Defendants' own derivative strategies to others constitutes breach of the non-disclosure provisions of the contracts at issue.~~." (ECF 94 at ~~21).~~20.)

However, Dr. Chen contends that the NDNC agreement is unenforceable due to a lack of "consideration".  Consideration in this context means receiving something of value in exchange for promises given. You must determine whether there was sufficient consideration for the NDNC agreement such that it is enforceable.

In addition, Dr. Petty also contends that the Petty Consulting Agreement is unenforceable due to a lack of "consideration." You must determine whether there was sufficient consideration for the Petty Consulting Agreement such that it is enforceable.


Accepted         _____
Denied           _____
Modified         _____


~~Authority: *Synthes, Inc.*~~ Authority: ECF 94 at 1 & 20; *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 884 (Pa. Super. 2000); *Socko v. Mid-Atlantic Sys. of CPA, Inc.*, 633 Pa. 555, 126 A.3d 1266 (2015).

## 22. Breach of Contract

If you find that either the NDNC and/or the Petty Agreement are enforceable, you the jury, must determine – for each agreement separately - whether it was breached.  If you find that Dr. Chen and/or Dr. Petty misappropriated one or more of Elmagin's trading strategies in developing strategies for Entergrid, the disclosure of the defendants' own strategies to others constitutes breach of the non-disclosure provisions of the contract at issue.  More specifically, for Elmagin to succeed on its claims of breach of contract, it must prove, individually for each of Chen and Petty that:

(1) Elmagin has a protectable trade secret; and

(2) Either Chen or Petty (as applicable) personally misappropriated said trade secret.

If you find Elmagin has proved each and every element above by a preponderance of the evidence for either Dr. Chen or Dr. Petty, you must find in favor of Elmagin on its respective breach of contract claim. If however you find that by a preponderance of the evidence Elmagin has failed to prove any element, you must find in favor of Dr. Chen and Dr. Petty.

Authority: ECF 94 at 21.
~~v. Emerge Med., Inc.~~, 25 F. Supp. ~~3d 61~~ (E.D. Pa. ~~2014); ECF 94.~~

### 11.23.        Damages – Breach of Contract

I am instructing you about damages, but that does not mean I have an opinion about whether damages should be awarded.

If you find that ~~Chao~~Dr. Chen breached the NDNC, you should award an amount of money to be paid by ~~Chao Chen to Elmagin that will fairly and adequately compensate Elmagin for the harm caused by the breach of the NDNC.~~

~~If you find that Chao Chen breached the Membership Interest Purchase Agreement, you should award an amount of money to be paid by Chao~~Dr. Chen to Elmagin that will fairly and adequately compensate Elmagin for the harm caused by the breach of the NDNC.

If you find that ~~Karl~~Dr. Petty breached the Petty Consulting Agreement, you should award an amount of money to be paid by ~~Karl~~Dr. Petty to Elmagin that will fairly and adequately compensate Elmagin for the harm caused by the breach of the Petty Consulting Agreement.

In each instance, the amount you award today must compensate Elmagin completely for damages sustained in the past, as well as damages it will sustain in the future.  However, you may not award duplicative damages for the same injuries even if the conduct was both a breach of contract and a misappropriation of trade secret.


~~Accepted~~ _____

~~Denied~~ _____

~~Modified~~ _____



Accepted _____

Denied _____

Modified _____


Authority: Pa. SSJI (Civ) § 19.250; *Rossi v. State Farm Auto. Ins. Co.*, 318 Pa. Super. 386, 465 A.2d 8 (1983).

Respectfully Submitted,


Dated:  April 7, 2022



_/s/_____                    _/s/_____


Douglas Panzer (PA Bar ID #203354)        Nicole D. Galli (PA Bar ID #78420)
Manny D. Pokotilow (PA Bar ID #13310)     Charles P. Goodwin (PA Bar ID #66500)


Caesar Rivise, PC                         ND Galli Law LLC
7 Penn Center, 12th Floor                 One Liberty Place
1635 Market Street                        1650 Market Street
Philadelphia, PA 19103                    Suite 3600, #00250
dpanzer@crbcp.com                         Philadelphia, PA19103
                                          ndgalli@ndgallilaw.com
                                          cgoodwin@ndgallilaw.com


*Attorneys for Plaintiff*                 *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

       I hereby certify that all counsel of record are being served with a copy of these document via ECF and electronic mail on April 7, 2022.


                                    */s/Nicole D. Galli*
                                      Nicole D. Galli