## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ELMAGIN CAPITAL LLC, ) | |
| ) | Civil Action No. 2:20-cv-02576-SB |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| CHAO CHEN, KARL PETTY, ) | |
| ENTERGRID LLC, and ) | |
| ENTERGRID FUND I LLC ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' OPPOSITION
## TO PLAINTIFF ELMAGIN CAPITAL, LLC'S MOTION
## TO EXCLUDE THE PUBLIC AND PRESS FROM TRIAL

Plaintiff's motion is antithetical to the presumption of open trials required under the Federal Rules of Civil Procedure and binding precedent from the United States Supreme Court and Court of Appeals for the Third Circuit. The trial must be open to the public and closed only rarely when necessary.

A court may close the courtroom for brief *portions* of the trial – but a court may only do so to the extent necessary to protect the parties from irreparable harm. Under this standard, closure is only appropriate during testimony or discussion of actual, particularized details of trading strategies. Additionally, at the start of each closure, the Court should instruct the jury that (a) any closing of the courtroom does not mean that the matters to be discussed actually constitute trade secrets, but only that plaintiff claims that they constitute trade secrets; and (b) it is for the jury to decide whether the matters discussed actually constitute trade secrets.

## ARGUMENT

I.      **Trials Must Be Open to the Public**

Trials must be open to the public.   "Every trial on the merits must be conducted in open court . . . ." Fed. R. Civ. P. 77(b).  "A trial is a public event." *Craig v. Harney*, 331 U.S. 367, 374 (1947).  "[H]istorically both civil and criminal trials have been presumptively open." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980)*.*  "[T]hroughout its evolution, the trial has been open to all who care to observe." *Id.* at 564.  A "trial courtroom also is a public place where the people generally – and representatives of the media –have a right to be present, and where their presence historically has been thought to enhance the integrity and the quality of what takes place." *Id.* at 578.  "Throughout our history, the open courtroom has been a fundamental feature of the American judicial system." *Brown & Williamson Tobacco Corp. v. Federal Trade Commission*, 710 F.2d 1165, 1177 (6th Cir. 1983), *cert. denied*, 465 U.S. 1100 (1984).

*Richmond Newspapers* holds that First Amendment gives the public and the press the Constitutional right to attend trials.  *Id.* at 576 ("the First Amendment guarantees of speech and press, standing alone, prohibit government from summarily closing courtroom doors which had long been open to the public at the time that Amendment was adopted.").  The U.S. Supreme Court thus found that closure of a trial was improper when the district court had made no findings to support closure, did not consider alternative ways to protect the defendant's rights, and failed to recognize the Constitutional rights of the public and press to attend the trial.  *Id.* at 580-81.

Court of Appeals for the Third Circuit has held that *Richmond Newspapers* and progeny extend to provide the public and press both common law and Constitutional rights of access to civil trials.  *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1066, 1070 (3d Cir. 1984); *see also Brown & Williamson Tobacco Corp. v. Federal Trade Commission*, 710 F.2d 1165, 1178 (6th Cir. 1983) ("The Supreme Court's analysis of the justifications for access to the criminal courtroom

apply as well to the civil trial."), *cert. denied*, 465 U.S. 1100 (1984). (*Richmond Newspapers*, *supra*, was a criminal matter.)[1]

## II.    Closures for Portions of a Trial Must Be Narrowly Tailored

Trials must be public.  Nonetheless, district courts have discretion, cabined by the First Amendment and the common law, to close courtrooms for *portions* of trials under certain exceptional circumstances: "there must be a showing that the denial [of open proceedings] serves an important governmental interest and that there is no less restrictive way to serve that governmental interest" when "limit[ing] the public's access to civil trials." *Publicker Indus.*, 733 F.2d at 1070, citing *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606–07 (1982).[2]  "The party seeking the closure of a hearing or the sealing of a transcript bears the burden of showing that the material is the kind of information that courts will protect and that there is good cause for the order to issue." *Id.* at 1070-71.  Good cause requires "a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* at 1071.  "The injury must be shown with specificity." *Id.*

When a party seeks to close portions of a trial to protect trade secrets, courts weigh the public's First Amendment right to open trials against the party's interest in confidentiality.  *See Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979) ("courts have

---

[1] Elmagin's reliance on *Publicker* as holding that trade secrets are an "exception" to the presumption of openness is mislain. Pl. Mem. at 3.  *Publicker* in fact reversed the district court's closing the courtroom for a preliminary injunction hearing, a fact Elmagin ignores.  *See* 733 F.2d at 1072.  Elmagin makes no attempt to meet *Publicker*'s strict requirements for overcoming the presumption of open court proceedings:  plaintiff makes no showing "with specificity" that not excluding the public and the press "will work a clearly defined and serious injury." *Id.* at 1071. Nor does Elmagin explain why "less restrictive alternative[s]" would be insufficient. *Id.* at 1074.

[2] *See also Lugosch v. Pyramid Co. of Onandaga*, 435 F.3d 110, 120 (2d Cir. 2006) (closure of portion of trial appropriate only "if specific, on-the-record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to preserve that interest.").

not given trade secrets automatic and complete immunity against disclosure but have in each case weighed their claim to privacy against the need for disclosure").  Courts must first determine whether the materials at issue are, in fact, colorable trade secrets.  *See Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, No. 2:05-cv-302, 2007 WL 922255, at *5 (D. Vt. Mar. 23, 2007).  Courts must then "determine whether under the circumstances protection of legitimate trade secrets will overcome the First Amendment right of public access to trials."  *Id.*  "[T]he presence of trade secrets will not in every case justify closing a hearing."  *Id.* (citing *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 664 (8th Cir. 1983)).

In making this determination, the court may consider the extent of the closure sought, the potential damage from disclosure, the significance of the public interest at stake, the extent to which the party intends to prove its case by relying on documents it seeks to withhold from public scrutiny, and whether the particular matter is integral or tangential to the adjudication.  *Id.* at *7. "[O]nly in the most extraordinary situation will this Court justify closing a trial to the public and the press."  *Id.*

Those cases allowing partial closure in the name of protecting trade secrets demonstrate that the closure should be as brief and minimal as necessary to prevent irreparable harm.  *Standard & Poor's Corp., Inc. v. Commodity Exchange, Inc.*, is an apt illustration.  *See* 541 F. Supp. 1273 (S.D.N.Y. 1982).  There, a court conducting a 5-day preliminary injunction hearing cleared the courtroom of "persons not connected with the parties" for some 40-50 minutes, during the testimony of one witness – when the plaintiff and defendant agreed to this arrangement.  *Id.* at 1274. Subsequently, a non-party news service sought to unseal the transcript of the closed session on First Amendment grounds.  In denying the motion (because the testimony involved trade secrets and that disclosure would irreparably harm the plaintiff), the court stressed the minimal and

temporary nature of the closure:

> the disruption to the proceedings was minimal and temporary – the courtroom was closed for less than one hour during the whole of a five day hearing-and the defendant's consent to that closure is further indicative that there was no real threat to defendant's right to, and the public's interest in, a fair trial.  Further, with the release of the non-confidential portions, the sealed portions have been kept to the minimum necessary to protect S&P's commercial interests.

*Id.* at 1277-78 (footnoted omitted); *see also id.* at 1278 ("This Court employed the least restrictive means practicable to preserve the confidentiality of legitimate and important trade secrets.").

These authorities mandate that any closures of the courtroom in this case must be strictly limited to times when actual details of trading strategies are being discussed.

## III.   The Court Should Instruct the Jury About the Reason for Any Closures of the Courtroom

Excluding the public risks inducing the jury to erroneously conclude that the matter discussed is in fact a trade secret because the courtroom was closed.  This would be extremely prejudicial to Defendants.  To minimize this prejudice, the Court should instruct the jury that (a) closing the courtroom does not mean that the matters discussed actually are trade secrets, but rather than that the plaintiff claims that the matters to be trade secrets and once revealed to the public, the alleged trade secrets cannot be unrevealed; and (b) it is for the jury to decide whether the matters discussed actually constitute trade secrets.

## IV.   There Is Minimal Risk of Irreparable Harm to Elmagin from an Open Courtroom.

This Court had the inquiry precisely right when it asked, "How realistic is it that someone's going to be able to steal an algorithm based on listening to" the abstruse and esoteric testimony in this case.  Tr. Apr. 12, 2022 Conf. at 41:22-24.  It is not very realistic at all.  The risk in this case is that the jury – who will hear the opening statements, all the testimony and the closing arguments in the case and have the benefit of exhibits and demonstratives – will itself be so utterly and

irretrievably confused that it cannot reach a verdict.  The public – without the benefit of exhibits and demonstratives – is unlikely to garner anything of moment.  There is little chance that the public's observation any trial testimony will irreparably harm Elmagin.

## V.   Handling Closure in this Case

By way of letter separately submitted, Defendants have proposed a procedure for handling requests to close the courtroom.  The purpose of the proposed procedure is to enable the court to make particularized decisions concerning testimony and statements that will satisfy the First Amendment's narrow tailoring requirement.  This procedure is as follows:

| Time | Event |
|---|---|
| Three Days Before Proposed Presentation or Testimony, at 5:00 PM (or one hour after the end of in-court proceedings, whichever is later) | The proffering party will provide a written statement summarizing with specificity its expected statements or testimony that warrants closing the Courtroom.<br><br>This will include identification of exhibits to be used with the witness that the proffering party believes would require closure of the Courtroom.  To be clear, when Defendants are the proffering party, they will use their best efforts to flag materials for which Plaintiff is expected to seek closure. |
| Two Days Before, at 5:00 PM (or one hour after the end of in-court proceedings, whichever is later) | The responding party will respond with its agreement of disagreement on a subject-by-subject, exhibit-by-exhibit basis.<br><br>The responding party will also indicate any exhibits or documents that it reasonably expects to use with the witness that may warrant closing the Courtroom.  To be clear, Defendants will use their best efforts to flag materials for which Plaintiff is expected to seek closure.<br><br>Because cross-examination may involve using unexpected documents, any documents that are new will be addressed at sidebar, hopefully prior to cross examination.<br><br>The parties will then meet and confer to resolve differences, if possible. |
| Day Before, at the end of trial, or the Morning of, before testimony begins | The Court will hear any remaining disputes. |

To illustrate how this procedure would work with the scheduled April 26 start of trial, on

April 23, 2022, the parties will exchange statements indicating what confidential matter, requiring

closure, will be included in their openings to the jury.  On April 24, the parties will exchange any

objections to the requests for closure.  If any disputes remain, they can be heard by the Court

between the end of jury selection and opening statements.

## **<u>CONCLUSION</u>**

For the foregoing reasons, defendants respectfully request that the Court deny plaintiff's

Motion to Exclude the Public and Press from Trial, and enter an order providing that

(1) the trial of this matter shall be open to the public, and may only be closed to the public

during testimony or discussion about source code;

(2) the Court shall instruct the jury that (a) any closing of the courtroom does not mean that

the matters to be discussed actually constitute trade secrets, but only that plaintiff claims that they

constitute trade secrets; and (b) it is for the jury to decide whether the matters discussed actually

constitute trade secrets;

(c) the parties shall follow the procedures described in Section V above.

Dated: April 19, 2022                                       Respectfully submitted,

*/s/ Nicole D. Galli*
Nicole D. Galli (PA Bar ID #78420)
Charles P. Goodwin (PA Bar ID #66500)
**ND Galli Law LLC**
One Liberty Place
1650 Market Street
Suite 3600, #00250
Philadelphia, PA19103
(215) 525-9580
ndgalli@ndgallilaw.com
cgoodwin@ndgallilaw.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record are being served with a copy of this document via filing on ECF/PACER on April 19, 2022.

*/s/ Nicole D. Galli*
Nicole D. Galli