

**NICOLE D. GALLI**
One Liberty Place
1650 Market Street
Suite 3600, #00250
Philadelphia, PA 19103
(215) 525-9583 direct
(215) 525-9585 fax
ndgalli@ndgallilaw.com

April 20, 2022

VIA ECF
Honorable Stephanos Bibas
U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

      RE: *Elmagin Capital, LLC v. Chen et al*, No.: 2:20-cv-02576-SB (E.D. Pa.)
           Defendants' Production of Financial Information

Dear Judge Bibas:

We write in response to the Court's April 18, 2022 Order of [Dkt. 238] instructing Defendants to:

> submit a letter apprising the Court of whether they have failed to produce any financial information that is necessary for computing damages. For any such information, the letter should describe which trading strategy it relates to, the information's time period, and whether they believe they are obligated to produce it.

Defendants believe they have produced all financial information necessary for computing damages as to any and all trading strategies of Entergrid.

By April 29, 2021, Defendants had produced all financial information necessary for computing damages through at least January 31, 2021.

On April 12, 2022, Defendants supplemented that production by producing a full set of summary financial statements (P&Ls, Balance Sheets) for both Entergrid LLC and Entergrid Fund I LLC current through February 28, 2022 (the most recent financial statements available). These statements provide, among other things, revenue and expense information on a monthly and annual basis for the entirety of both businesses and delineates revenues by RTO/ISO. These statements were produced as kept in the ordinary course of business and had General Ledger information in them as well for certain periods (all for 2019 and the final month of the statements for subsequent years). No responsive summary financial statement information was withheld. In an abundance of caution, Defendants will also produce today the monthly financial statement packages that they received from their accountants for the period of 2020 to the present (the 2019 financial statements

Honorable Judge Stephanos Bibas
April 20, 2022
Page 2

having the full detail for the whole year), which include General Ledger information. Defendants have no other financial statements to produce.

Defendants only trade FTRs using algorithmic trading strategies in MISO and PJM.[1] Those strategies have been the focus of this litigation. For this reason, Defendants previously provided detailed bid files for those ISOs. Thus, on April 16, 2022, Defendants produced their supplemental FTR bid files for MISO and PJM, in order to bring the prior production current through April 2022 for MISO and through February 2022 for PJM (the last month Entergrid traded in PJM).

Exhibit A to Plaintiff's April 15, 2022 letter to the Court (regarding equitable accounting [Dkt. 226]), was a document that Defendants created for Plaintiff at the close of discovery. The document detailed which of Defendants' strategies were used to place bids on FTRs in MISO and PJM in each month. This was not something that existed in the ordinary course of business. It was prepared specifically in response to Plaintiff's request last Spring.

Because Plaintiff now requested supplementation, the undersigned confirmed with Defendants on April 18, 2022 that they have solely continued to run the Tuva and Atlas strategies (the strategies run in May 2021) for FTRs in PJM and MISO since that time and thus no additional supplementation was needed. Defendants communicated that fact to Plaintiff the same day by email. In that email, Defendants requested the Plaintiff identify any information that it would need to calculate damages that had not already been produced. Plaintiff has made no follow-up request, as of this writing.

Defendants have traded and currently trade instruments other than FTRs[2] algorithmically in PJM, MISO, ERCOT and CAISO.[3] Defendants have given deposition testimony explaining what instruments are traded in those RTOs/ISOs and the strategies that have been used for such instruments. Because Defendants' financial statements break down revenues and expenses by RTO/ISO, Entergrid's returns from non-FTR or non-algorthmic trading can be carved out as necessary for ERCOT and CAISO. Defendants are prepared to have the monthly returns for these two markets

---

[1] "MISO" and "PJM" are the RTOs/ISOs for the Midwest (plus parts of Arkansas and Louisiana) and mid-Atlantic (plus Ohio and parts of Indiana, Kentucky and Illinois), respectively. CAISO, ERCOT, NYISO, SPP and ISO-NE are respectively the California, Texas, New York, the Western Plains, and New England RTOs. Certain parts of the United States do not have RTOs, principally the South and Pacific Northwest.

[2] Monthly FTRs are the predominant species among electricity-related instruments. The taxonomy of electricity-related instruments is differentiated by time intervals. In addition to monthly FTRs, there are annual FTRs and various daily and instantaneous instruments/contracts that are referenced as "virtuals", "point-to-point", "PTP", "P2P", "up to congestion", and "UTC", among other terms.

[3] Defendants have also recently started to make some "discretionary" or non-algorithmic FTR trades in CAISO.

Honorable Judge Stephanos Bibas
April 20, 2022
Page 3

each considered as a whole instead of breaking down the returns by strategies in each market.[4] Since Defendants' non-FTR trading was limited in PJM and MISO, they are willing to forgo breaking out those revenues further as well and to consider all PJM/MISO returns as FTR trading returns.

Defendants are unaware of any other information or documentation that would be relevant or helpful to determining damages in this case at this time. Plaintiff requested only limited financial information in its document requests and interrogatories. These are attached as Appendix A here.

Plaintiff never made additional or more comprehensive requests. Defendants have provided all available information to link trades to strategies and revenues. Plaintiff has never followed up to request any additional types of information or made any suggestion that (other than supplementation for subsequent time periods) that Defendants' damages related production is otherwise incomplete or inadequate.

We are of course willing to supplement our production should additional documentation be necessary, provided it exists, but since nothing else has been requested we are unable to discern what else we could produce at this time.

Respectfully,

*Nicole D. Galli*

Nicole D. Galli

cc: All Counsel of Record via ECF

---

[4] To date, Defendants have not produced and Plaintiff has not specifically requested bid files for any ISOs other than PJM and MISO or for instruments other than FTRs. Since Defendants are not demanding revenues be broken down to that level for ERCOT or CAISO or for non-FTR strategies in PJM/MISO those documents should not be needed; however, Defendants are happy to produce them if this is not correct.

Honorable Judge Stephanos Bibas
April 20, 2022
Page 4

## Appendix A

*From* Plaintiff's First Request for Production of Documents to Defendants:

> REQUEST FOR PRODUCTION NO. 11:
>
> All DOCUMENTS showing, relating to, or mentioning each bid made by DEFENDANTS in wholesale energy markets, whether or not such bid was accepted or resulted in a settled FTR contract.
>
> REQUEST FOR PRODUCTION NO. 12:
>
> All DOCUMENTS showing, relating to, or mentioning the profit or loss resulting from each trade made by DEFENDANTS in wholesale energy markets.

*From* Plaintiff's First Set of Interrogatories to Defendants:

> 3. Identify all bids made by DEFENDANTS in wholesale energy markets and, as to each bid, the bid price by DEFENDANTS, the regional transmission operator, date of the bid, the date of any completed trade resulting from such bid, the contract size, and the profit/loss realized.
>
> 6. As to each bid made by DEFENDANTS in wholesale energy markets, identify the TRADING STRATEGY used to formulate such bid, including, where applicable identifying the name utilized by DEFENDANTS to identify or refer to such TRADING STRATEGY, and in particular any SOURCE CODE, program(s) or algorithm(s) used for the trade.

*From* Plaintiff's Second Set of Interrogatories to Defendants:

> [An interrogatory was propounded as to each of three different Entergrid Strategies. These interrogatories were identical *in haec verba* except for the name of the subject strategy.[5]
>
> **[15, 17, 19]** Identify all bids made by DEFENDANTS in wholesale energy markets resulting from the use of the TRADING STRATEGY referred to as **[Gryphon/Hydra/Yogi]** including, as to each bid, the bid price by DEFENDANTS, the regional transmission operator/independent system operator, date of the bid, the date of any completed trade resulting from such bid, the contract size, and the profit/loss realized.

---

[5] Although Plaintiff labeled these interrogatories as attorneys-eyes only, Defendants presume that the label was to cover the names of the Defendants' strategies as well as Defendants response. As only Defendants' information is at issue, counsel sees no reason to seal this letter.