## JURY INSTRUCTIONS
### *Elmagin Capital, LLC v. Chen et al.* (No. 20-2576)

Thank you for your diligent and attentive jury service over the last two weeks. When you retire to the jury room to deliberate, you may take with you these instructions, your notes, the list of exhibits admitted into evidence, and the verdict form. You should pick one member of the jury as your foreman. That person will preside over the deliberations and speak for you in open court.

As jurors, you have two main duties. The first is to decide what happened based on the evidence that you saw and heard here in court. Deciding the facts is your job, not mine, and nothing that I have said or done during this trial was meant to hint at my own views about the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims.

It's my job to instruct you about the law. You're bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, as well as these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do *not* let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with one another and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all the evidence with your fellow jurors. Listen to each other carefully. While deliberating, you should feel free to re-examine your own views and to change your opinion based on the evidence. But you should *not* give up your honest convictions about the evidence just

because of the opinions of your fellow jurors. Nor should you change your mind just to get enough votes for a verdict.

When you start deliberating, don't talk to the jury officer, to me, or to anyone but one another about the case. During your deliberations, you mustn't communicate with or provide any information to anyone by any means about this case. In particular, you may not use electronic devices or the internet to communicate with anyone about this case or to do independent research about what happened.

You may not investigate or communicate about the case because you must decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media hasn't been admitted into evidence and the parties have not had a chance to discuss it with you. You shouldn't seek or get such information and it mustn't influence your decision in this case.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreman sign them, and give them to the jury officer. The officer will give them to me, and I'll respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

If you would like to see any of the exhibits that have been admitted into evidence, give the jury officer a note describing the exhibits you'd like to see (preferably by exhibit number) and we'll send them into the jury room.

One more thing about messages: Never write down or tell anyone how you stand on your votes. For example, don't write down or tell anyone that a certain number is voting one way or another. Your votes should stay secret until you're finished.

Your verdict must represent the considered judgment of each juror. For you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

I've prepared a verdict form for you. It has a series of questions for you to answer. You'll take this form to the jury room and when you've reached unanimous agreement on your verdict, you'll fill it in and have your foreman date and sign the form. You'll then return to the courtroom and your foreman will give your verdict. Unless I direct you otherwise, don't reveal your answers until you're discharged. After you've reached a verdict, you need not talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest what I think your verdict should be. It's your sole and exclusive duty and responsibility to determine the verdict.

# I. INTRODUCTION

## A. This Case

This is a lawsuit for misappropriation of trade secrets and breach of contract. The Plaintiff in this case is Elmagin Capital, LLC. The Defendants in this case are Entergrid LLC, and Entergrid Fund I, LLC (collectively, "Entergrid"), Dr. Chao Chen, and Dr. Karl Petty.

Elmagin claims that Dr. Chen misappropriated Elmagin's trade secrets by using them to develop similar strategies for his company, Entergrid, and by disclosing them to others at Entergrid. It also alleges that Dr. Petty did the same. Plus, Elmagin says, Entergrid, through Drs. Chen and Petty, misappropriated Elmagin's trade secrets by using trading strategies derived from Elmagin's trading strategies to trade in wholesale electricity markets.

In its breach-of-contract claims, Elmagin alleges that Drs. Chen and Petty breached their nondisclosure agreements with Elmagin by disclosing or using Elmagin's confidential and proprietary information,

namely its trading strategies or any other confidential information related to the strategies.

Defendants deny these allegations. They say that Elmagin's strategies are neither trade secrets nor confidential because they are generally known or readily ascertainable. Even if the strategies are trade secrets, Defendants add, they did not have access to them and are not similar enough to Entergrid's. According to them, all trading strategies in use at Entergrid were independently developed by Dr. Chen, Dr. Petty, and the Entergrid team and were neither copied nor derived from Elmagin's strategies.

Drs. Chen and Petty also argue that they honored all their duties and obligations under their agreements with Elmagin. Plus, they say, the agreements are unenforceable due to a failure of "consideration," that is, a bargained for exchange of value.

## B. Preponderance of the Evidence

This is a civil case. Because Elmagin filed this lawsuit, it has the burden to prove all of its claims but one by the preponderance of the evidence.  That means Elmagin has to prove to you, in light of all the evidence, that what it claims *is more likely so than not so*.  To say it differently: if you were to put the evidence favorable to Elmagin and the evidence favorable to Defendants on opposite sides of the scales, Elmagin would have to make the scales tip toward its side—even just slightly.  If Elmagin fails to meet this burden, the verdict must be for Defendants.

If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In deciding whether any fact has been proved by a preponderance of evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of which party called them, and all exhibits received in evidence, regardless of which party produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only in criminal cases. It does not apply in civil cases like this one. So you should put it out of your mind.

## C. Clear and Convincing Evidence

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction that the allegations sought to be proved by the evidence are true. Clear and convincing evidence involves a higher degree of persuasion than is needed to meet the preponderance-of-the-evidence standard. But it does not require proof beyond a reasonable doubt, the standard applied in criminal cases.

Only one claim in this case, exemplary damages under federal law, requires you to apply this standard. You'll decide all other claims under the preponderance-of-the-evidence standard.

## D. Direct Versus Circumstantial Evidence

There are two types of evidence that you may use in reaching your verdict. One type is called "direct evidence." An example of direct evidence is when a witness testifies about something that the witness knows through his own senses: something the witness has seen, felt, touched, heard, smelled, or did. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is a document admitted into evidence at trial. The presentation of that document is direct evidence that the document exists.

The other type is circumstantial evidence. Circumstantial evidence is proof of one or more facts from which you could find another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence that it was raining.

You should consider both kinds of evidence that are presented to you. *The law makes no distinction in the weight to be given to either direct or circumstantial evidence.* You are to decide how much weight to give any evidence.

## II. TRADE-SECRET CLAIMS

Elmagin has brought claims of trade-secret misappropriation against Dr. Chen, Dr. Petty, Entergrid LLC, and Entergrid Fund I, LLC. Elmagin has brought these claims under two statutes, the Federal Defend Trade Secrets Act and the Pennsylvania Uniform Trade Secrets Act. To win on these claims, it must prove the same four things for each strategy.

For its Breck claim, Elmagin must prove:

1. That it has sufficiently identified Breck,

2. That Breck is "used in, or intended for use in, interstate commerce" (federal statute only),

3. That Breck is a protectable trade secret, and

4. That one or more Defendants misappropriated Breck.

For its Faber claim, Elmagin must prove:

1. That it has sufficiently identified Faber,

2. That Faber is "used in, or intended for use in, interstate commerce" (federal statute only),

3. That Faber is a protectable trade secret, and

4. That one or more Defendants misappropriated Faber.

As a matter of law, I have held that the first requirement is met for Breck and Faber. And the parties have agreed that the second requirement is met for both strategies. So the outcome of this case hinges on the last two. For Elmagin to win on its trade secrets claims, you must find requirements three and four met for each strategy. I will explain the requirements to you in detail.

What will you need to decide?

You'll first determine whether Breck is a protectable trade secret. Then, if you find that it is, you'll need to decide whether any of the Defendants misappropriated it.

You'll need to do the same for Faber. First, you must decide whether Faber is a protectable trade secret. Then, if you find that it is, you'll need to decide whether any of the Defendants misappropriated it.

You may find that only one claim succeeds, both do, or neither does.

## A. Is Breck or Faber a Trade Secret?

Although the federal and Pennsylvania laws use slightly different wording to define a trade secret, they essentially protect the same type of information. The federal statute lists the types of things that can be trade secrets: "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes." And the state law has a similar list: "[i]nformation, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process."

To prove that its trading strategies are protectable trade secrets, Elmagin must prove all four of the following elements for each strategy by a preponderance of the evidence:

1.  Elmagin took reasonable means to keep the strategy secret;

2.  the strategy derives independent economic value, actual or potential, from being kept secret;

3.  the strategy is not generally known or readily ascertainable (not readily discoverable) by proper means; and

4.  others who cannot readily access the strategy would obtain economic value from its disclosure or use.

Elmagin alleges that each of its trading strategies, taken as a whole, is a trade secret. So you must assess whether the whole strategy, as opposed to its individual steps, meets these elements. For example, Elmagin need not show that steps two and three of a given strategy have independent economic value, so long as it shows that the strategy as a whole does.

If Elmagin fails to prove any of these elements for a given strategy, then that claim fails. Now I'll explain each of those elements in more detail.

### 1. Reasonable means to keep secret

Elmagin must prove that it took reasonable means to protect the secrecy of its trade secret. The parties have agreed that the reasonable-means requirement is met for both strategies.

### 2. Independent economic value

This element is met if Elmagin proved that it can use the trading strategy to gain a competitive edge over a competitor, or that the strategy provides Elmagin with competitive value.

In other words, a trade secret must provide an actual or potential economic advantage over others who do not have the information. Economic value can also be shown if recreating the information from a baseline would cost a significant amount of money.

### 3. Not generally known or readily ascertainable

For each trading strategy, Elmagin must prove that it is not "generally known" or "readily ascertainable" by proper means.

You must decide whether each Elmagin strategy *as a whole* meets this element. In other words, you could believe that each of the steps is generally known or readily ascertainable, yet still find that Elmagin has proven this element because its strategy as a whole is not generally known or readily ascertainable.

A trading strategy is not a trade secret if it can be "easily or readily obtained, without great difficulty, through some independent source

8

other than the trade secret holder." For example, a trading strategy would fail this element if it can easily be reverse engineered.

In deciding this element, you should consider this list of factors:

- the extent to which the information is known outside of Elmagin's business,
- the extent to which the information is known by employees and others involved in Elmagin's business,
- the amount of effort or money Elmagin spent in developing the information, and
- the ease or difficulty with which the information could be acquired or legitimately duplicated by others.

These factors are neither required nor exhaustive.

### 4. Others would obtain economic value from disclosure or use

Elmagin must also show that others would benefit financially from knowing about the strategies or using the strategies.

### B. Did Defendants Misappropriate Breck or Faber?

If Elmagin proves that Breck or Faber is a trade secret, it must then prove that Defendants misappropriated it. To do so, Elmagin must show that a defendant either used or disclosed the trading strategy without Elmagin's consent.

*1. Use.* Defendants "used" Elmagin's trading strategies if they exploited them in a way that was likely to benefit the defendants or hurt Elmagin. Elmagin need not show that defendants replicated the trading strategies. Copying "is one, but not the only way to use a trade secret." For example, "employing the trade secret in … production . . . [or] relying on the trade secret to assist or accelerate research or development . . . [both] constitute 'use.'"

Because Elmagin alleges a set of steps that together constitute a trade strategy, you must decide if Defendants utilized enough of those steps to count as "use" under the statutes. There is no precise number of steps that the Defendants must have used. Instead, based on the evidence, you must decide whether the Defendants used Elmagin's strategies.

Elmagin must also prove, by a preponderance of the evidence, that Defendants did not independently develop their allegedly misappropriated strategies.

*2. Disclosure.* A Defendant "disclosed" Elmagin's trading strategies if he shared them with or revealed them to another person or entity.

Elmagin may rely on circumstantial evidence to prove disclosure or use. For example, Elmagin can prove "use" by showing that a Defendant had access to its trading strategy and that Defendants' trading strategies are similar enough to Elmagin's to infer that Defendants "ma[de] use of" Elmagin's combination of steps when researching and developing their own.

## C. Personal liability

In certain circumstances, people who take part in misappropriating trade secrets at a company may be held personally responsible for the monetary damages awarded against the company. Specifically, "[a] corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort."

After considering all the evidence, you must decide whether Dr. Chen or Dr. Petty personally participated in Entergrid's misappropriation of Elmagin's trading strategies.

## D. Exemplary Damages

Elmagin claims that Defendants' alleged misappropriation of its trade secrets entitles it to a special type of damages, exemplary damages (sometimes called punitive damages). To be entitled to exemplary

damages, Elmagin must prove that a Defendant was willful and malicious in misappropriating its trade secret.

Here, federal and state law differ. For exemplary damages under Pennsylvania law, Elmagin must prove willfulness and maliciousness by a preponderance of the evidence. However, to get those damages under federal law, it must prove willfulness and maliciousness by clear and convincing evidence, the higher standard.

So if you decide that Elmagin has shown that a Defendant misappropriated one of its trade secrets, you must also decide whether Elmagin has shown by *either (1) a preponderance of the evidence, or (2) clear and convincing evidence* that the particular Defendant was willful and malicious in doing so.

Willful and malicious misappropriation means "such intentional acts or gross neglect of duty as to evince a reckless indifference of the rights of others on the part of the wrongdoer, and an entire want of care so as to raise the presumption that the person at fault is conscious of the consequences of his carelessness."

In deciding whether any misappropriation was willful and malicious, factors that you may but need not consider are:

- the duration of the misappropriation,

- whether the Defendant knew of the resulting injury to Elmagin,

- and any efforts to cover up the misappropriation.

## E. Bad-Faith Claim

Defendants claim that Elmagin brought its trade-secret claims in bad faith. Elmagin disagrees.

If you find that Defendants have misappropriated a trade secret or trade secrets of Elmagin, then Elmagin has not brought its claim in bad faith.

If you find that Defendants have not misappropriated any trade secret of Elmagin's then you must decide whether Defendants have shown that Elmagin's claim is objectively *and* subjectively in bad faith. Because this is a claim that Defendants are asserting against Elmagin, *Defendants have the burden to prove bad faith* by a preponderance of the evidence.

The claim is objectively in bad faith if there is a complete lack of evidence supporting Elmagin's claims. And the claim is subjectively in bad faith if Elmagin knows or is reckless in not knowing that its claim has no merit.

### III. BREACH OF CONTRACT

As with its trade-secrets claim, Elmagin must prove by a preponderance of evidence that Drs. Chen and Petty breached their contracts. It must show that for both of Drs. Chen and Petty individually. That is, you could find that one of them breached his contract, but not the other.

### A. Dr. Chen's Non-Disclosure and Non-Competition Agreement

For this claim, Elmagin must prove, by a preponderance of the evidence, the following three things:

1. That it had a valid contract with Dr. Chen,
2. That Dr. Chen breached a duty created by that contract, and
3. That Dr. Chen's breach of the contract harmed Elmagin.

For this contract, as a matter of law, I held that the first element is met: the Non-Disclosure and Non-Competition Agreement is valid and enforceable to the extent that it protects Elmagin's trading strategies and any other confidential information related to those strategies. But you must decide if Elmagin has proven the second and third elements.

*2. Breach*. If you find that Dr. Chen misappropriated at least one of Elmagin's trading strategies by using or disclosing the strategy to help create Entergrid's, or that he used or disclosed any other confidential

information related to any of its strategies, then Dr. Chen breached a duty created by this contract, and this element is satisfied.

*3. Damages.* If you find that Dr. Chen's breach of the contract financially harmed Elmagin, then this element is satisfied. You do not need to try to determine the amount of financial harm, just whether at least some harm occurred.

## B. Dr. Chen's Membership Interest Purchase and Release Agreement

For this claim, Elmagin must prove, by a preponderance of the evidence, the following three things:

1. That it had a valid contract with Dr. Chen,
2. That Dr. Chen breached a duty created by that contract, and
3. That Dr. Chen's breach of the contract harmed Elmagin.

This claim depends on how you decide Elmagin's Non-Disclosure and Non-Competition Agreement claim. If you find that Elmagin has not proven that Dr. Chen breached that contract by misappropriating an Elmagin trading strategy, then Elmagin's claim for breach of this contract fails. But if you find that Elmagin has shown that Dr. Chen breached the Non-Disclosure and Non-Competition Agreement claim, then you must decide whether Elmagin has proven elements one and three for this contract. I've held, as a matter of law, that in these circumstances, the second element is met.

*1. Valid contract.* Here, you must decide whether Elmagin has proven, by a preponderance of the evidence, that the Membership Interest Purchase and Release Agreement was supported by consideration. In other words, did Elmagin and Chen exchange anything of value as part of the contract. Consideration flows both ways: Elmagin must have given something to Chen and Chen something to Elmagin.

*2. Breach.* If you find that Dr. Chen misappropriated at least one of Elmagin's trading strategies by using or disclosing the strategy to help

create Entergrid's, or that he used or disclosed any other confidential information related to any of its strategies, then Dr. Chen breached a duty created by this contract, and this element is satisfied.

*3. Damages.* If you find that Dr. Chen's breach of the contract financially harmed Elmagin, then this element is satisfied. You need not try to determine the amount of financial harm, just whether at least some harm occurred.

## C. Dr. Petty's Consulting Agreement

For this claim, Elmagin must prove, by a preponderance of the evidence, the following three things:

1. That it had a valid contract with Dr. Petty,
2. That Dr. Petty breached a duty created by that contract, and
3. That Dr. Petty's breach of the contract harmed Elmagin.

For this contract, as a matter of law, I've held that the first element is met: Dr. Petty's Consulting Agreement is valid and enforceable to the extent it protects Elmagin's trading strategies, and any other confidential information related to those strategies. But you must decide if Elmagin has proven the second and third elements.

*2. Breach.* If you find that Dr. Petty misappropriated at least one of Elmagin's trading strategies by using or disclosing the strategy to help create Entergrid's strategy, or that he used or disclosed any other confidential information related to any of its strategies, then Dr. Petty breached a duty created by his contract, and this element is satisfied.

*3. Damages.* If you find that Dr. Petty's breach of the contract financially harmed Elmagin, then this element is satisfied. You need not try to determine the amount of financial harm, just whether at least some harm occurred.

* * * * *

14

Now you are ready to retire to the jury room and deliberate. Do not rush. Please take all the time you need to reach a thoughtful, considered verdict.