

NICOLE D. GALLI
One Liberty Place
1650 Market Street
Suite 3600, #00250
Philadelphia, PA 19103
(215) 525-9583 direct
(215) 525-9585 fax
ndgalli@ndgallilaw.com

June 7, 2022

<u>VIA ECF</u>
Honorable Stephanos Bibas
U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

> RE: *Elmagin Capital, LLC v. Chen et al*, No.: 2:20-cv-02576-SB (E.D. Pa.)
> Litigation misconduct related to bad faith/award of attorneys' fees

Dear Judge Bibas:

We write on behalf of Defendants concerning the litigation misconduct by Elmagin related to Defendants' request for recovery of their attorneys' fees as the prevailing party under both the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(D), and Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. § 5305, specifically due to Elmagin's bad faith in bringing and maintaining its trade secrets misappropriation claim.

Courts in this Circuit and elsewhere have held that bad faith is assessed not only at the time the suit is brought but also based on the party's conduct in the litigation. *See, e.g.*, *Hill v. Best Med. Int'l, Inc.*, No. CA 07-1709, 2011 WL 6749036 (W.D. Pa. Dec. 22, 2011); *see also Molon Motor & Coil Corp. v. Nidec Motor Corp.*, Case. No. 1:16-CV-03545, 2020 WL 7027577 (N.D. Ill. Nov. 30, 2020).

Here there is extensive evidence of litigation misconduct that would support a finding that Elmagin acted in bad faith in pursing the misappropriation of trade secrets claims in this matter, including at least the following instances where Elmagin has acted to deliberately and needlessly compound the expense Defendants incurred in this case. These are not one-off episodes, but a lengthy course of vexatious actions intended to evade the expeditious and efficient resolution of this action..[1]

---

[1] Defendants anticipate that Elmagin may argue that the Court should read into the DTSA and PUTSA the heightened requirements for litigation misconduct for the award of sanctions or attorneys' fees under Rule 11 of the Federal Rules of Civil Procedure or 19 U.S.C. § 1927. Defendants are aware of no authority in this Circuit that does so, and logic dictates otherwise. If satisfying the requirements of Rule 11 or Section 1927 were required for granting attorneys' fees in situations like this, where a misappropriation claim was brought in bad faith, then there was no reason for Congress to enact a separate attorneys' fees provision in the DTSA.

Honorable Judge Stephanos Bibas                                                                             Page 2
June 7, 2022

1.  <u>Data Dump During Document Production</u>: Elmagin engaged in a classic "document dump," producing over two million supposed "documents," which required that Defendants seek a protective order against taking of their depositions until counsel had time to review the productions and to identify specific documents in their Interrogatory responses as required by Rule 33(d) [Dkt 38].

The specifics of the data dump are outlined in Defendants' brief on this motion. The high-level summary is as follows: Between November -December 2020, Elmagin produced 2,096,985 documents. Some 2 million of those documents were data files, or the like, void of any narrative text. Only some 10,600 (less than 0.5%) of the 2,096,985 documents were determined to contain potentially relevant, meaningful documents, as opposed to swathes of data, log files, and various other marginally but technically responsive materials. Virtually all of the meaningful .5% were produced in December 2020. The balance of the 99.5% of the production primarily included bid data files, with each entry produced as a single page rather than in a composite spreadsheet.

This document dump was clearly designed to overwhelm counsel and to preclude a fair opportunity to review the documents and prepare for discovery and trial. This manner of production also substantially increased the cost of electronic discovery, as vendors charge for processing and data storage by volume. Compounding this, Elmagin also did not identify specific documents in their Interrogatory responses as required by Rule 33d, thereby making it even harder to manage the document review and prepare for depositions.

The Court granted Defendants' motion in part and denied it in part. The Court compelled Plaintiff to respond and identify specific documents, although it also set a deadline for Defendants' depositions; however, that deadline was set sufficiently late enough to allow counsel time to review Elmagin's production, especially in light of the requirement that Elmagin specifically identify documents in response to Defendants' interrogatories.

2. <u>Elmagin's filing Motion to Compel while meet and confer on-going</u>: Elmagin filed a motion to compel supplemental responses to its interrogatories [Dkt 19] when meet and confer was still underway and while Defendants were in the process of compiling the information that Elmagin sought [*see* Dkt 22, Defendants' brief in opposition to motion].

3. <u>Elmagin's selection of insider Consulting Expert</u>: Elmagin designated a former business partner of the Gates and Dr. Chen, Eric Newman, as a potential consulting expert. Mr. Newman had no particular knowledge or expertise in the wholesale electricity market – his only knowledge and expertise was in equities – and by this time Elmagin had already designated Dr. Pirrong as its testifying expert. Thus, Defendants objected to Elmagin showing any Defendants' attorneys-eyes only information to Mr. Newman, since he was a close associate/insider of Elmagin/the Gates.

Elmagin could not articulate any particular reason why Mr. Newman's assistance was necessary and claimed he was not an insider. This required Defendants to file a Motion to Enforce Protective Order [Dkt. 32], which was granted [Dkt. 40]. The Court found that Newman was an insider and that since Elmagin could make no showing of particular need for his assistance, he could not be shown Defendants' AEO materials.

Honorable Judge Stephanos Bibas                                                                                           Page 3
June 7, 2022

      4. <u>All litigation matters relating to the "Yuros study"</u>:  Defendants contended that the so-called "Yuros study" (marked as DTX-4) was highly flawed from when it was first offered in discovery for all the reasons that have been articulated by its experts and in its various submissions to the Court.  Thus, they sought to exclude all testimony from Dr. Pirrong and Matthew Yuros on it and, further to exclude it from evidence.  Elmagin vigorously opposed all these motions, only to suddenly withdraw the study and all testimony regarding it, going so far as to not only elicit no testimony from Dr. Pirrong on it, but also not even calling Mr. Yuros as a witness. The Motions/objections that raised this issue include the following:

      (a) Defendants' Daubert Motion as to Dr. Pirrong's testimony on this topic [Dkt 65];

      (b) Defendants' Motion in limine seeking to preclude from evidence the "Yuros study" and any testimony from Mr. Yuros regarding same [Dkt 112].

      (c)  Defendants' objection to the admissibility, in connection with the testimony of Matthew Yuros, of Plaintiff's trial exhibits PTX193 and PTX215, which were offered as analyses of the bids of Defendants in FTR markets.  At the pretrial conference the Court agreed to conduct a voir dire with Mr. Yuros on the morning of his trial testimony about these documents, which became moot when his testimony and the "Yuros study" were withdrawn by Elmagin.

    In addition to these motions, Defendants were also forced to incur unnecessary fees associated with the preparation of rebuttal reports by two experts with respect to this topic, taking deposition testimony of their expert and Mr. Yuros on the topic, defending the depositions of Mr. Zarcu & Dr. Garibotti on this topic, addressing this evidence in connection with the parties' summary judgment motions, and preparing to address this evidence at trial.

      5. <u>Baseless motions to exclude Dr. Garibotti</u>:  Elmagin filed multiple baseless motions to exclude the testimony and opinions of Dr. Garibotti (including, but not only with respect to the "Yuros study").  Among other things, Elmagin wrongfully contended that Defendants improperly disclosed to Dr. Garibotti confidential information of Elmagin, which it did not (the disclosures were in fully accordance with the requirements of the protective order) and that Dr. Garibotti's disclosure as a rebuttal expert was untimely which it was not (Dr. Garibotti submitted a rebuttal report on the day rebuttal reports were due; rebuttal experts were not required to be disclosed earlier).  Each motion articulating these claims was denied. See Order Dkt. 54, denying Elmagin's Motion at Dkt. 48; Order Dkt. 204, denying Elmagin's Motion at Dkt. 101; Order Dkt. 201, denying Elmagin's Motion at Dkt. 164.

      6. <u>Untimely Daubert Motions</u>.  Elmagin filed two *Daubert* motions months after the deadline for filing *Daubert* motions, attempted to recharacterize these as "in *limine*" motions (notwithstanding explicit reference to Daubert in the papers).  These include the motion against Dr. Garibotti discussed above and a motion against Mr. Mason. See Dkt. 103 (motion), Dkt. 141 (opposition), Dkt. 159 (reply), Dkt. 191 (order).  These motions were filed on October 15, 2021, when the Daubert deadline had passed five months before.  See Dkt. 46 ("Daubert motions shall be filed by 5/18/21.")

      7. <u>Frivolous Motion for Contempt and Sanctions:</u> Elmagin filed a frivolous Motion for Contempt and for Sanctions against the undersigned counsel, in which they reargued three issues that had already decided against them by the Court. See Dkt. 164 and response thereto at Dkt. 181. This Motion was summarily denied by the Court in an Order at Dkt. 210.

      8. <u>Deposition misconduct</u>: Elmagin and its principles, Kevin and Richard Gates, engaged in misconduct in connection with the individual Gates depositions and the Rule 30(b)(6) deposition of Elmagin. First, both Kevin and Richard Gates engaged in obfuscation and efforts to run the clock on the deposition time by long-winded and off-topic answers. Some examples (*see* Exhibit A) include:

**REDACTED/FILED UNDER SEAL**

      Second, in their Rule 30(b)(6) deposition, the Gates testified that they did not have the requisite knowledge to answer the questions asked, which related directly to their claims in this litigation and topics identified in the Rule 30(b)(6) notice. Some examples (*see* Exhibit B) include:

**REDACTED/FILED UNDER SEAL**

Defendants submit that these actions, individually and collectively, were designed – at a minimum - to make this litigation more burdensome and onerous on Defendants. As noted, in some instances, the actions were outright frivolous and without merit. Quite simply, Elmagin sought to make the litigation as difficult and expensive for Defendants as it could, perhaps hoping that the litigation burden alone would be enough to give up and concede defeat, driving Defendants from the market.

Elmagin's failure to withdraw the so-called Yuros study and all testimony and related evidence until trial is particularly egregious and a strong example of Elmagin's improper approach to this litigation. As the Court can see upon a review of the record (and as further explained in Defendants' opposition to Elmagin's motion for reconsideration of its JMOL, also filed today), having *some* evidence of the similarity in results was essential to Elmagin's claim of misappropriation. It presented this evidence on summary judgment, as it is part of the body of evidence the Court relied on in allowing the case to go to the jury. [Dkt. 94 at 14-15]. The only such evidence Elmagin had adduced in fact and expert discovery, however, was clearly so weak and flawed on its face, that Elmagin ultimately chose to present *no* such evidence at trial and instead hope for the best. But, since Elmagin waited until trial to do so, Defendants were forced to spend extraordinary amounts of money in terms of attorneys' and expert fees to discredit this evidence and to file multiple motions seeking to exclude its admission at trial. It should have not had to do so and, at a minimum, should be compensated for that unnecessary work.

For all these reasons, Defendants respectfully request that this Court sustain the jury's verdict that Elmagin brought and maintained its trade secrets claims in bad faith and grant their request for their attorneys' fees in defending this litigation.

                                                            Respectfully,

                                                            */s/ Nicole D. Galli*

                                                            Nicole D. Galli

cc: All Counsel of Record via ECF