IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELMAGIN CAPITAL, LLC,

    *Plaintiff*,

    v.

CHAO CHEN; KARL PETTY;
ENTERGRID LLC; and
ENTERGRID FUND I LLC,

    *Defendants.*

No. 20-2576

**MEMORANDUM OPINION**

August 26, 2022

    In most cases that go to trial, the jury has the final say. That makes sense. Finality limits litigation and conserves judicial resources. So when a party asks the court to overturn the verdict or grant a new trial, it shoulders a heavy burden.

    Elmagin asks for both, yet fails to carry its burden on either. Thus, I decline to grant judgment in its favor or order a new trial.

## I. BACKGROUND

    Dr. Chao Chen helped found Elmagin Capital. There, he helped develop the algorithmic trading strategies that the company used in wholesale electricity markets. The company did well.

Eventually, relationships soured, and Dr. Chen left. With the help of another former Elmagin employee, Dr. Karl Petty, he formed two new companies to compete in the same market: Entergrid LLC and Entergrid Fund I LLC.

Elmagin was upset. It believed the duo had ripped off its trading strategies. Compl. D.I. 1. So it sued Dr. Chen, Dr. Petty, and their new companies for trade-secret infringement. *Id.* ¶¶ 65–101. Plus, it said the former employees had breached their contracts, so it sued them for that too. *Id.* ¶¶ 102–17.

The jury rejected all Elmagin's claims. D.I. 287. Unhappy with that result, it has filed various motions, two of which are pending before me. Elmagin first asks that I reconsider my denial of its motion for judgment as a matter of law on its contract claim against Dr. Chen. D.I. 290; Trial Tr. Day 9, at 41:23–42:7 (denying the motion at trial). It then asks for a new trial. D.I. 328.

I may reconsider my earlier denial of Elmagin's motion for judgment as a matter of law if Elmagin shows that: (1) the controlling law has changed; (2) it has new evidence; or (3) it is necessary to correct a clear error or "prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). And I should grant Elmagin a new trial if "the great weight of the evidence cuts against the verdict and a miscarriage of justice would result" otherwise. *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016) (internal quotation marks omitted).

Elmagin lobs a slew of theories in support. D.I. 329. But none persuades. So I deny both motions.

2

## II. CONTRACT CLAIM

Now, on to the merits. Dr. Chen did not clearly violate his confidentiality agreement. In a contract with Elmagin, Dr. Chen agreed not to "use … [or] disclose … any Confidential Information." D.I. 60-10 ¶ 2(b). And earlier in this case, this Court held that this agreement was "enforceable to the extent [that it] protect[s] Elmagin's trading strategies and any other confidential information related to the strategies." D.I. 94, at 20. At trial, the jury found that Dr. Chen had not used or disclosed any of Elmagin's confidential information. Elmagin now says the jury got this dead wrong.

In support, Elmagin points to many notes that Dr. Petty took of his conversations with Dr. Chen. These, it says, prove that Dr. Chen violated his duty not to disclose confidential information.

*1. Elmagin's ▇▇▇▇ method.* Elmagin claims that Dr. Chen "[d]isclosed Elmagin's insight that predictions 'get[] better' by ▇▇▇▇ ▇▇▇▇." D.I. 329, at 7 (quoting PTX15, at ENAEO-1-006685). True enough. But the key question is whether this counted as "Confidential Information" under the parties' agreement. D.I. 60-10 ¶ 2(a)–(b).

A reasonable jury could conclude that it did not. At trial, one of Defendants' experts, Dr. Cristian Zarcu, testified that traders use "▇▇▇▇ … throughout the investment world." Trial Tr. Day 6, at 174:19–20. So the jury could have reasonably concluded that using ▇▇▇▇ was not confidential.

Elmagin counters that its tactic was novel in the power-trading world. D.I. 329, at 8. Plus, it says, Dr. Chen himself admitted that Elmagin considered this step

3

confidential. Trial Tr. Day 5, at 161:19–23. Still, the jury was entitled to credit Dr. Zarcu's testimony over others'. And though it may be probative that Elmagin considered this approach confidential, it is not dispositive. *See Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1009 (3d Cir. 1980) (noting that "the words [that parties] use in their written contract" govern). The jury's job was to decide what counted as confidential based on the words in Dr. Chen's contract, not the intentions the parties harbored.

2. *Elmagin's use of* ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Next, Elmagin charges that Dr. Chen "[d]isclosed [its] use of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to '▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.'" D.I. 329, at 7 (quoting PTX15 at EN-AEO-1-006703). In short, he disclosed that Elmagin uses ▓▓▓▓▓▓▓▓▓▓▓▓.

But again, a reasonable jury could find that this tactic was not confidential. Dr. Zarcu testified that "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." Trial Tr. Day 6, at 179:8–13. And Dr. Craig Pirrong, Elmagin's expert, acknowledged that ▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Trial Tr. Day 5, at 270:6–9.

3. *Elmagin's strategy for finding the best financial transmission rights.* Elmagin also alleges that Dr. Chen breached his contract when he "[d]isclosed Elmagin's method for finding the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.'" D.I. 329, at 8 (quoting PTX15 at EN-AEO-1-006687). But as Dr. Pirrong testified, strategies that



4

are "betting, trying to ▮▮▮▮▮ … would want to ▮▮▮▮▮." Trial Tr. Day 5, at 266:16–19. The jury was free to conclude that Elmagin's method of reaching this common goal was common, too.

4. *Elmagin's bid pricing*. Elmagin next faults Dr. Chen for "[d]isclos[ing] Elmagin's Faber pricing strategy … 'At [E]lmagin: ▮▮▮▮▮.'" D.I. 329, at 8 (quoting PTX15 at EN-AEO-1-006676). No matter. Trial testimony suggested that bid data is public. Dr. Petty said as much. Trial Tr. Day 6, at 70:9–17; *see also* Trial Tr. Day 6, at 187 (Dr. Zarcu testifying that markets "give you the name of the participants [in the markets]").

5. *Elmagin's use of* ▮▮▮. Elmagin also complains that Dr. Chen "[d]isclosed that at Elmagin, [his] employee 'use[d] to look for ▮▮▮▮▮.'" D.I. 329, at 8 (quoting PTX15 at EN-AEO-1-006678).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Given this, the jury could have reasonably found that ▮▮▮▮▮ was not confidential either.

6. *Elmagin's commodity choice*. Elmagin also points out that Dr. Chen disclosed the following (captured in Dr. Petty's notes as bullet points): "At elmagin • ▮▮▮ • ▮▮▮▮▮" D.I. 329, at 8 (quoting

5

PTX15 at EN-AEO-1-006688). That Elmagin traded financial transmission rights was no secret. *See* Trial Tr. Day 6, at 70:9–17; *see also* Trial Tr. Day 6, at 187:5–12. And Elmagin never explains what the notes about ▮▮▮▮▮ mean, much less why that information is confidential. Without more, I cannot say that these notes warrant overturning the jury's verdict or granting a new trial.

7. *Elmagin portfolio-construction method.* Last, Elmagin says that Dr. Chen "[d]isclosed [its] technique of 'portfolio construction' by '▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.'" D.I. 329, at 8 (quoting PTX15 at EN-AEO-1006704). But as with Elmagin's other volleys, this one falls short. Other testimony at trial suggested that ▮▮▮▮▮▮▮▮▮▮ techniques were not novel. *See, e.g.*, Trial Tr. Day 6, at 177:11–178:7 (discussing ▮▮▮▮▮▮▮▮▮).

None of Elmagin's examples warrants granting a new trial or reconsidering my previous ruling. So I deny its motions on breach of contract.

### III. TRADE SECRET MISAPPROPRIATION

Elmagin says it is entitled to a new trial on its claim that Defendants misappropriated its Breck strategy when creating their Hydra strategy. In support, Elmagin distills Breck into four high-level steps and compares those to Hydra's steps. D.I. 329, at 15–16. Because the strategies are similar at this high level, Elmagin claims, "there is no rational way to find that Defendants did not misappropriate [Breck]." D.I. 329, at 18. I disagree.

6

The jury had to decide whether Defendants had used or disclosed Elmagin's trade secrets. D.I. 288, at 9–10 (jury instructions on misappropriation). It could infer "use," I instructed, if it found that the parties' strategies were "similar enough." *Id.* at 10.

At trial, the jury heard evidence that the two strategies differed meaningfully. For one, there was testimony that they winnow the universe of financial transmission rights differently. Breck uses ███████████████. Trial Tr. Day 2, at 231:4–232:1. Hydra uses ██████████. Trial Tr. Day 5, at 78–82. While Breck ████████████████, Hydra begins with ████████████████████████. Trial Tr. Day 2, at 233; Trial Tr. Day 5, at 81:4–16. For filtering, Hydra uses ██████████████████, a technique that Dr. Chen believes was not used by Elmagin. Trial Tr. Day 5, at 83:8–84:22, 90:12–21. And to conduct that filtering, Breck uses a "████████████████████████████████████████████████. Trial Tr. Day 3, at 32–34; Trial Tr. Day 5, at 83–85 These differences were enough to support the jury's verdict.

Not so fast, says Elmagin. Framed at its chosen level of generality, the strategies are the same. Thus, Elmagin seems to argue that the only parts of the strategies up for debate are those that *it* has highlighted. By pointing to differences outside those high-level steps, it says, Defendants attack a "strawman trade secret theory." D.I. 335, at 6. Not so.

The jury was allowed to consider differences in the strategies, even those differences outside the steps now highlighted by Elmagin. Elmagin's citations to the master-of-the-complaint doctrine do not change this. It may not now distill its

7

complex strategies to four key components and then cry foul when defendants point to other differences. Those are fair game.

Plus, the jury heard testimony from Dr. Zarcu that the strategies are "nowhere near identical." Trial. Tr. Day 6, at 187:20–21. He explained that while the strategies had "commonalities at a very high level," there was a "vast difference in [their] results." *Id.* at 188. Indeed, the parties' bids had only a 1–6% overlap. Trial Tr. Day 6, at 186–88. And Elmagin's own expert, Dr. Pirrong, also emphasized that results matter when assessing similarity. Strategies are the same, he explained, when they "perform[] the same sort of tasks in the same way[,] leading to … the same if not — or similar if not exactly identical results." Trial Tr. Day 5, at 267:21–68:2.

Elmagin is now saying that Defendants stole its grand strategy, so the jury was wrong to also consider its battle plan and its tactics. But all three levels mattered to its claim. Elmagin cannot now disregard the two it thinks unimportant. Plus, there was ample evidence that the strategies differed. So I deny Elmagin a new trial on this account too.

### IV. INDEPENDENT DEVELOPMENT AND EVIDENTIARY RULINGS

Elmagin objects to two last parts of the trial. First, it attacks as against the great weight of the evidence the jury's finding that Defendants independently devised their strategies. And second, it claims that Defendants' experts should not have been allowed to testify. I disagree.

*1. Independent development.* I instructed the jury that "Elmagin must also prove … that Defendants did not independently develop their allegedly misappropriated

8

strategies." D.I. 284, at 10. And in its verdict sheet, the jury found that Elmagin had not proven "that Defendants did not independently develop each of Entergrid's trading strategies." D.I. 287 ¶¶ 1.3, 3.3.

At trial, Elmagin quibbled only with the burden of proof. In its view, Defendants should have borne it. Trial Tr. Day 8, at 4. Now, it adds new complaints: the jury's finding was "against the great weight of the evidence" and independent development is "irrelevant." D.I. 329, at 22. But even if it is right on both points, and even if I were to overlook its earlier failure to object, I still would not grant a new trial.

If the jury had not been instructed on independent development, it would have reached the same result on Elmagin's trade-secret claims. Indeed, the jury was so skeptical of these claims that it found that Elmagin had brought them in bad faith. It believed that there was "a *complete* lack of evidence supporting" Elmagin's claims. D.I. 287, at 9 (emphasis added). And though I treated that finding as advisory and rejected it, it still shows that the jury's trade-secret findings did not hinge only on independent development. D.I. 322, at 2. The jury simply did not buy Elmagin's story.

Since any error on independent development did not prejudice Elmagin, I will not grant it a new trial for this reason either. *See* Fed. R. Civ. P. 61.

*2. Defendants' experts*. Start with Dr. Mason. He testified that the parties' source codes differed. Trial Tr. Day 7, at 108:10–10:18. Elmagin says this confused the jury and responded to a "strawman argument" because it has never claimed the source codes are similar or that Defendants stole them. Again, I disagree.

9

For one, Elmagin's counsel *did* intimate that Dr. Chen had done something suspicious with Elmagin's source code:

> Now it was interesting to hear testimony yesterday from Mr. Mason. … And Mr. Mason said, well, I didn't see any code checked in by Dr. Chen after August of 2017. Now, the documents don't stop at August of 2017. So it seems clear to me, and you'll have to decide for yourself, but it seems clear to me that there was access to all of this information. So why wasn't the code there?

Trial Tr. Day 8, at 32:1–9. And even if Elmagin did not allege that Defendants had stolen its source code, it points to nowhere in the trial record where it disavowed that theory for the jury. Instead, Elmagin argued that Defendants had "misappropriated [its trade secrets] by [ ] use." Trial Tr. Day 8, at 25. Through Dr. Mason, Defendants tried to foreclose one way the jury could have found they "used" Elmagin's trading strategies—copying its code.

Nor does Elmagin explain how Dr. Mason's testimony prejudiced it. It had opening and closing arguments to explain that it was not alleging code stealing. And it had cross-examination to impeach Dr. Mason and attack his testimony's relevance.

Next, consider Dr. Zarcu. He compared the parties' trades and testified that they had little overlap. *See, e.g.*, Trial. Tr. Day 6, at 187–88. Elmagin protests that this testimony was "irrelevant and confusingly prejudicial." D.I. 329, at 29. First, Dr. Zarcu conceded that his analysis compared all the parties' trades, instead of the specific pairs at issue (Breck/Hydra and Faber/Gryphon). Trial Tr. Day 6 at 203–04. Plus, it says, he failed to consider that financial transmission rights are correlated.

But Elmagin forfeited these arguments. True, Elmagin objected in limine to Dr. Zarcu's testimony. D.I. 64-1. But it did so on other grounds, not these. It claimed that Dr. Zarcu did not know enough about the field to be an expert and faulted him for

10

comparing the strategies based only "on high level summary descriptions." *Id.* at 6. But by failing to raise the arguments it poses now, it forfeited them. *See* Fed. R. Evid. 103(a); *see also Kiss v. Kmart Corp.*, 2001 WL 568974, at *6 (E.D. Pa. May 22, 2001).

\* \* \* \* \*

Elmagin had its day in court. It lost. I should upend that result only if Elmagin can show that the jury or this court seriously erred. It cannot. So I deny both Elmagin's motion to reconsider my earlier denial of its motion for judgment as a matter of law and its motion for a new trial.

11